FILED

1  ALAN H. BARBANEL (Cal Bar No. 108196)
   PAUL A. IMPELLEZZERI (Cal Bar No. 231012)
2  BARBANEL & TREUER, P.C.
   1875 Century Park East, Suite 1025
3  Los Angeles, California 90067
   (310) 282-8088 - Telephone
4  (310) 282-8779 – Facsimile
   abarbanel@btlawla.com
5  pimpellezzeri@btlawla.com

6  Attorneys for Defendant, GENERAL
   STAR INDEMNITY COMPANY
7

12 SEP 20  PM 3: 27

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10                    CV12- 08148 DDP(JCGx)

11  PETE NIJJAR,                    Case No.

12              Plaintiff,         **NOTICE OF REMOVAL BY
                                   GENERAL STAR INDEMNITY
13  vs.                            COMPANY**

14  GENERAL STAR INDEMNITY
    COMPANY,
15
                Defendant.
16

17

18

19       TO THE CLERK OF THE ABOVE ENTITLED COURT, PLAINTIFF PETE

20  NIJJAR, AND HIS ATTORNEYS OF RECORD:

21       PLEASE TAKE NOTICE that pursuant to U.S.C. §§1441(a) and 1446

22  Defendant General Star Indemnity Company ("General Star") removes to this Court

23  the state court action described below, on grounds of diversity of citizenship (28

24  U.S.C. §1332(a)(1)).

25              **PLEADINGS AND PROCEEDINGS TO DATE**

26       1.    On June 21, 2012, an action was commenced in the Superior Court of

27  the State of California in and for the County of Los Angeles, entitled *Pete Nijjar v.*

28

Barbanel & Treuer, P.C.
Attorneys at Law
1875 Century Park East, Suite 1025
Los Angeles, California 90067
Tel (310) 282-8088 • Fax (310) 282-8779

Barbanel & Treuer, P.C.
Attorneys at Law
1875 Century Park East, Suite 1025
Los Angeles, California 90067
Tel (310) 282-8088 • Fax (310) 282-8779

1  *General Star National Insurance Company*, Los Angeles County Superior Court

2  Case No. BC487013 (the *"Nijjar Action"*), a true and correct copy of the filed

3  complaint is attached as Exhibit 1.

4      2.    On June 26, 2012 the clerk of the Superior Court cause to be filed a

5  Notice of Case Management Conference and Order to Show Cause Hearing, a true

6  and correct copy of which is attached as Exhibit 2.

7      3.    On July 3, 2012 Defendant General Star National Insurance Company

8  ("GSNIC") was served with the Summons and the Complaint in the *Nijjar Action*.

9  The Proof of Service was filed on July 10, 2012.  A true and correct copy of the

10  Proof of Service is attached as Exhibit 3.

11      4.    On August 28, 2012, Plaintiff Pete Nijjar ("Nijjar") filed a First

12  Amended Complaint for Breach of Contract and Breach of the Covenant of Good

13  Faith and Fair Dealing in the *Nijjar Action* ("FAC").  The FAC added General Star

14  as a defendant previously designated by the fictitious name of DOE 1.

15      5.    On August 30, 2012 General Star received the Summons, Amendment

16  of complaint and FAC, a true and correct copy of which is attached as Exhibit 4.

17      6.    On September 10, 2012 General Star was served with the Summons

18  and FAC, through Notice and Acknowledgement of Receipt.  A true and correct

19  copy of the Acknowledgment of Receipt is attached as Exhibit 5.

20      7.    Co-Defendant GSNIC has not been served with the FAC.  On

21  September 6, Nijjar filed a Request for Dismissal of GSNIC with prejudice.  A true

22  and correct copy of the Request for Dismissal is attached as Exhibit 6.

23      8.    This Notice of Removal is timely because General Star received the

24  FAC which first named General Star as a defendant in the *NijjarAction* less than 30

25  days ago, on August 30, 2012.

26      9.    The documents contained in Exhibit 1 through 6 constitute all of the

27  process, pleadings and orders filed and served in the *Nijjar Action* to date.

28  //

**GROUNDS FOR REMOVAL**

10.    The *Nijjar Action* is a civil lawsuit brought in a California state court. Pursuant to U.S.C. § 1332(a)(1), this Court has original jurisdiction and the *Nijjar Action* may be removed to this Court by General Star pursuant to the provisions of U.S.C. § 1441(a) in that (a) it is a civil action between citizens of different states and (b) the amount in controversy exceeds the sum of $75,000.

**DIVERSITY OF CITIZENSHIP**

11.    Plaintiff Pete Nijjar is and was at all relevant times, a resident of Los Angeles County, California.

12.    At the time of removal and the time the *Nijjar Action* was filed and at all other relevant times, General Star is and was a foreign corporation incorporated under the laws of the State of Connecticut, with its principle place of business in Stamford, Connecticut.

13.    Stamford, Connecticut is General Star's principal place of business because it performs the majority of its executive and administrative functions and its officers direct, control, and coordinate its activities from its headquarters in Stamford, Connecticut.  Corporate policies and procedures of General Star are implemented through its headquarters in Stamford, Connecticut, which is where its "nerve center" is located. *Hertz Corp. v. Friend*, —— U.S. ——, 130 S.Ct. 1181, 1194, 175 L.Ed.2d 1029 (2010).

14.    At the time of removal and the time the *Nijjar Action* was filed and at all other relevant times, GSNIC is and was a foreign corporation incorporated under the laws of the State of Ohio, with its principle place of business in Stamford, Connecticut.

15.    Stamford, Connecticut is GSNIC's principal place of business because it performs the majority of its executive and administrative functions and its officers direct, control, and coordinate its activities from its headquarters in Stamford, Connecticut.  Corporate policies and procedures of General Star are implemented

Barbanel & Treuer, P.C.
Attorneys at Law
1875 Century Park East, Suite 1025
Los Angeles, California 90067
Tel (310) 282-8088 • Fax (310) 282-8779

1  through its headquarters in Stamford, Connecticut, which is where its "nerve center"
2  is located. *Hertz Corp. v. Friend*, —— U.S. ——, 130 S.Ct. 1181, 1194, 175
3  L.Ed.2d 1029 (2010).

4       16.    General Star is informed and believes that the additional defendants,
5  Does 2 through 20, have not been served with the Summons and FAC and have not
6  appeared in the *Nijjar Action*. By reason of 28 U.S.C. § 1441(a), the fictitious Doe
7  Defendants are to be disregarded for purposes of removal and need not join in the
8  removal. *Fristoe v. Reynolds Metal Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980);
9  *Salveson v. Western States Bankcard Ass'n.*, 731 F.2d 1423, 1430 (9th Cir. 1984).

10                                 **JOINDER**

11       17.    Because GSNIC has not been served, it is not necessary for it to join in
12  this notice of removal.

13                        **AMOUNT IN CONTROVERSY**

14       10.    Diversity jurisdiction exists where the amount in controversy exceeds
15  the sum of $75,000. 28 U.S.C. § 1332(a). The FAC alleges that Nijjar has suffered
16  damages in an amount in excess of $1,075,043.70. Accordingly, the amount in
17  controversy exceeds the jurisdictional minimum of this Court.

18                        **TIMELINESS OF REMOVAL**

19       13.    General Star first received a copy of the Summons and FAC, the first
20  pleading naming it as a defendant in the *Nijjar Action* on August 30, 2012 when
21  these documents were delivered to counsel on behalf of General Star. This Notice
22  of Removal is filed within thirty (30) days of August 30, 2012 and within one year
23  of the commencement of the lawsuit (June 21, 2012). Therefore, this removal is
24  timely under 28 U.S.C. § 1446(b). See *Borchero v. Standard Fire Ins. Co.*, 2010
25  WL 2608291 (N.D. Cal. 2010); *Chissie v. Winco Foods, LLC*, 2010 WL 580987
26  (E.D. Cal. 2010).

27                                 **VENUE**

28       14.    The *Nijjar Action* is a civil lawsuit brought in a California state court.

Barbanel & Treuer, P.C.
Attorneys at Law
1875 Century Park East, Suite 1025
Los Angeles, California 90067
Tel (310) 282-8088 • Fax (310) 282-8779

247792.1

1   The action is pending in the Superior Court of California for the County of Los

2   Angeles.  The FAC seeks to recover damages for failure to pay Nijjar's insurance

3   claim.  The FAC alleges that General Star breached an insurance contract issued to

4   Nijjar Realty, Inc., who is located in Los Angeles County, California.  As such,

5   under 28 U.S.C. §§ 84(d) and 1441, the United States District Court for the Central

6   District of California, Western Division, is the proper forum for removal.

7        WHEREFORE, Defendant General Star prays the above-referenced action

8   pending in the Superior Court of the State of California for the County of Los

9   Angeles, Case No. BC487013, be removed from that Court to this United States

10  District Court.

11  DATED: September 18, 2012        BARBANEL & TREUER, P.C.
12                                   ALAN H. BARBANEL
                                     PAUL A. IMPELLEZZERI
13

14

15                                   By: _____
16                                   PAUL A. IMPELLEZZERI
17                                   Attorneys for DEFENDANT GENERAL
                                     STAR INDEMNITY COMPANY

18

19

20

21

22

23

24

25

26

27

28

Barbanel & Treuer, P.C.
Attorneys at Law
1875 Century Park East, Suite 1025
Los Angeles, California 90067
Tel (310) 282-8088 • Fax (310) 282-8779

247792.1

# EXHIBIT "1"

06/21/2012   15:01  3105527891                                    #2415 P.009/015

1  STEPHEN M. LOSH, ESQ. (S.B.N. 127508)
   ANGELICA M. LEON, ESQ. (S.B.N. 224719)
2  JOSEPH KHOSHLESAN, ESQ. (S.B.N. 274430)
   BEVERLY HILLS LAWYERS & ASSOCIATES
3  9461 Charleville Blvd., No. 613
   Beverly Hills, California 90212
4  Telephone: (310) 552-2490
5  Facsimile:  (310) 552-7891

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUN 2 1 2012

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Nancy Alvarez

6

7  Attorneys for Plaintiff Pete Nijjar

8

9          **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10          **FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

11                  **STANLEY MOSK COURTHOUSE**

12  PETE NIJJAR                        )  Case No.:     **BC487013**
13          Plaintiffs,                )
14                                     )
          v.                           )   **COMPLAINT FOR DAMAGES:**
15                                     )
   GENERAL STAR NATIONAL INSURANCE )  1. **BREACH OF CONTRACT**
16  COMPANY AND DOES 1 to 20, INCLUSIVE )  2. **BREACH OF THE IMPLIED**
                                       )     **COVENANT OF GOOD FAITH AND FAIR**
17          Defendants.                )     **DEALING (INSURANCE BAD FAITH)**
18                                     )     **PUNITIVE DAMAGES**
                                       )
19  _____ )

20

21              <u>**PROCEDURAL ALLEGATIONS**</u>

22      Plaintiff Pete Nijjar ("Plaintiff" or "Nijjar") alleges as follows:

23      1.      Nijjar is a former principal in Nijjar Realty, Inc. and at all times mentioned in this

24  complaint is a resident of Los Angeles County, California.

25      2.      Nijjar had, and has, an insurable interest in the real property a multi unit property

26  located at 990 West Ninth Street, Pomona, CA 91766 (the "Property") as Nijjar Realty, Inc. has

27  assigned these causes of action to him.

28      3.      Nijjar is informed and believes and thereon alleges that at all times mentioned herein

Defendant General Star National Insurance Company, a California corporation ("General Star") was

Exhibit 1
Page 6 of Notice of Removal

1   and is an insurance company, authorized to sell and issue multiple line insurance policies in the State

2   of California.

3        4.     Nijjar is unaware of the true identity, nature and capacity of each of the defendants

4   designated herein as a Doe.   Nijjar is informed and believes and thereon alleges that each of the

5   defendants designated herein, as a Doe are in some manner responsible for the damages and injuries as

6   are alleged in this Complaint.   Nijjar sues those defendants by such fictitious names pursuant to

7   California *Code of Civil Procedure* §474 and will amend this complaint to show their true names and

8   capacities when they have been ascertained.   Nijjar is informed and believes, and based on that

9   information and belief alleges that each of the defendants designated as a DOE is negligently or

10   otherwise legally responsible for the events and happenings referred to in this Complaint, and

11   negligently or otherwise unlawfully caused the injuries and damages to Nijjar as alleged in this

12   Complaint.

13        5.     Nijjar is informed and believes and thereon alleges that at all material times herein the

14   Defendants, and each of them, were the agents, servants and employees of the other defendants, and

15   each of them, and in doing the things alleged in this Complaint, Defendants, and each of them, were

16   acting within the course and scope of their agency and/or employment.   Further this action is brought

17   within the statute of limitations as set forth in the Policy and the equitable tolling provisions of

18   *Prudential LMI.*

19                           **FACTUAL ALLEGATIONS**

20        6.     On or about January 15, 2005, as well as prior thereto and subsequent thereto, Nijjar

21   Realty, Inc., and Nijjar had an insurable interest in the Property and insured the Property with General

22   Star ("the Policy") against risk of loss, *inter alia*, fire and/or related fire damage.   General Star is in

23   possession of a complete copy of the Policy[1] which was in full force and effect on said date.

24        7.     On or about January 15, 2005, an intense fire caused extensive damage to the Property

25   (the "Loss").

26

27

28

---

[1] Policy Number 1AG394764, subject to a $10,000.00 deductible, for a term of one year.

Exhibit 1
Page 7 of Notice of Removal

2

06/21/2012   15:02   3105527891                                   #2415 P.011/015

8. Nijjar's assignor timely submitted a claim for the Loss to General Star, which assigned the following claim number GP334173 (the "Claim"). The Claim was slowly and improperly handled by General Star which effectively slowed the ultimate settlement of the Claim as well as attempting to diminish its relative value.[2]

9. Due to the actions of General Star, Nijjar's assignor was forced to hire and pay a Public Adjuster who filed a Proof of Loss in the sum of $803,607.53 which was rejected by General Star for improper reasons as set forth herein.

10. General Star improperly came up with an estimate of loss in the sum of $384,069.73, yet never paid said sum even as an undisputed amount as required by law.

11. As a result of General Star's wrongful denial and refusal to tender benefits to Nijjar's assignor under the Policy that are now rightfully his, Nijjar has and continues to be damaged in an amount according to proof at trial, however in excess of the minimum jurisdiction amount of the unlimited jurisdiction of this Court.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)
### (Against Defendants General Star and Does 1 through 20, inclusive)

12. Nijjar incorporates by reference as though fully set forth herein, paragraphs 1 through 11 of this Complaint.

13. Nijjar alleges that his assignor entered into a written agreement, which has been defined as the Policy herein with General Star to insure the Property. Nijjar and his assignor had an insurable interest in the Property and is an insured under the terms of the Policy and by operation of law. General Star has a complete copy of the Policy and the relevant provisions.

14. The Policy provided that Nijjar's assignor pay a premium payment to General Star for property insurance coverage. In consideration of the premium payment to General Star for the Policy, General Star agreed to provide insurance coverage on the Property as represented in the Policy.

15. Nijjar's assignor has at all times made timely premium payments and performed its

---

[2] In assessing the value of the loss, Independent Adjuster Doug Herr, represented General Star.

Exhibit 1
Page 8 of Notice of Removal

3

1  obligations under the terms and conditions of the Policy and in the manner specified by the Policy.

2      16.    General Star breached the Policy terms and conditions when it failed to pay Nijjar's

3  assignor benefits under the Policy for a covered loss by delaying payment of the Claim, forcing

4  Nijjar's assignor to attempt to perform its own repairs and cleanup, and then falsely undervaluing its

5  claim.

6      17.    General Star's failure to perform its obligations under the Policy has directly damaged

7  Nijjar's assignor by deliberately delaying the investigation of its loss, devaluing its claim, and forcing

8  it to hire a public adjustor, which has created an enormous amount of financial stress on Nijjar's

9  assignor and ultimately Nijjar. Nijjar's assignor was further forced to invoke the Appraisal provision

10  of the Policy and after the award was rendered, failed to properly pay the award. Also, Nijjar's

11  assignor suffered consequential contractual damages not covered in the Appraisal award of

12  $221,416.00.

13      18.    Additionally, Nijjar and his assignor have been damaged because had they known that

14  General Star was not going to fulfill its obligations under the Policy, they would have utilized other

15  means to secure proper insurance coverage on the Property to protect their interests in the Property in

16  case of a loss, such as the Loss that occurred to the Property.

17      **WHEREFORE,** Nijjar prays for judgment against Defendants, and each of them, as more

18  fully set forth below.

19  **SECOND CAUSE OF ACTION**

20  **(BREACH OF THE IMPLIED COVENTANT OF GOOD FAITH**

21  **AND FAIR DEALING, INSURANCE BAD FAITH, PUNITIVE DAMAGES)**

22  **(Against Defendants General Star and Does 1 through 20, inclusive)**

23      19.    Nijjar hereby incorporates by reference each and every allegation contained in

24  paragraphs 1 through 18 as though fully set forth herein at length.

25      20.    Nijjar's assignor entered into an agreement with General Star for the Policy for the

26  Property with the understanding and expectation clearly understood by General Star that it would act

27  in good faith and deal fairly with it pursuant to the Policy.

28

Exhibit 1
Page 9 of Notice of Removal

4

21.     General Star breached its implied covenant of good faith and fair dealing arising from the Policy for the Property by unreasonably delaying and then withholding insurance benefits under the Policy provisions for the Claim presented by Nijjar's assignor for the Property, after receiving timely insurance premiums from Nijjar's assignor and notice of the Claim.

22.     General Star has and continues to delay and deny coverage for the Loss and continues to engage in unlawful insurance claims handling practices by attempting to assert that Nijjar's assignor was not entitled to its full benefits under the Policy for the Loss. Further, General Star forced Nijjar's assignor to file for and pay for Appraisal and then refused to properly pay the appraisal award. Such bad faith conduct constitutes a continuing tort, which has caused and continues to cause Nijjar ongoing damages in excess of the unlimited jurisdictional minimum of this Court in an amount to be determined at trial.

23.     General Star has engaged in, and continues to engage in, a course of conduct to further its own economic interests over those of Nijjar's assignor and in violation of its obligations to Nijjar's assignor. This conduct includes the matters alleged herein and incorporated by reference in the preceding paragraphs, and including, but not limited to the following:

(a) unreasonably withholding benefits owed to Nijjar's assignor under coverage for the Property under the Claim, including but limited to failure to follow DOI regulations;

(b) not attempting in good faith to effectuate prompt, fair, and equitable settlement of Nijjar assignor's Claim;

(c) compelling Nijjar to initiate litigation to obtain benefits due under the Policy for this loss; and;

(d) failing to consider Nijjar assignor's interests at least equal to its own;

(e) commencing on a course of conduct to slow down the adjustment of the Loss and an improper attempt to minimize the Loss;

24.     Nijjar is informed, believes, and thereon alleges, that General Star has breached its duty of good faith and fair dealing owed to Nijjar's assignor by other acts or omissions of which Nijjar is presently unaware and which will be set forth as learned in the process of discovery.

25.     General Star's conduct described herein was done with a conscious disregard of

Exhibit 1
Page 10 of Notice of Removal

5

06/21/2012  15:02  3105527881                                    #2415 P.014/015

1   Nijjar's rights and constitutes despicable conduct, as it was done with the intent to vex, injure or annoy

2   Nijjar such as to constitute oppression, fraud or malice under California *Civil Code* §3294, entitling

3   Nijjar to an award of punitive damages in an amount appropriate to punish General Star within the

4   dictates of Due Process, or set an example of General Star to discourage similar conduct by other

5   insurance companies.

6        26.   General Star's conduct described herein was undertaken by its employees, agents, legal

7   counsel, officers and/or managing agents, and/or representatives identified as Does 1 through 20, who

8   were responsible for supervision and operation, reports, communications and/or decisions in the day to

9   day and overall operation of the company.  The conduct of said parties was therefore undertaken on

10  behalf of General Star as this illegal practice was orchestrated on a mass basis for all similar situated

11  insureds.  General Star further had advance knowledge of the action and conduct of said individuals

12  whose actions and conduct were ratified, authorized, and approved by managing agents whose precise

13  identities are unknown to Nijjar at this time and are therefore identified and designated herein as Does

14  1 through 20, inclusive.

15       27.   As a proximate and legal result of the aforementioned wrongful conduct of General

16  Star, Nijjar has suffered and will continue to suffer in the future damages, including but not limited to,

17  special, general and consequential damages.

18       28.   As a further direct and proximate cause of the conduct of General Star, Nijjar has been

19  obligated to expend and incur liability for costs of suit, attorneys' fees and related expenses in an

20  amount not yet fully ascertained, but which will be submitted at the time of trial.

21       WHEREFORE, Nijjar prays for judgment against Defendants, and each of them, as more

22  fully set forth behalf.

23                        **PRAYER FOR RELIEF**

24       WHEREFORE, NIJJAR prays for judgment against Defendants, and each of them, as

25  follows:

26  **First Cause of Action:**

27       1.   For special damages in an amount in excess of $1,075,043.70 and according to proof;

28

Exhibit 1
Page 11 of Notice of Removal

6

06/21/2012 15:02 3105527891 #2415 P.015/015

2.      An award of prejudgment interest at the rate of ten percent (10%) per annum and on any judgment rendered by this Court until paid in full;

3.      Court costs incurred in this action; and

4.      For any further and other relief that this Court deems just and proper.

**Second Cause of Action:**

5.      For an award of general and special damages in an amount in excess of the jurisdictional limits of the limited jurisdiction branch of this Court and according to Proof at trial;

6.      An award of prejudgment interest at the rate of ten percent (10%) per annum and on any judgment rendered by this Court until paid in full;

7.      Attorneys fees and court costs incurred in this action;

8.      For an award of Punitive Damages; and

9.      For any further and other relief that this Court deems just and proper.

DATED: June 14, 2012

RESPECTFULLY SUBMITTED,
BEVERLY HILLS LAWYERS & ASSOCIATES

By: _____
Stephen M. Losh, Esq.
Angelica M. Leon, Esq.
Joseph Khoshlesan, Esq.
Attorney for Plaintiff Pete Nijjar

Exhibit 1
Page 12 of Notice of Removal

7

06/21/2012   15:01  3105527891                                                    #2415 P.007/015

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Stephen M. Losh, *Angelica M. Leon*   127508, 224719<br>BEVERLY HILLS LAWYERS & ASSOCIATES<br>9461 CHARLEVILLE BLVD., PMB 613<br>BEVERLY HILLS, CA. 90212<br>TELEPHONE NO.: (310) 552-2490   FAX NO.: (310) 552-7891<br>ATTORNEY FOR *(Name):* PETE NIJJAR | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: LOS ANGELES, CALIFORNIA 90012
CITY AND ZIP CODE:
BRANCH NAME: CENTRAL DISTRICT STANLEY MOSK COURTHOUSE

CASE NAME: NIJJAR V GENERAL STAR

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUN 21 2012

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Nancy Alvarez

| CIVIL CASE COVER SHEET | | Complex Case Designation | | |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>**BC 487013** | |

JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary; b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):*  two
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 14, 2012

STEPHEN M. LOSH, ESQ.
*(TYPE OR PRINT NAME)*                    ▶ _____
                                        *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**
                                        Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
                                        Cal. Standards of Judicial Administration, std. 3.10
                                        www.courtinfo.ca.gov

Exhibit 1
Page 13 of Notice of Removal

NT.T.TAR

06/21/2012   15:01   3105527891                                    #2415 P.008/015



CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case-Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ-Administrative Mandamus
　Writ-Mandamus on Limited Court Case Matter
　Writ-Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal-Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief from Late Claim
　Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**

Exhibit 1
Page 14 of Notice of Removal                    Page 2 of 2

06/21/2012   15:00   3105527891                                      #2415 P.003/015

| SHORT TITLE: NIJJAR V GENERAL STAR | CASE NUMBER: BC487018 |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.   Check the types of hearing and fill in the estimated length of hearing expected for this case:**

JURY TRIAL? [X] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL   6   [ ] HOURS/ [X] DAYS.

**Item II.  Indicate the correct district and courthouse location (4 steps - If you checked "Limited Case", skip to Item III, Pg. 4):**

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto (22) | [ ] | A7100   Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | [ ] | A7110   Personal Injury/Property Damage/Wrongful Death - Uninsured Motorist | 1., 2., 4. |
| Asbestos (04) | [ ] | A6070   Asbestos Property Damage | 2. |
| | [ ] | A7221   Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | [ ] | A7260   Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | [ ] | A7210   Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | [ ] | A7240   Other Professional Health Care Malpractice | 1., 4. |
| Other Personal Injury Property Damage Wrongful Death (23) | [ ] | A7250   Premises Liability (e.g., slip and fall) | 1., 4. |
| | [ ] | A7230   Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | [ ] | A7270   Intentional Infliction of Emotional Distress | 1., 3. |
| | [ ] | A7220   Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**Exhibit 1**
**Page 15 of Notice of Removal**

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

ESSENTIAL FORMS™

PETE   NIJJAR



| SHORT TITLE: | CASE NUMBER |
|---|---|
| NIJJAR V GENERAL STAR | |

| A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| Professional<br>Negligence<br>(25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination<br>(36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| Other Employment<br>(15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or<br>wrongful eviction)<br>☐ A6008 Contract/Warranty Breach-Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br><br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| Collections<br>(09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| Insurance Coverage<br>(18) | ☒ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract<br>(37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels | 2. |
| Wrongful Eviction<br>(33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| Other Real Property<br>(26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer-<br>Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-<br>Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-<br>Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-<br>Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

MerrisDeads ESSENTIAL FORMS™

**Exhibit 1**
**Page 16 of Notice of Removal**          PETE NIJJAR

| SHORT TITLE: | CASE NUMBER |
|---|---|
| NIJJAR V GENERAL STAR | |

| **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| Other Judicial Review (39) | ☐ A6150  Other Writ/Judicial Review | 2., 8. |
| Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 8. |

 Merlin Dorr's<br>ESSENTIAL FORMS

Exhibit 1<br>Page 17 of Notice of Removal

PETE  NIJJAR

06/21/2012   15:01  3105527891                                               #2415 P.006/015

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| NIJJAR V GENERAL STAR | |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐ 1. ☒ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. | ADDRESS:<br>990 WEST NINTH ST. |
|---|---|
| CITY: POMONA | STATE: CA | ZIP CODE: 91766 | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the   STANLEY MOSK   courthouse in the CENTRAL             District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: June 14, 2012

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

Essential Forms™

Exhibit 1
Page 18 of Notice of Removal

PETE  NIJJAR

# EXHIBIT "2"

NOTICE SENT TO:

Losh, Stephen M., Esq.
Beverly Hills Lawyers & Associates
9461 Charleville Blvd., No. 613
Beverly Hills,          CA  90212

**FILED**
Superior Court of California
County of Los Angeles

**JUN 26 2012**

John A. Clarke, Executive Officer/Clerk
By _____ Deputy

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

PETE NIJJAR

                                    Plaintiff(s),

        VS.

GENERAL STAR NATIONAL INSURANCE COMPANY
                                    Defendant(s).

**CASE NUMBER**

BC487013

**NOTICE OF CASE
MANAGEMENT CONFERENCE**

### TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for  October 15, 2012  at  8:30 am  in  Dept. 49  at 111 North Hill Street, Los Angeles, California  90012.

**NOTICE TO DEFENDANT:**     **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Proceedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date:  June 26, 2012

Judicial Officer   DEIRDRE H. HILL

### CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[✓]  by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[  ]  by personally giving the party notice upon filing the complaint.
Date:  June 26, 2012

John A. Clarke, Executive Officer/Clerk

by _____ Deputy Clerk

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Exhibit 2
Page 19 of Notice of Removal

●                                    ●  **FILED**
                                        Superior Court of California
                                        County of Los Angeles
                                        FILE STAMP

NOTICE SENT TO:                              JUN 26 2012

Losh, Stephen M., Esq.
Beverly Hills Lawyers & Associates
9461 Charleville Blvd., No. 613          John A. Clarke, Executive Officer/Clerk
Beverly Hills,        CA  90212          By _____, Deputy
                                                FRANK ESTRADA

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

|  |  |
|---|---|
| PETE NIJJAR | **CASE NUMBER** |
| Plaintiff(s), | BC487013 |
| VS. | |
| GENERAL STAR NATIONAL INSURANCE COMPANY | **ORDER TO SHOW CAUSE HEARING** |
| Defendant(s). | |

To the party/attorney of record: **PLAINTIFF:**

You are ordered to appear for an Order to Show Cause Hearing on  October 15, 2012  at  8:30 am  in  Dept. 49  of this
court, Central District, 111 North Hill Street, Los Angeles, California 90012, and show cause why sanctions should not be
imposed for:

   **OSC WHY SANC SHOULD NOT BE IMPOSE FOR FAILURE TO TIMELY: 1)FILE POS**
   **2)MAKE APP FOR PUB;3)FILE DEFAULT 4)FILE CMC STMNT;5)FILE DFLT JUDG**

Failure to comply or appear may result in sanctions, pursuant to one or more of the following: California Rules of Court, rule 2.30,
and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and
Government Code section 68608.

[ ] To avoid a mandatory appearance all required documents must be filed in [ ] this Dept [ ] Clerk's Office, Room _____
     at least 5 court days prior to the date of the hearing.

[ ] The Court may infer from your failure to appear that possession of the premises is no longer at issue, and that your case is not
     entitled to preference in setting pursuant to Code of Civil Procedure section 1179a.

[✓] You are ordered to give notice of said hearing forthwith to any party served with summons and complaint prior to OSC Hearing
     and file a Proof of Service in this department or Clerk's Office at least 5 court days prior to the date of the hearing.

Dated:  June 26, 2012

                                             _____
                                             Judicial Officer   DEIRDRE HILL

### CERTIFICATE OF MAILING

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date
I served the Order to Show Cause Hearing upon each party or counsel named above by depositing in the United States mail at the courthouse in Los Angeles,
California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown above with the postage thereon fully
prepaid.

Date:  June 26, 2012

                                    John A. Clarke, EXECUTIVE OFFICER/CLERK

                                    By_____, Deputy Clerk

### ORDER TO SHOW CAUSE HEARING

LACIV 166-11 (Rev. 09/08)                                LASC Local Rules, Chapter 7
LASC Approved 06-04                                      Cal. Rules of Court, rule 2.30

Exhibit 2
Page 20 of Notice of Removal

# EXHIBIT "3"

07/19/2012   16:08   3105527891                                    #2458 P.002/003

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Stephen M. Losh, Esq. (SBN 127308)<br>Angelica M. Leon, Esq. (SBN 224719)<br>Beverly Hills Lawyers & Associates<br>9461 Charleville Blvd., Suite #613<br>Beverly Hills, CA 90212<br><br>TELEPHONE NO: (310) 552-2490    FAX NO. *(Optional):* (310) 552-7891<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiff, Pete Nijjar | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>JUL 10 2012<br><br>John A. Clarke, Executive Officer/Clerk<br>BY _____, Deputy<br>Nancy Alvarez |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: THE SAME
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

| PLAINTIFF/PETITIONER: Pete Nijjar | CASE NUMBER: BC 487 013 |
|---|---|
| DEFENDANT/RESPONDENT: General Star National Insurance Company, and DOES 1 to 20, inclusive | |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):*   General Star National Insurance Company

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Bjorn Flor, agent for service of process, for CT Corporation

4. Address where the party was served: 818 W. 7th St., Suite #200 Los Angeles, CA 90017 (CT Corp.)

5. I served the party (check proper box)
   a. ☑ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 7/3/2012    (2) at *(time):* 1:25PM
   b. ☐ by substituted service. On *(date):*    at *(time):*    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    or ☐ a declaration of mailing is attached.
      ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

**Exhibit 3**
**Page 21 of Notice of Removal**

07/10/2012   16:08  3105527881                                                    #2458 P.003/003

| PLAINTIFF/PETITIONER: Pete Nijjar | CASE NUMBER: BC 487 013 |
|---|---|
| DEFENDANT/RESPONDENT: General Star National Insurance Company, and DOES 1 to 20, inclusive | |

5.  c. ☐  by mail and acknowledgment of receipt of service. I mailed the documents listed in item 2 to the party, to the
           address shown in item 4, by first-class mail, postage prepaid,

      (1) on *(date)*:                                    (2) from *(city)*:

      (3) ☐   with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed
              to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)
      (4) ☐   to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

    d. ☐  by other means *(specify means of service and authorizing code section)*:

         ☐   Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
    a. ☐   as an individual defendant.
    b. ☐   as the person sued under the fictitious name of *(specify)*:
    c. ☐   as occupant.
    d. ☑   On behalf of *(specify)*: General Star National Insurance Company
           under the following Code of Civil Procedure section:

| | |
|---|---|
| ☑  416.10 (corporation) | ☐  416.95 (business organization, form unknown) |
| ☐  416.20 (defunct corporation) | ☐  416.60 (minor) |
| ☐  416.30 (joint stock company/association) | ☐  416.70 (ward or conservatee) |
| ☐  416.40 (association or partnership) | ☐  416.90 (authorized person) |
| ☐  416.50 (public entity) | ☐  415.46 (occupant) |
| | ☐  other: |

7.  Person who served papers
    a. Name: Omri Bar-Tal
    b. Address: 468 N. Camden Dr., Suite #200 Beverly Hills, CA 90210
    c. Telephone number: (310) 860-6192
    d. The fee for service was: $ 45
    e. I am:
       (1) ☐   not a registered California process server.
       (2) ☐   exempt from registration under Business and Professions Code section 22350(b).
       (3) ☑   a registered California process server:
               (i) ☑  owner  ☐  employee  ☐  independent contractor.
               (ii)  Registration No.: 6827
               (iii) County: Los Angeles

8.  ☑   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

        or

9.  ☐   I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 7/5/2012

Omri Bar-Tal                                         ▶

_____              _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                        (SIGNATURE)

                                    Exhibit 3
                          Page 22 of Notice of Removal

POS-010 [Rev. January 1, 2007]        **PROOF OF SERVICE OF SUMMONS**                    Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT "4"

**SUM-100**

## SUMMONS FIRST AMENDED COMPLAINT
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GENERAL STAR INDEMNITY COMPANY
AND DOES 1 to 20, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PETE NIJJAR

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

**CASE NUMBER:** *(Número del Caso):*
BC487013

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF THE STATE OF CALIFORNIA
111 NORTH HILL STREET
LOS ANGELES, CALIFORNIA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
STEPHEN M. LOSH, ANGELICA M. LEON, JOSEPH KHOSHLESAN    BEVERLY HILLS LAWYERS & ASSOCIATES
9461 CHARLEVILLE BLVD., PMB 613    (310) 552-2490
BEVERLY HILLS, CA. 90212

DATE:                                                   Clerk, by                                   , Deputy
*(Fecha)*                                               *(Secretario)*                             *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (*specify*):

3. ☒ on behalf of (*specify*):   GENERAL STAR INDEMNITY COMPANY
   under:  ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other (*specify*):
4. ☐ by personal delivery on (*date*):

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]     **SUMMONS**     Code of Civil Procedure §§ 412.20, 465
*Martin Dean's*                                       www.courtinfo.ca.gov
**ESSENTIAL FORMS™**

PETE NIJJAR

**Exhibit 4**
**Page 23 of Notice of Removal**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | RESERVED FOR CLERK'S FILE STAMP |
|---|---|
| Stephen M. Losh                              127508, 224719<br>BEVERLY HILLS LAWYERS & ASSOCIATES<br>9461 CHARLEVILLE BLVD., PMB 613<br>BEVERLY HILLS, CA. 90212<br>　TELEPHONE NO.: (310) 552-2490　　FAX NO.: (310) 552-7891<br>ATTORNEY FOR *(Name):* PETE NIJJAR | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
111 NORTH HILL STREET

PLAINTIFF:　PETE NIJJAR

DEFENDANT:　GENERAL STAR NATIONAL INSURANCE COMPANY;
　　　　　　 AND DOES 1 to 20, Inclusive

| **AMENDMENT TO COMPLAINT**<br>**(Fictitious/Incorrect Name)** | CASE NUMBER:<br>BC487013 |
|---|---|

☒ **FICTITIOUS NAME** *(No order required)*

　　Upon the filing of the complaint, the plaintiff, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of:

FICTITIOUS NAME
DOE 1

and having discovered the true name of the defendant to be:

TRUE NAME
GENERAL STAR INDEMNITY COMPANY

amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

| DATE<br>AUGUST 17, 2012 | TYPE OR PRINT NAME<br>STEPHEN M. LOSH, ESQ. | SIGNATURE OF ATTORNEY |
|---|---|---|

☐ **INCORRECT NAME** *(Order required)*

　　The plaintiff, having designated a defendant in the complaint by the incorrect name of:

INCORRECT NAME

and having discovered the true name of the defendant to be:

TRUE NAME

amends the complaint by substituting the true name for the incorrect name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|

**ORDER**

THE COURT ORDERS the amendment approved and filed.

Dated _____

_____
JUDICIAL OFFICER


Martin Dean's
ESSENTIAL FORMS™

**AMENDMENT TO COMPLAINT**
**(Fictitious / Incorrect Name)**

Code Civ. Proc., §§ 471.5,
472, 473, 474

PETER NIJJAR

Exhibit 4<br>Page 24 of Notice of Removal

1   STEPHEN M. LOSH, ESQ. (S.B.N. 127508)
    ANGELICA M. LEON, ESQ. (S.B.N. 224719)
2   JOSEPH KHOSHLESAN, ESQ. (S.B.N. 274430)
    BEVERLY HILLS LAWYERS & ASSOCIATES
3   9461 Charleville Blvd., No. 613
    Beverly Hills, California 90212
4   Telephone: (310) 552-2490
    Facsimile:  (310) 552-7891
5

6

7   Attorneys for Plaintiff Pete Nijjar

8

9          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10         FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

11                    STANLEY MOSK COURTHOUSE

12   PETE NIJJAR                          )   Case No.: BC487013
                                          )
13            Plaintiffs,                 )
                                          )   FIRST AMENDED COMPLAINT FOR
14        v.                              )   DAMAGES:
                                          )
15   GENERAL STAR NATIONAL                )   1.  BREACH OF CONTRACT
     INSURANCE COMPANY AND DOES 1 to      )   2.  BREACH OF THE IMPLIED
16   20, INCLUSIVE,                       )       COVENANT OF GOOD FAITH AND FAIR
                                          )       DEALING (INSURANCE BAD FAITH)
17            Defendants.                 )       PUNITIVE DAMAGES
                                          )
18                                        )
                                          )
19   _____ )

20

21                    PROCEDURAL ALLEGATIONS

22      Plaintiff Pete Nijjar ("Plaintiff" or "Nijjar") alleges as follows:

23      1.      Nijjar is a former principal in Nijjar Realty, Inc., a small closed corporation consisting

24   primarily of family members and at all times mentioned in this complaint is a resident of Los Angeles

25   County, California.

26      2.      Nijjar had, and has, an insurable interest in the real property, a multi-unit property

27   located at 990 West Ninth Street, Pomona, CA 91766 (the "Property"), as a principal in Nijjar Realty,

28   Inc. which has assigned these causes of action to him.

Exhibit 4
Page 25 of Notice of Removal

1        3.     Nijjar is informed and believes and thereon alleges that at all times mentioned herein,

2  Defendant General Star Indemnity Company, a surplus lines insurance carrier ("General Star")

3  improperly named in the original Complaint as General Star Insurance Company was and is an

4  insurance company, authorized to sell and issue multiple line insurance policies in the State of

5  California only through the offices of State designated Surplus Lines Brokers under the appropriate

6  standards and restrictions.

7        4.     Nijjar is unaware of the true identity, nature and capacity of each of the defendants

8  designated herein as a Doe.   Nijjar is informed and believes and thereon alleges that each of the

9  defendants designated herein, as a Doe are in some manner responsible for the damages and injuries as

10  are alleged in this Complaint.   Nijjar sues those defendants by such fictitious names pursuant to

11  California *Code of Civil Procedure* §474 and will amend this complaint to show their true names and

12  capacities when they have been ascertained.   Nijjar is informed and believes, and based on that

13  information and belief alleges that each of the defendants designated as a DOE is negligently or

14  otherwise legally responsible for the events and happenings referred to in this Complaint, and

15  negligently or otherwise unlawfully caused the injuries and damages to Nijjar as alleged in this

16  Complaint.

17        5.     Nijjar is informed and believes and thereon alleges that at all material times herein the

18  Defendants, and each of them, were the agents, servants and employees of the other defendants, and

19  each of them, and in doing the things alleged in this Complaint, Defendants, and each of them, were

20  acting within the course and scope of their agency and/or employment.   Further this action is brought

21  within the two year statute of limitations as set forth in the Policy and the equitable tolling provisions

22  of *Prudential LMI* as the Policy conditions were not completed until November 15, 2010, the date of

23  the rendition of the Appraisal Award.

24              **<u>FACTUAL ALLEGATIONS</u>**

25        6.     On or about January 15, 2005, as well as prior thereto and subsequent thereto, Nijjar

26  Realty, Inc., and Nijjar had an insurable interest in the Property and insured the Property with General

27  Star ("the Policy") against risk of loss, *inter alia*, fire and/or related fire damage.   Attached hereto and

28  made a part hereof is a complete copy of the Policy which was in full force and effect on said date.

1       7.     On or about January 15, 2005, an intense fire caused extensive damage to the Property

2    (the "Loss").

3       8.     Nijjar's company timely submitted a claim for the Loss to General Star, which assigned

4    the following claim number GP334173 (the "Claim").  The Claim was slowly and improperly handled

5    by General Star which effectively slowed the ultimate settlement of the Claim as well as attempting to

6    diminish its relative value, many of the decisions made by General Star were in violation of Insurance

7    Code of Regulations, especially relating to the requirement for continuity.[1]

8       9.     Due to the actions of General Star, Nijjar's assignor was forced to hire and pay a Public

9    Adjuster who filed a Proof of Loss in the sum of $803,607.53 which was rejected by General Star for

10   improper reasons as set forth herein.

11      10.    General Star improperly came up with an estimate of loss in the sum of $384,069.73,

12   yet never paid said sum even as an undisputed amount as required by law, requiring Nijjar to invoke

13   the Appraisal provision of Insurance Code Section 2071 and the Policy.

14      11.    As a result of General Star's wrongful denial and refusal to tender benefits to Nijjar's

15   assignor under the Policy that are now rightfully his, Nijjar has and continues to be damaged in an

16   amount according to proof at trial, however in excess of the minimum jurisdiction amount of the

17   unlimited jurisdiction of this Court.

18                    **<u>FIRST CAUSE OF ACTION</u>**

19                    **(BREACH OF CONTRACT)**

20      **(Against Defendants General Star and Does 1 through 20, inclusive)**

21      12.    Nijjar incorporates by reference as though fully set forth herein, paragraphs 1 through

22   11 of this Complaint.

23      13.    Nijjar alleges that he as a principal and owner of Nijjar Realty entered into a written

24   agreement, which has been defined as the Policy herein with General Star to insure the Property.

25   Nijjar as well as his assignor always had an insurable interest in the Property and is an insured under

26   the terms of the Policy and by operation of law.

27

28

[1] In assessing the value of the loss, Independent Adjuster Douglas Herr, represented General Star.

14.    The Policy provided that Nijjar pay a premium payment to General Star for property insurance coverage.   In consideration of the premium payment to General Star for the Policy, General Star agreed to provide insurance coverage on the Property as represented in the Policy.

15.    Nijjar has at all times made timely premium payments and performed his and his company's obligations under the terms and conditions of the Policy and in the manner specified by the Policy.

16.    General Star breached the Policy terms and conditions when it failed to pay Nijjar's benefits under the Policy for a covered loss by: (1) delaying payment of the Claim, (2) forcing Nijjar to attempt to perform his own repairs and cleanup; falsely undervalued his claim, and (4) failure to follow the rule of continuity which is a modified continuation of the rule of uniformity.

17.    General Star's failure to perform its obligations under the Policy has directly damaged Nijjar by deliberately delaying the investigation of his loss, devaluing his claim, and forcing him to hire a public adjustor, which has created an enormous amount of financial stress on Nijjar.  Nijjar was further forced to invoke the Appraisal provision of the Policy and after the Award was rendered, General Star failed to properly pay the Award. Also, Nijjar suffered consequential contractual damages not covered in the Appraisal award of $221,416.00.

18.    Additionally, Nijjar has been damaged because had he known that General Star was not going to fulfill its obligations under the Policy, he would have utilized other means to secure proper insurance coverage on the Property to protect his interests in the Property in case of a loss, such as the Loss that occurred to the Property.

WHEREFORE, Nijjar prays for judgment against Defendants, and each of them, as more fully set forth below.

## SECOND CAUSE OF ACTION

### (BREACH OF THE IMPLIED COVENTANT OF GOOD FAITH
### AND FAIR DEALING, INSURANCE BAD FAITH, PUNITIVE DAMAGES)
### (Against Defendants General Star and Does 1 through 20, inclusive)

19.    Nijjar hereby incorporates by reference each and every allegation contained in paragraphs 1 through 18 as though fully set forth herein at length.

1      20.    Nijjar entered into an agreement with General Star for the Policy for the Property with

2   the understanding and expectation clearly understood by General Star that it would act in good faith

3   and deal fairly with it pursuant to the Policy.

4      21.    General Star breached its implied covenant of good faith and fair dealing arising from

5   the Policy for the Property by unreasonably delaying and then withholding insurance benefits under

6   the Policy provisions for the Claim presented by Nijjar for the Property, after receiving timely

7   insurance premiums from Nijjar and notice of the Claim.

8      22.    General Star has and continues to delay and deny coverage for the Loss and continues

9   to engage in unlawful insurance claims handling practices by attempting to assert that Nijjar was not

10  entitled to his full benefits under the Policy for the Loss.  Further, General Star forced Nijjar to file for

11  and pay for Appraisal and then refused to properly pay the Appraisal Award.  Such bad faith conduct

12  constitutes a continuing tort, which has caused and continues to cause Nijjar ongoing damages in

13  excess of the unlimited jurisdictional minimum of this Court in an amount to be determined at trial.

14     23.    General Star has engaged in, and continues to engage in, a course of conduct to further

15  its own economic interests over those of Nijjar and in violation of its obligations to Nijjar.  This

16  conduct includes the matters alleged herein and incorporated by reference in the preceding paragraphs,

17  and including, but not limited to the following:

18        (a) unreasonably withholding benefits owed to Nijjar under coverage for the Property under

19            the Claim, including but not limited to failure to follow DOI regulations;

20        (b) not attempting in good faith to effectuate prompt, fair, and equitable settlement of Nijjar's

21            Claim;

22        (c) compelling Nijjar to initiate litigation to obtain benefits due under the Policy for this loss;

23            and;

24        (d) failing to consider Nijjar's interests at least equal to its own;

25        (e) commencing on a course of conduct to slow down the adjustment of the Loss and an

26            improper attempt to minimize the Loss;

27     24.    Nijjar is informed, believes, and thereon alleges, that General Star has breached its duty

28  of good faith and fair dealing owed to Nijjar by other acts or omissions of which Nijjar is presently

1   unaware and which will be set forth as learned in the process of discovery.

2       25.     General Star's conduct described herein was done with a conscious disregard of

3   Nijjar's rights and constitutes despicable conduct, as it was done with the intent to vex, injure or annoy

4   Nijjar such as to constitute oppression, fraud or malice under California *Civil Code* §3294, entitling

5   Nijjar to an award of punitive damages in an amount appropriate to punish General Star  within the

6   dictates of Due Process, or set an example of General Star to discourage similar conduct by other

7   insurance companies.

8       26.     General Star's conduct described herein was undertaken by its employees, agents, legal

9   counsel, officers and/or managing agents, and/or representatives identified as Does 1 through 20, who

10  were responsible for supervision and operation, reports, communications and/or decisions in the day to

11  day and overall operation of the company.  The conduct of said parties was therefore undertaken on

12  behalf of General Star as this illegal practice was orchestrated on a mass basis as part of a pattern and

13  practice for all similar situated insureds.   General Star further had advance knowledge of the action

14  and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by

15  managing agents whose precise identities are unknown to Nijjar at this time and are therefore

16  identified and designated herein as Does 1 through 20, inclusive.

17      27.     As a proximate and legal result of the aforementioned wrongful conduct of General

18  Star, Nijjar has suffered and will continue to suffer in the future damages, including but not limited to,

19  special, general and consequential damages.

20      28.     As a further direct and proximate cause of the conduct of General Star, Nijjar has been

21  obligated to expend and incur liability for costs of suit, attorneys' fees and related expenses in an

22  amount not yet fully ascertained, but which will be submitted at the time of trial.

23      **WHEREFORE**, Nijjar prays for judgment against Defendants, and each of them, as more

24  fully set forth behalf.

25                          **PRAYER FOR RELIEF**

26      **WHEREFORE, NIJJAR** prays for judgment against Defendants, and each of them, as

27  follows:

28

**First Cause of Action:**

1.      For special damages in an amount in excess of $1,075,043.70 and according to proof;

2.      An award of prejudgment interest at the rate of ten percent (10%) per annum and on any judgment rendered by this Court until paid in full;

3.      Court costs incurred in this action; and

4.      For any further and other relief that this Court deems just and proper.

**Second Cause of Action:**

5.      For an award of general and special damages in an amount in excess of the jurisdictional limits of the limited jurisdiction branch of this Court and according to Proof at trial;

6.      An award of prejudgment interest at the rate of ten percent (10%) per annum and on any judgment rendered by this Court until paid in full;

7.      Attorneys fees and court costs incurred in this action;

8.      For an award of Punitive Damages; and

9.      For any further and other relief that this Court deems just and proper.

DATED:  August 21, 2012

RESPECTFULLY SUBMITTED,
BEVERLY HILLS LAWYERS & ASSOCIATES

By: _____
Stephen M. Losh, Esq.
Angelica M. Leon, Esq.
Joseph Khoshlesan, Esq.
Attorney for Plaintiff Pete Nijjar

**PROOF OF SERVICE**

Superior Court of California, County Ventura
*Nijjar v General Star Insurance co.*
Case No. BC487013

    I am over eighteen years of age and not a party to the within action; my business address is 9461 Charleville Boulevard, #613, Beverly Hills, California, 90212, which is located in Los Angeles County, the county where this mailing occurred.
I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processes is deposited with the United States Postal Service that same day in the ordinary course of business.
    On the date indicated below, at my place of business at Beverly Hills, California, a copy of the following document(s):

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Were served on the interested parties in this action by placing true copies in sealed envelopes addressed as follows:

Paul Andrew Impellezzeri
Barbanel & Treuer, P.C.
1875 Century Park East. Suite 1025
Los Angeeles CA 90067

(X) **By MAIL:** I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processes is deposited with the United States Postal Service that same day in the ordinary course of business.
( ) **By Facsimile:** I also caused such document to be transmitted by facsimile to the offices of the addressee. The facsimile used complied with California Rules of Court, Rule 2003, and no error was reported by the machine.
( ) **PERSONAL SERVICE:** I hand delivered said document(s) to the addressee(s) pursuant to Code of Civil Procedure sections 473c and 1011.
(X) **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: August 28, 2012                                        
                                                      Declarant

---

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Exhibit 4
Page 32 of Notice of Removal



**NAME INSURED** : NIJJAR REALTY, INC.

**POLICY NUMBER:** IAG394764

**POLICY PERIOD** : **From** July 31, 2004     **To** July 31, 2005

FINANCIAL CENTRE, P.O. BOX 10354
STAMFORD, CONNECTICUT 06904-2354

02 PP 700 front  (09/02)

Exhibit 4
Page 33 of Notice of Removal



## GENERAL STAR INDEMNITY COMPANY
### (A STOCK INSURANCE COMPANY)
695 East Main Street
Stamford, Connecticut 06904-2354

## COMMON POLICY DECLARATIONS

**POLICY NUMBER**   IAG394764

**Previous Policy Number**  IAG390216

**NAMED INSURED**   NIJJAR REALTY, INC.

**BROKER**  MTS Insurance Service
1551 North Tustin Avenue, Suite 700
Santa Ana, CA 92705

**MAILING ADDRESS**  4900 Santa Anita Avenue
El Monte, CA 91731

**BILLPOINT CODE**  00074211

**FORM OF BUSINESS:** Corporation

**BUSINESS DESCRIPTION:**   Apartments, Retail, Offices, and Mobile Home Parks

**POLICY PERIOD:**   From July 31, 2004   to July 31, 2005   at 12:01 A.M. Standard Time
at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| Commercial General Liability Coverage Part | |
| Commercial Property Coverage Part | $654,200.00 |
| Commercial Inland Marine Coverage Part | |
| **TOTAL PREMIUM** | $654,200.00 |

Premium shown is payable at inception, unless otherwise stated.
Audit Period: Annual, unless otherwise stated.

## FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy.):

IL600 (3/02), 02 PP 618 (09/02), 02 PP 608 (01/04), 02 PP 635 (01/04)

THESE COMMON POLICY DECLARATIONS, COVERAGE PART DECLARATIONS AND COVERAGE FORMS TOGETHER WITH THE COMMON POLICY CONDITIONS AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

**COUNTERSIGNED AT** Stamford, Connecticut   **on**   November 11, 2004

Branch

BY: _____
**AUTHORIZED REPRESENTATIVE**

Exhibit 4
Page 34 of Notice of Removal

IL 600 (03/2002)

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of General Star Indemnity Company (the "Insurer") to pay any amount claimed to be due hereunder, the Insurer, at the request of the insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such Court.  However, nothing in this provision constitutes a waiver of the Insurer's rights to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States of America or of any State in the United States.

It is further agreed that service of process in such suit may be made upon the Insurer by certified mail, return receipt requested, addressed to the Insurer in care of it's **Corporate Secretary**, Attention: Legal Department, General Star Indemnity Company, 695 East Main Street, Stamford, CT 06904.  In any suit instituted under this contract, Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-referenced Corporate Secretary, or his designee, is authorized and directed to accept service of process on behalf of the Insurer in any such suit or upon the request of the insured to give a written undertaking to the insured that it will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance, or such other insurance department representative, or such other governmental officer, such as the Secretary of State, specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the Insurer's Corporate Secretary as the person to whom the said insurance department representative is authorized to mail such process or a true copy thereof.

IL 600 (03/02)          © Copyright, General Star Management Company, Stamford, CT 2002.          Page 1 of 1
                  Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Exhibit 4
Page 35 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. Premiums

The first Named Insured shown in the Declarations:

1. is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. Representations On Application Warranty.

The following representations on application warranty applies to all Coverage Parts attached to this policy. By accepting this policy, you agree, represent and warrant that:

1. The statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application are:

   (a) Accurate and complete and no facts have been suppressed, omitted or misstated; and

   (b) Material to us, and we have issued this policy in reliance upon them;

2. Any failure to fully disclose the information requested in the application for insurance, whether by omission or suppression, or any misrepresentation in the statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application, renders coverage for any claim(s) null and void and entitles us to rescind the policy from its inception; and

   3. The application for this policy is incorporated and made part of the policy by reference

### G. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

02 PP 618 (09/02)       © Copyright, General Star Management Company, Stamford, CT1999-2000.       Page 1 of 1
Includes Copyrighted material of Insurance Services Office, Inc., with its permission

Exhibit 4
Page 36 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 1   , effective  July 31, 2004          forms a part of Policy #  IAG394764

Issued to  NIJJAR REALTY, INC.                    by  General Star Indemnity Company.

In the event of cancellation of this policy by the Insured, or cancellation by us for non-payment of premium, no less than the amount of 25%        shall be retained as fully earned minimum premium, and the premium will not be subject to pro-rata or short rate cancellation calculations.

All other terms, conditions and exclusions remain unchanged.

02 PP 608 (01/04)                                                    Page 1 of 1

Exhibit 4
Page 37 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL LOSS ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 2   , effective  July 31, 2004          forms a part of Policy # IAG394764

issued to  NIJJAR REALTY, INC.                          by General Star Indemnity Company.

In consideration of the premium charged under this policy, we agree with you that in the event of a constructive total loss of the insured property, the full policy premium for the property shall be deemed fully earned for all coverages insured hereunder.  No return premium shall be payable to the insured for the unexpired term of the policy.

All other terms, conditions and exclusions remain the same.

02 PP 635 (01/04)                                                    Page 1 of 1

Exhibit 4
Page 38 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER**   IAG394764

### DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Location | | Construction Type | Occupancy |
|---|---|---|---|---|---|
| See Supplemental Declarations Page | | | | | |

### COVERAGES PROVIDED (INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.)

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance* | Rates | Premium |
|---|---|---|---|---|---|---|---|
| See Supplemental Declarations Page | | | | | | | |

*If Extra Expense Coverage, Limits On Loss Payment

### OPTIONAL COVERAGES APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW

| Prem. No. | Bldg. No. | Agreed Value Expiration Date Coverage | Amount | ☑ Replacement Cost Building | Business Personal Property | Including "Stock" |
|---|---|---|---|---|---|---|
| 1-415 | 1-72 | | | ☑ | ☐ | ☐ |

| | Inflation Guard (Percentage) Building | Personal Property | *Monthly Limit of Indemnity (Fraction) | *Maximum Period Of Indemnity | *Extended Period Of Indemnity (Days) |
|---|---|---|---|---|---|
| | | | ☐ | | |

*Applies to Business Income Only.

### MORTGAGE HOLDERS

| Prem. No. | Bldg. No. | Mortgage Holder Name | Street Address | City | State | Zip |
|---|---|---|---|---|---|---|

### DEDUCTIBLE

SEE ENDORSEMENT 02 PP 625 (01/04)

### FORMS APPLICABLE

To all coverages:
02 PP 639 (01/04), 02 PP 600 (01/04), 02 PP 605 (01/04), 02 PP 623 (01/04), 02 PP 625 (01/04),  02 PP 633 (01/04), 02 PP 631 (09/02), IL 0940 (01/02), IL 0985 (01/03), CP 0090 (07/88), CP0010 (04/02), 02 PP 632 (01/04), CP0030 (04/02), 02 PP 658 (01/04), 02 PP 648 (01/04)

To Specific Premises/Coverages:
| Prem. No. | Bldg. No. | Coverages | Form Number |
|---|---|---|---|

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 39 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

### POLICY NUMBER  IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 1 | 1-2 | 13115 Amar Rd, Baldwin Park, CA, 91706 | Frame | Apartments |
| 2 | 1-2 | 2547 - 2549 1/2 Angelus Ave., Rosemead, CA, 91770 | Frame | Apartments |
| 3 | 1 | 3545 Baldwin & 9940 Loftus, El Monte, CA, 91732 | Frame | Apartments |
| 4 | 1 | 3940 Baldwin Park Blvd., Baldwin Park, CA, 91706 | Frame | Apartments |
| 5 | 1 | 16118 Bellflower Blvd., Bellflower, CA, 90706 | Frame | Apartments |
| 6 | 1 | 9024 Blair, Rosemead, CA, 91770 | Frame | Apartments |
| 7 | 1 | 12302 Brinnon, El Monte, CA, 91732 | Frame | Apartments |
| 8 | 1-10 | 883 S. Buena Vista, Pomona, CA, 91767 | Frame | Apartments |
| 9 | 1 | 709 California St., Monrovia, CA, 91016 | Frame | Apartments |
| 10 | 1-12 | 1332 California St., Monrovia, CA, 91016 | Frame | Apartments |
| 11 | 1 | 5917 Carmelita, Huntington Park, CA, 90255 | Frame | Apartments |
| 12 | 1-3 | 2633-37 Cogswell, El Monte, CA, 91732 | Frame | Apartments |
| 13 | 1 | 3550 Cogswell, El Monte, CA, 91732 | Frame | Apartments |
| 14 | 1 | 3554-3558 Cogswell, El Monte, CA, 91732 | Frame | Apartments |
| 15 | 1 | 4415-17 Cogswell, El Monte, CA, 91732 | Frame | Apartments |
| 16 | 1-72 | 129 S. Glendora Ave., Covina, CA, 91722 | Frame | Apartments |
| 17 | 1 | 12844 Dalewood Ave., Baldwin Park, CA, 91706 | Frame | Apartments |
| 18 | 1-10 | 655 Donna Beth, Azusa, CA, 91702 | Frame | Apartments |
| 19 | 1 | 936 Eighth Ave., Arcadia, CA, 91007 | Frame | Apartments |
| 20 | 1-6 | 11227-29 Elliott Ave., El Monte, CA, 91732 | Frame | Apartments |
| 21 | 1-6 | 16130-46 Eucalyptus, Bellflower, CA, 90706 | Frame | Apartments |
| 22 | 1 | 13148 Fairgrove, Baldwin Park, CA, 91706 | Frame | Apartments |
| 23 | 1-4 | 11652-58 Ferris, El Monte, CA, 91732 | Frame | Apartments |
| 24 | 1 | 11911-19 Ferris, El Monte, CA, 91732 | Frame | Apartments |
| 25 | 1-2 | 7709 Garvey Ave., Rosemead, CA, 91770 | Frame | Apartments |
| 26 | 1-2 | 9530-9582 Garvey Ave., South El Monte, CA, 91770 | Frame | Apartments |
| 27 | 1 | 12767-12775 E.Garvey Ave., Baldwin Park, CA, 91706 | Frame | Apartments |
| 28 | 1 | 3544 Gilman Road, El Monte, CA, 91732 | Frame | Apartments |
| 29 | 1-2 | 3615-23 Gilman Road, El Monte, CA, 91732 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 40 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 30 | 1-2 | 3719-25 Gilman, El Monte, CA, 91732 | Frame | Apartments |
| 31 | 1 | 3839-45 Gilman, El Monte, CA, 91732 | Frame | Apartments |
| 32 | 1 | 12128-48 Hallwood, El Monte, CA, 91732 | Frame | Apartments |
| 33 | 1-5 | 9839-9843 1/2 Kale, El Monte, CA, 91732 | Frame | Apartments |
| 34 | 1 | 10814-10820 Klingerman, El Monte, CA, 91732 | Frame | Apartments |
| 35 | 1-4 | 12426 Klingerman, El Monte, CA, 91732 | Frame | Apartments |
| 36 | 1-2 | 752-90 La Mesa, Pomona, CA, 91767 | Frame | Apartments |
| 37 | 1-3 | 4037-4041 La Rica, Baldwin Park, CA, 91706 | Frame | Apartments |
| 38 | 1-4 | 1116-20 Larimore, La Puente, CA, 91744 | Frame | Apartments |
| 39 | 1-3 | 1420-46 Laurel, Pomona, CA, 91767 | Frame | Apartments |
| 40 | 1 | 11427 Lee Lane, El Monte, CA, 91732 | Frame | Apartments |
| 41 | 1 | 2449 Loma Ave., South El Monte, CA, 91733 | Frame | Apartments |
| 42 | 1-2 | 13727-31 Los Angeles St.; Baldwin Park, CA, 91706 | Frame | Apartments |
| 43 | 1 | 13735-37 Los Angeles St., Baldwin Park, CA, 91706 | Frame | Apartments |
| 44 | 1 | 11763 Lower Azusa Rd., El Monte, CA, 91732 | Frame | Apartments |
| 45 | 1 | 13936 Lubican St., Baldwin Park, CA, 91706 | Frame | Apartments |
| 46 | 1 | 12224 Magnolia Street, El Monte, CA, 91732 | Frame | Apartments |
| 47 | 1 | 1320 Mardina, West Covina, CA, 91723 | Frame | Apartments |
| 48 | 1-3 | 566-96 N. Marengo, Pasadena, CA, 91104 | Frame | Apartments |
| 49 | 1 | 611 Marengo, Pasadena, CA, 91104 | Frame | Apartments |
| 50 | 1 | 623 Marengo, Pasadena, CA, 91104 | Frame | Apartments |
| 51 | 1 | 2628-30 Maxson Rd., El Monte, CA, 91732 | Frame | Apartments |
| 52 | 1-4 | 2835-39 Maxson Rd., El Monte, CA, 91732 | Frame | Apartments |
| 53 | 1-2 | 3500-08 Maxson Rd., El Monte, CA, 91732 | Frame | Apartments |
| 54 | 1 | 4031-39 Maxson Rd., El Monte, CA, 91732 | Frame | Apartments |
| 55 | 1 | 3532 Meeker, El Monte, CA, 91732 | Frame | Apartments |
| 56 | 1 | 11129 Mildred, El Monte, CA, 91732 | Frame | Apartments |
| 57 | 1-2 | 3902-34 Mission Blvd., Montclair, CA, 91763 | Frame | Apartments |
| 58 | 1 | 2012 Mountain Ave., Duarte, CA, 91010 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 41 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 59 | 1 | 2735 Mt. View, El Monte, CA, 91732 | Frame | Apartments |
| 60 | 1 | 140 Newburgh, Azusa, CA, 91702 | Frame | Apartments |
| 61 | 1 | 8777 Nevada, Azusa, CA, 91702 | Frame | Apartments |
| 62 | 1-2 | 8146-52 Norwalk, Whittier, CA, 90606 | Frame | Apartments |
| 63 | 1 | 809 Orange Grove, Pasadena, CA, 91104 | Frame | Apartments |
| 64 | 1-2 | 625-77 Palomares, Pomona, CA, 91767 | Frame | Apartments |
| 65 | 1-3 | 694 Park, Pomona, CA, 91767 | Frame | Apartments |
| 66 | 1-2 | 2500-28 Paulson, El Monte, CA, 91732 | Frame | Apartments |
| 67 | 1-12 | 11618-49 Basye, El Monte, CA, 91732 | Frame | Apartments |
| 68 | 1 | 12511-15 Poinsettia, El Monte, CA, 91732 | Frame | Apartments |
| 69 | 1 | 12517-23 Poinsettia, El Monte, CA, 91732 | Frame | Apartments |
| 70 | 1 | 432 Poplar, Montebello, CA, 90640 | Frame | Apartments |
| 71 | 1-2 | 4046 Puente, Baldwin Park, CA, 91706 | Frame | Apartments |
| 72 | 1 | 9801-07 Rio Hondo, El Monte, CA, 91731 | Frame | Apartments |
| 73 | 1 | 3723-29 Rockwell, El Monte, CA, 91731 | Frame | Apartments |
| 74 | 1-19 | 5222- 5339 Rosemead Blvd., Pico Rivera, CA, 90680 | Frame | Apartments |
| 75 | 1-3 | 5430 Rosemead Blvd, Pico Rivera, CA, 90680 | Frame | Apartments |
| 76 | 1 | 1301-25 San Gabriel,  Azusa, CA, 91702 | Frame | Apartments |
| 77 | 1-3 | 2662 Santa Anita, El Monte, CA, 91732 | Frame | Apartments |
| 78 | 1 | 4900 Santa Anita (Ofc), El Monte, CA, 91733 | Frame | Apartments |
| 79 | 1-3 | 4900-10 Santa Anita, El Monte, CA, 91733 | Frame | Apartments |
| 80 | 1-10 | 12412-28 Schmidt, El Monte, CA, 91732 | Frame | Apartments |
| 81 | 1 | 13641 Temple, Temple City, CA, 91746 | Frame | Apartments |
| 82 | 1-4 | 279-83 Washington Bl., Pasadena, CA, 91104 | Frame | Apartments |
| 83 | 1-9 | 1301 Laurel, Pomona, CA, 91767 | Frame | Apartments |
| 84 | 1 | 987 Ninth St., Pomona, CA, 91767 | Frame | Apartments |
| 85 | 1-2 | 5351 Rosemead Blvd.., San Gabriel, CA, 90660 | Frame | Apartments |
| 86 | 1-2 | 610-70 Huntington Dr., Pomona, CA, 91767 | Frame | Apartments |
| 87 | 1-24 | 500-50 E. Gladstone, Azusa, CA, 91702 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 42 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 88 | 1-4 | 14830 Lakewood Dr., Bellflower, CA, 90706 | Frame | Apartments |
| 89 | 1 | 3629-37 Rockwell, El Monte, CA, 91731 | Frame | Apartments |
| 90 | 1 | 4041 Maxson Rd., El Monte, CA, 91732 | Frame | Apartments |
| 91 | 1 | 242 Fifth Ave., Montebello, CA, 90640 | Frame | Apartments |
| 92 | 1 | 118 Forest Ave., Arcadia, CA, 91006 | Frame | Apartments |
| 93 | 1-3 | 552 554, 556 Claremont Pl., Pomona, CA, 91767 | Frame | Apartments |
| 94 | 1 | 244 Olive Street, Monrovia, CA, 91016 | Frame | Apartments |
| 95 | 1 | 701-711 Buena Vista, Pomona, CA, 91767 | Frame | Apartments |
| 96 | 1 | 1221-23 Oakland Ave., Ontario, CA, 91761 | Frame | Apartments |
| 97 | 1-2 | 1219 Oakland Ave., Ontario, CA, 91761 | Frame | Apartments |
| 98 | 1 | 877 Phillips St., Pomona, CA, 91767 | Frame | Apartments |
| 99 | 1-2 | 2445-2509 Continental, El Monte, CA, 91733 | Frame | Apartments |
| 100 | 1-10 | 656 Summit Ave., Pasadena, CA, 91103 | Frame | Apartments |
| 101 | 1-2 | 566-80 Fair Oaks Ave., Pasadena, CA, 91103 | Frame | Apartments |
| 102 | 1 | 416 Garfield Ave., Pasadena, CA, 91104 | Frame | Apartments |
| 103 | 1-4 | 1415 -1427 Alamitos, Monrovia, CA, 91016 | Frame | Apartments |
| 104 | 1 | 917-921 Los Angeles St., Montebello, CA, 90640 | Frame | Apartments |
| 105 | 1 | 260 Newburgh, Azusa, CA, 91702 | Frame | Apartments |
| 106 | 1 | 863 Phillips St., Pomona, CA, 91767 | Frame | Apartments |
| 107 | 1 | 6914 Pine Ave., Bell Gardens, CA, 90201 | Frame | Apartments |
| 108 | 1 | 169-181 Washington, Pasadena, CA, 91103 | Frame | Apartments |
| 109 | 1-2 | 805 Reeves Pl. East, Pomona, CA, 91767 | Frame | Apartments |
| 110 | 1-2 | 806-834 Reeves Pl. East, Pomona, CA, 91767 | Frame | Apartments |
| 111 | 1-2 | 133-35 Dalton, Azusa, CA, 91702 | Frame | Apartments |
| 112 | 1 | 1466 Towne Ave., Pomona, CA, 91767 | Frame | Apartments |
| 113 | 1 | 2135 Las Vegas, Pomona, CA, 91767 | Frame | Apartments |
| 114 | 1-4 | 11921-31 Elliott Ave., El Monte, CA, 91732 | Frame | Apartments |
| 115 | 1-3 | 140,142, 144 Pleasant, Ontario, CA, 91761 | Frame | Apartments |
| 116 | 1 | 5400 Rosemead Blvd., Pico Rivera, CA, 90660 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 43 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 117 | 1-2 | 4622 Rosemead Blvd., San Gabriel, CA, 90660 | Frame | Apartments |
| 118 | 1 | 349 W. Howard, Pasadena, CA, 91103 | Frame | Apartments |
| 119 | 1-12 | 5223-5329 Lindsay, Pico Rivera, CA, 90660 | Frame | Apartments |
| 120 | 1 | 4113 Gibson Rd, El Monte, CA, 91732 | Frame | Apartments |
| 121 | 1-3 | 302-328 Center St., Covina, CA, 91722 | Frame | Apartments |
| 122 | 1 | 13157 Ninth St., Chino, CA, 91710 | Frame | Apartments |
| 123 | 1-2 | 5725 Clara, Bell Gardens, CA, 90201 | Frame | Apartments |
| 124 | 1 | 1099-1117 Pasadena St., Pomona, CA, 91767 | Frame | Apartments |
| 125 | 1-7 | 2308-24 Merced Ave., West Covina, CA, 91723 | Frame | Apartments |
| 126 | 1-2 | 761-773 Fair Oaks Ave., Pasadena, CA, 91103 | Frame | Apartments |
| 127 | 1 | 770 Sunset, Pasadena, CA, 91103 | Frame | Apartments |
| 128 | 1 | 14614 Pacific Ave., Baldwin Park, CA, 91706 | Frame | Apartments |
| 129 | 1-3 | 4200-40 Kingsley Ave., Montclair, CA, 91763 | Frame | Apartments |
| 130 | 1 | 1614 E. Kingsley, Pomona, CA, 91767 | Frame | Apartments |
| 131 | 1 | 1403-09 S. Reservoir, Pomona, CA, 91766 | Frame | Apartments |
| 132 | 1-2 | 7221 Somerset Blvd., Paramount, CA, 90723 | Frame | Apartments |
| 133 | 1-4 | 12317-12323 Cheshire St., Norwalk, CA, 90650 | Frame | Apartments |
| 134 | 1-6 | 12304-12313 Cheshire St., Norwalk, CA, 90650 | Frame | Apartments |
| 135 | 1-12 | 13100-13200 Vanowen Street, North Hollywood, CA, 91605 | Frame | Apartments |
| 136 | 1 | 9860 Ramona Street, Bellflower, CA, 90706 | Frame | Apartments |
| 137 | 1-3 | 1540 Dennis/1541 Harbert St., West Covina, CA, 91790 | Frame | Apartments |
| 138 | 1-8 | 7227 Richfield Street, Paramount, CA, 90723 | Frame | Apartments |
| 139 | 1 | 456 W. Elm Street, Ontario, CA, 91761 | Frame | Apartments |
| 140 | 1 | 506 W. D Street, Pomona, CA, 91767 | Frame | Apartments |
| 141 | 1-3 | 11645-49 Bayse, El Monte, CA, 91732 | Frame | Apartments |
| 142 | 1 | 8263 San Bernardino Road, Rancho Cucamonga, CA, 91730 | Frame | Apartments |
| 143 | 1-7 | 2717-2749 Nebraska Ave., South Gate, CA, 90280 | Frame | Apartments |
| 144 | 1 | 7192 & 7194 Private Road, Rancho Cucamonga, CA, 91730 | Frame | Apartments |
| 145 | 1 | 637 Brooks St., Ontario, CA, 91762 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 44 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

### POLICY NUMBER  IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 146 | 1-5 | 2796 & 2800-04 Willow Place, Southgate, CA, 90280 | Frame | Apartments |
| 147 | 1-3 | 14334 Amar Rd., La Puente, CA, 91744 | Frame | Apartments |
| 148 | 1-8 | 301 Orange Street, La Puente, CA, 91744 | Frame | Apartments |
| 149 | 1 | 1638 Kingsley Ave., Pomona, CA, 91767 | Frame | Apartments |
| 150 | 1 | 1688 Kingsley Ave., Pomona, CA, 91767 | Frame | Apartments |
| 151 | 1-2 | 627-39 Karesh Ave., Pomona, CA, 91767 | Frame | Apartments |
| 152 | 1 | 636 Del Rosa, Pomona, CA, 91767 | Frame | Apartments |
| 153 | 1 | 403 W. Figueroa, Alta Dena, CA, 91006 | Frame | Apartments |
| 154 | 1 | 1145 W. I Street, Ontario, CA, 91761 | Frame | Apartments |
| 155 | 1 | 1161 W. I St., Ontario, CA, 91761 | Frame - - | Apartments |
| 156 | 1-3 | 4810 30 50 Bandera, Montclair, CA, 91763 | Frame | Apartments |
| 157 | 1 | 3825 Maxson Road, El Monte, CA 91732 | Frame | Apartments |
| 158 | 1-2 | 608 Del Rosa, Pomona, CA, 91767 | Frame | Apartments |
| 159 | 1-3 | 275 N. Chester Ave., Pasadena, CA, 91107 | Frame | Apartments |
| 160 | 1-2 | 12912 Dalewood St., Baldwin Park, CA, 91706 | Frame | Apartments |
| 161 | 1 | 1465-85 Mission, Pomona, CA, 91766 | Frame | Apartments |
| 162 | 1 | 1123-1133 W. Fernleaf Ave., Pomona, CA, 91766 | Frame | Apartments |
| 163 | 1-2 | 12143-12145 Exline St., El Monte, CA, 91732 | Frame | Apartments |
| 164 | 1-4 | 12836 Dalewood St., Baldwin Park, CA, 91706 | Frame | Apartments |
| 165 | 1-24 | 4500-4916 Rodeo Dr., Los Angeles, CA, 90022 | Frame | Apartments |
| 166 | 1 | 741 N. Pasadena Ave., Azusa, CA, 91702 | Frame | Apartments |
| 167 | 1 | 1425 West Stoneridge Court, Ontario, CA, 91762 | Frame | Apartments |
| 168 | 1 | 4702, 4710, 4714, 4716 Holt Bl., Montclair, CA, 91763 | Frame | Apartments |
| 169 | 1 | 2165 N. Raymond, Pasadena, CA, 91103 | Frame | Apartments |
| 170 | 1-3 | 633, 641, 645-47 E. Pasadena St., Pomona, CA, 91767 | Frame | Apartments |
| 171 | 1-5 | 11831-839 Lansdale, El Monte, CA 91732 | Frame | Apartments |
| 172 | 1 | 16131 Eucalyptus, Bellflower, CA, 90706 | Frame | Apartments |
| 173 | 1-2 | 651-663 Karesh Ave., Pomona, CA, 91767 | Frame | Apartments |
| 174 | 1 | 404 N, Garfield Ave., Pasadena, CA, 91101 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 45 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

### POLICY NUMBER  IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 175 | 1-18 | 1723-50 & 1801-1830 S. Westmoreland, Los Angeles, CA, 90006 | Frame | Apartments |
| 176 | 1-6 | 5911-5951 Imperial Hwy., Southgate, CA, 90280 | Frame | Apartments |
| 177 | 1-4 | 11014-11034 W. Hondo Pkwy., El Monte, CA, 91732 | Frame | Apartments |
| 178 | 1-3 | 6938 Hood & 6939 Newell, Huntington Park, CA, 90255 | Frame | Apartments |
| 179 | 1-2 | 5949-55 Gage Ave., Bell Gardens, CA, 90201 | Frame | Apartments |
| 180 | 1-2 | 5957-61 Gage Ave., Bell Gardens, CA, 90201 | Frame | Apartments |
| 181 | 1 | 1020 S. Waters, Pomona, CA, 91766 | Frame | Apartments |
| 182 | 1 | 996 S. Waters, Pomona, CA, 91766 | Frame | Apartments |
| 183 | 1 | 974 Waters Ave., Pomona, CA, 91766 | Frame | Apartments |
| 184 | 1 | 3503 3507, 3507 1/2 And 3511granada, El Monte, CA, 91731 | Frame | Apartments |
| 185 | 1-7 | 695-697-699 Muir Street, Pomona, CA, 91766 | Frame | Apartments |
| 186 | 1-8 | 1111 S. Reservoir Street, Pomona, CA, 91766 | Frame | Apartments |
| 187 | 1 | 670 Erie Street, Pomona, CA, 91768 | Frame | Apartments |
| 188 | 1-2 | 3030 Maxson Road, El Monte, CA, 91732 | Frame | Apartments |
| 189 | 1-9 | 2664 1/2 Maxson Rd., El Monte, CA, 91732 | Frame | Apartments |
| 190 | 1-3 | 2849-53 Maxson Road, El Monte, CA, 91732 | Frame | Apartments |
| 191 | 1-2 | 2014 Buena Vista, Duarte, CA, 91010 | Frame | Apartments |
| 192 | 1-2 | 3938 Gillman Rd., El Monte, CA, 91732 | Frame | Apartments |
| 193 | 1-2 | 1081 E. Holt/1072 Nocta St., Ontario, CA, 91761 | Frame | Apartments |
| 194 | 1-5 | 1348 E.Nocta St., Ontario, CA, 91764 | Frame | Apartments |
| 195 | 1-5 | 810 Duarte Ave., Monrovia, CA, 91016 | Frame | Apartments |
| 196 | 1-2 | 1127-31 Garvey Ave., West Covina, CA, 91791 | Frame | Apartments |
| 197 | 1-6 | 13103-13219 Victory Blvd., Los Angeles, CA, 91401 | Frame | Apartments |
| 198 | 1-2 | 11433 Elliott Avenue, El Monte, CA, 91732 | Frame | Apartments |
| 199 | 1-2 | 10050-60 Valley Blvd.., El Monte, CA, 91732 | Frame | Apartments |
| 200 | 1-2 | 11403-11407 1/2 Dodson St., El Monte, CA, 91732 | Frame | Apartments |
| 201 | 1 | 6617 & 6623 Fulton Ave., Van Nuys, CA, 91401 | Frame | Apartments |
| 202 | 1-2 | 1329 N. Maine Ave., Baldwin Park, CA, 91706 | Frame | Apartments |
| 203 | 1 | 15800 Queenside Drive, Covina, CA, 91722 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 46 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

### POLICY NUMBER  IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 204 | 1-2 | 2295 Cazador Dr. & 2230 W. Ave 33, Los Angeles, CA, 90065 | Frame | Apartments |
| 205 | 1 | 2842-46 Maxson Rd., El Monte, CA, 91732 | Frame | Apartments |
| 206 | 1-2 | 3154-3164 1/2 Banning Ave., Lynwood, CA, 90262 | Frame | Apartments |
| 207 | 1-2 | 122 & 126 Rampart St., Los Angeles, CA, 90057 | Frame | Apartments |
| 208 | 1-2 | 9164-9172 Date Street, Fontana, CA, 92335 | Frame | Apartments |
| 209 | 1 | 674 Karesh Ave., Pomona, CA, 91767 | Frame | Apartments |
| 210 | 1-2 | 624-36 Abbey, Pomona, CA, 91767 | Frame | Apartments |
| 211 | 1-2 | 674-686 Abbey Lane, Pomona, CA, 91767 | Frame | Apartments |
| 212 | 1 | 134 Cherry Ave., Azusa, CA, 91702 | Frame | Apartments |
| 213 | 1 | 1415-57 Marengo Ave., Pasadena, CA, 91103 | Frame | Apartments |
| 214 | 1 | 190-92 Grandview, Pasadena, CA, 91103 | Frame | Apartments |
| 215 | 1 | 11304-12 Medina, El Monte, CA, 91731 | Frame | Apartments |
| 216 | 1 | 4110-4112 Shirley Ave, Monrovia, CA, 91016 | Frame | Apartments |
| 217 | 1 | 511-511 1/2 Lemon Ave., Monrovia, CA, 91016 | Frame | Apartments |
| 218 | 1 | 3038 Nevada Ave., El Monte, CA, 91732 | Frame | Apartments |
| 219 | 1 | 2729 Humbert,  El Monte, CA, 91732 | Frame | Apartments |
| 220 | 1-2 | 13845-47 Los Angeles, Baldwin Park, CA, 91706 | Frame | Apartments |
| 221 | 1 | 990 Ninth St., Pomona, CA, 91768 | Frame | Apartments |
| 222 | 1 | 2542 Peck Road, Monrovia, CA, 91016 | Frame | Apartments |
| 223 | 1 | 910 Walnut, Monrovia, CA, 91706 | Frame | Apartments |
| 224 | 1 | 845 N. Marengo Ave., Pasadenam, CA, 91103 | Frame | Apartments |
| 225 | 1 | 1660 Kingsley, Pomona, CA, 91767 | Frame | Apartments |
| 226 | 1-2 | 4715-17 Santa Anita Ave., El Monte, CA, 91731 | Frame | Apartments |
| 227 | 1 | 955 Hansen, Pomona, CA, 91767 | Frame | Apartments |
| 228 | 1 | 645 Hoefner, Los Angeles, CA, 90022 | Frame | Apartments |
| 229 | 1 | 814 Karesh, Pomona, CA, 91767 | Frame | Apartments |
| 230 | 1 | 1155 Thomas, Pomona, CA, 91767 | Frame | Apartments |
| 231 | 1 | 1173 Thomas, Pomona, CA, 91767 | Frame | Apartments |
| 232 | 1-2 | 650-662 Abbey Lane, Pomona, CA, 91767 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 47 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 233 | 1-4 | 1651 E. 9th Street, Pomona, CA, 91766 | Frame | Apartments |
| 234 | 1 | 11112 Kingerman Street, El Monte, CA, 91731 | Frame | Apartments |
| 235 | 1 | 607-615 East Pasadena St., Pomona, CA, 91767 | Frame | Apartments |
| 236 | 1 | 4046 Vineland A-T, Baldwin Park, CA, 91706 | Frame | Apartments |
| 237 | 1 | 1016 E. Sycamore St., Upland, CA, 91786 | Frame | Apartments |
| 238 | 1 | 1015 Richland, Upland, CA, 91786 | Frame | Apartments |
| 239 | 1 | 4300 Verona Street, Los Angeles, CA, 90023 | Frame | Apartments |
| 240 | 1-3 | 11318-11318 1/2 Bryant Rd., El Monte, CA, 91732 | Frame | Apartments |
| 241 | 1 | 451 W. Arrow Hwy. A-E, Glendora, CA, 91740 | Frame | Apartments |
| 242 | 1 | 399 N. Garfield Ave., Pasadena, CA, 91101 | Frame | Apartments |
| 243 | 1-2 | 1917-1919 Strozier Ave., South El Monte, CA, 91733 | Frame | Apartments |
| 244 | 1-3 | 3519-21 Maxson Rd., El Monte, CA, 91732 | Frame | Apartments |
| 245 | 1-8 | 2021-2033 Mountain Ave., Duarte, CA, 91009 | Frame | Apartments |
| 246 | 1 | 15714 Cadwell St., La Puente, CA, 91746 | Frame | Apartments |
| 247 | 1 | 14747 Vanowen Street, Van Nuys, CA, 91405 | Frame | Apartments |
| 248 | 1-2 | 7348 & 7350 Milwood, Canoga Park, CA, 91303 | Frame | Apartments |
| 249 | 1 | 14763 Vanowen Street, Van Nuys, CA, 91405 | Frame | Apartments |
| 250 | 1 | 213 S. Bandy Avenue, West Covina, CA, 91790 | Frame | Apartments |
| 251 | 1-2 | 154-156 Wyland Way, Monrovia, CA, 91016 | Frame | Apartments |
| 252 | 1 | 13600 Sherman Way, Van Nuys, CA, 91405 | Frame | Apartments |
| 253 | 1-3 | 4431-4437 Cosgwell Road, El Monte, CA, 91731 | Frame | Apartments |
| 254 | 1-6 | 16975 San Bernardino Ave., Fontana, CA, 92335 | Frame | Apartments |
| 255 | 1-3 | 796-798-800 Earlham Street, Pasadena, CA, 91101 | Frame | Apartments |
| 256 | 1 | 7215 Milton Avenue, Whittier, CA, 90602 | Frame | Apartments |
| 257 | 1 | 2438 Lovejoy Street, Pomona, CA, 91767 | Frame | Apartments |
| 258 | 1 | 3243 Merrifield Ave., Pomona, CA, 91767 | Frame | Apartments |
| 259 | 1-4 | 310 Genoa, Arcadia, CA, 91007 | Frame | Apartments |
| 260 | 1 | 1139-1143 E. Garvey Ave., West Covina, CA, 91790 | Frame | Apartments |
| 261 | 1-2 | 8128 - 8134 Broadway, Whittier, CA, 90806 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 48 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

### POLICY NUMBER  IAG394764

### DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 262 | 1-3 | 22334-22404 S. Normandie Ave.,  Torrance, CA, 90502 | Frame | Apartments |
| 263 | 1 | 1101-1115 N. Park Ave., Pomona, CA, 91768 | Frame | Apartments |
| 264 | 1-3 | 1129-1151 N. Park Ave., Pomona, CA, 91768 | Frame | Apartments |
| 265 | 1-4 | 1106-1112 N. Wisconsin St., Pomona, CA, 91768 | Frame | Apartments |
| 266 | 1 | 820 Maple Street, Montebello, CA, 90640 | Frame | Apartments |
| 267 | 1 | 117 S. 19th Street,  Montebello, CA, 90640 | Frame | Apartments |
| 268 | 1-13 | 804-28e. Nocta & 803 E. Willow Ave., Ontario, CA, 91764 | Frame | Apartments |
| 269 | 1 | 12047-53 Paramount Blvd.,  Downey, CA, 90242 | Frame | Apartments |
| 270 | 1 | 890 Indian Hill Blvd., Pomona, CA, 91766 | Frame | Apartments |
| 271 | 1-2 | 10736-10842 Shire Place,  Whittier, CA, 90601 | Frame | Apartments |
| 272 | 1-2 | 11113-11119 Elliott Ave., El Monte, CA, 91731 | Frame | Apartments |
| 273 | 1-2 | 509 S. Chapel Avenue, Alhambra, CA, 91801 | Frame | Apartments |
| 274 | 1-2 | 1277,1297 & 1303 E. Lynwood, San Bernardino, CA, 92404 | Frame | Apartments |
| 275 | 1 | 1952 W. Orange Grove, Pomona, CA, 91768 | Frame | Apartments |
| 276 | 1 | 12032 Ferris Road, El Monte, CA, 91732 | Frame | Apartments |
| 277 | 1 | 1555 Pumalo St., San Bernardino, CA, 92404 | Frame | Apartments |
| 278 | 1-5 | 229-271 E. 18th St., San Bernardino, CA, 92404 | Frame | Apartments |
| 279 | 1-3 | 9170 Acacia Avenue, Fontana, CA, 92335 | Frame | Apartments |
| 280 | 1-2 | 8538 - 8540 Tamarind, Fontana, CA, 92335 | Frame | Apartments |
| 281 | 1-5 | 3182-3186 Euclid Ave., Lynwood, CA, 90262 | Frame | Apartments |
| 282 | 1-6 | 11616-11620 Garvey St., El Monte, CA, 91732 | Frame | Apartments |
| 283 | 1 | 375 E. Mountain St., Pasadena, CA, 91104 | Frame | Apartments |
| 284 | 1-3 | 1433 E. Lynwood Ave., San Bernardino, CA, 92404 | Frame | Apartments |
| 285 | 1-5 | 6740-6788 Orange St., Highland, CA, 92346 | Frame | Apartments |
| 286 | 1-20 | 1205-1258 Elma St., Ontario, CA, 91764 | Frame | Apartments |
| 287 | 1-3 | 9023-9051 Juniper, Fontana, CA, 92335 | Frame | Apartments |
| 288 | 1-7 | 1003, 1009, 1026, 1027, 1032, 1033 & 1039 N. Sacramento Ave., Ontario, CA, 91764 | Frame | Apartments |
| 289 | 1 | 15546 Chase St., North Hills, CA, 91343 | Frame | Apartments |
| 290 | 1 | 15558 Chase St., North Hills, CA, 91343 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 49 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY
### Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 291 | 1 | 8727 Toblas St., Panorama City, CA, 91402 | Frame | Apartments |
| 292 | 1 | 8731 Toblas St., Panorama City, CA, 91402 | Frame | Apartments |
| 293 | 1 | 9000 Orion Ave., North Hills, CA, 91343 | Frame | Apartments |
| 294 | 1-2 | 14228-14238 Sherman Way, Van Nuys, CA, 91405 | Frame | Apartments |
| 295 | 1-2 | 14900 Arrow Rte, Fontana, CA, 92335 | Frame | Apartments |
| 296 | 1 | 424 N. Catalina Ave,  Pasadena, CA, 91106 | Frame | Apartments |
| 297 | 1-3 | 6423 & 8503 Miramonte Blvd., Los Angeles, CA, 90001 | Frame | Apartments |
| 298 | 1 | 9258 W. Denni Street, Wilmington, CA, 90744 | Frame | Apartments |
| 299 | 1 | 235 E. Opp St., Wilmington, CA, 90744 | Frame | Apartments |
| 300 | 1 | 688 Karesh Avenue, Pomona, CA, 91767 | Frame | Apartments |
| 301 | 1-2 | 11039-11041 Lower Azusa Rd., El Monte, CA, 91731 | Frame | Apartments |
| 302 | 1-3 | 7249 Petrol St, Paramount, CA, 90723 | Frame | Apartments |
| 303 | 1-2 | 11009 & 11019 Cassina, South Gate, CA, 90280 | Frame | Apartments |
| 304 | 1-8 | 422-448 N. Eucalyptus Ave, Rialto, CA, 92676 | Frame | Apartments |
| 305 | 1 | 10743 Weaver Ave., South El Monte, CA, 91733 | Frame | Apartments |
| 306 | 1-2 | 1806 S. Bonnie Brae St., Los Angeles, CA, 90001 | Frame | Apartments |
| 307 | 1-4 | 11933-11935 Washington Blvd., Whittier, CA, 90606 | Frame | Apartments |
| 308 | 1 | 276-278-280 W. Highland Ave, Highland, CA, 91731 | Frame | Apartments |
| 309 | 1 | 3636 Old Archibald Ave., Ontario, CA, 91764 | Frame | Apartments |
| 310 | 1-5 | 1147-1163 Phillips Blvd., Pomona, CA, 91766 | Frame | Apartments |
| 311 | 1 | 26341 9th Street, Highland, CA, 92346 | Frame | Apartments |
| 312 | 1 | 531 E. Mckinley St., Rialto, CA, 92376 | Frame | Apartments |
| 313 | 1 | 693 N. L Street, San Bernardino, CA, 92411 | Frame | Apartments |
| 314 | 1 | 1530 Lynwood Dr., San Bernardino, CA, 92411 | Frame | Apartments |
| 315 | 1 | 26025 E. 10th Street, San Bernardino, CA, 92404 | Frame | Apartments |
| 316 | 1 | 7108 Alice Street, Highland, CA, 92346 | Frame | Apartments |
| 317 | 1 | 6604 Citrus Avenue, Fontana, CA, 92336 | Frame | Apartments |
| 318 | 1-2 | 501 &529 N. Acacia Avenue, Rialto, CA, 92376 | Frame | Apartments |
| 319 | 1 | 1760 Garden Drive, San Bernardino, CA, 92404 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 50 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

### POLICY NUMBER  IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 320 | 1 | 5331 Ironwood St., San Bernardino, CA, 92404 | Frame | Apartments |
| 321 | 1-6 | 147,151,157 13th St & 1275,1283 1291 Genevieve, San Bernardino, CA, 92391 | Frame | Apartments |
| 322 | 1 | 1471 N. Sierra Way, San Bernardino, CA, 92405 | Frame | Apartments |
| 323 | 1 | 15410 Citron Avenue, Fontana, CA, 92335 | Frame | Apartments |
| 324 | 1-6 | 6805 Foster Bridge, Bell Gardens, CA, 90201 | Frame | Apartments |
| 325 | 1-2 | 349 & 349 1/2 N. Lilac, Rialto, CA, 92376 | Frame | Apartments |
| 326 | 1 | 7936-7938 Jaboneria Rd. & 5817-5821 Quinn Bell Gardens, CA, 90201 | Frame | Apartments |
| 327 | 1 | 429 Lohart, Montebello, CA, 90640 | Frame | Apartments |
| 328 | 1-14 | 1443 Cedar Street, San Bernardino, CA, 92404 | Frame | Apartments |
| 329 | 1 | 618 N. Gordon Street, Pomona, CA, 91767 | Frame | Apartments |
| 330 | 1-2 | 1173-1179 Pasadena Street, Pomona, CA, 91767 | Frame | Apartments |
| 331 | 1 | 27014 13th Street, Highland, CA, 92346 | Frame | Apartments |
| 332 | 1 | 1357 N. Cedar Avenue, San Bernardino, CA, 92404 | Frame | Apartments |
| 333 | 1-4 | 7596 Griffith,, Highland, CA, 92346 | Frame | Apartments |
| 334 | 1 | 25884 E. 9th Street, Highland, CA, 92410 | Frame | Apartments |
| 335 | 1-5 | 1964-1970 1/2 Nolan St., San Bernardino, CA, 92404 | Frame | Apartments |
| 336 | 1-2 | 7370 Lynwood Way, Highland, CA, 92346 | Frame | Apartments |
| 337 | 1-2 | 1974-1980 Nolan Street, San Bernardino, CA, 92404 | Frame | Apartments |
| 338 | 1-2 | 2922-2924 California St., San Bernardino, CA, 92404 | Frame | Apartments |
| 339 | 1 | 2063 Pershing Ave., San Bernardino, CA, 92405 | Frame | Apartments |
| 340 | 1 | 26030 Cypress St., Highland, CA, 92410 | Frame | Apartments |
| 341 | 1 | 1419 N. Sierra Way, San Bernardino, CA, 92405 | Frame | Apartments |
| 342 | 1 | 14902 Brand Blvd., San Fernando, CA, 91345 | Frame | Apartments |
| 343 | 1 | 1448 Colorado Ave., San Bernardino, CA, 92411 | Frame | Apartments |
| 344 | 1-4 | 1267-1271 G Street, San Bernardino, CA, 92405 | Frame | Apartments |
| 345 | 1 | 140 N. I St, San Bernardino, CA, 92410 | Frame | Apartments |
| 346 | 1 | 7110 San Francisco St., Highland, CA, 92346 | Frame | Apartments |
| 347 | 1 | 158 W. Orange, San Bernardino, CA, 92410 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 51 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 348 | 1-2 | 3203 Utah Street, El Monte, CA, 91731 | Frame | Apartments |
| 349 | 1 | 1243 Bell St., San Bernardino, CA, 92410 | Frame | Apartments |
| 350 | 1-2 | 1235 & 1243 Bell St., San Bernardino, CA, 92410 | Frame | Apartments |
| 351 | 1-9 | 6624 Ajax Street, Bell Gardens, CA, 90201 | Frame | Apartments |
| 352 | 1-2 | 7522 Ira Blvd Bell, Gardens, CA, 90201 | Frame | Apartments |
| 353 | 1-3 | 6723 Malabor Avenue, Huntington Park, CA, 90255 | Frame | Apartments |
| 354 | 1-2 | 124-126-128 E. 9th Street, San Bernardino, CA, 92410 | Frame | Apartments |
| 355 | 1 | 1453 W. Phillips Blvd., Pomona, CA, 91766 | Frame | Apartments |
| 356 | 1-3 | 27256 Pacific Avenue, San Bernardino, CA, 92404 | Frame | Apartments |
| 357 | 1 | 6975, 6977, 6979 Glasgow, San Bernardino, CA, 92404 | Frame | Apartments |
| 358 | 1 | 7432 Hillview Street, Highland, CA, 92346 | Frame | Apartments |
| 359 | 1-2 | 1124 E. 5th Street, San Bernardino, CA, 92404 | Frame | Apartments |
| 360 | 1 | 515-525 Weir Road, San Bernardino, CA, 92408 | Frame | Apartments |
| 361 | 1-2 | 1334 Arrowhead Avenue & 1343 Arrowhead Avenue San Bernardino, CA, 92405 | Frame | Apartments |
| 362 | 1 | 222-240 W. 8th Street, San Bernardino, CA, 92401 | Frame | Apartments |
| 363 | 1 | 345-347 W. 8th Street, San Bernardino, CA, 92401 | Frame | Apartments |
| 364 | 1-3 | 906 Mcdonald Avenue, Wilmington, CA, 90744 | Frame | Apartments |
| 365 | 1-4 | 952, 956, 958, 960 Mountain, San Bernardino, CA, 92410 | Frame | Apartments |
| 366 | 1 | 2062 Adams Street, San Bernardino, CA, 92407 | Frame | Apartments |
| 367 | 1 | 207 W. Wabash, San Bernardino, CA, 92410 | Frame | Apartments |
| 368 | 1 | 555 West 21st Street, San Bernardino, CA, 92404 | Frame | Apartments |
| 369 | 1-2 | 272-280 W. 8th Street, San Bernardino, CA, 92401 | Frame | Apartments |
| 370 | 1 | 9221 Olive Street, Fontana, CA, 92335 | Frame | Apartments |
| 371 | 1 | 539 West 25th Street, San Bernardino, CA, 92405 | Frame | Apartments |
| 372 | 1 | 13445 Waco Street, Baldwin Park, CA, 91706 | Frame | Apartments |
| 373 | 1 | 267 W. Thompson Street, San Bernardino, CA, 92405 | Frame | Apartments |
| 374 | 1 | 1017 Holiday Drive, West Covina, CA, 91791 | Frame | Apartments |
| 375 | 1-5 | 7012-7022 Somerset Blvd., Paramount, CA, 90723 | Frame | Apartments |
| 376 | 1 | 2123 Mckinley Street, Highland, CA, 92404 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 52 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
### Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

### DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 377 | 1 | 2141 Mckinley Street, Highland, CA, 92404 | Frame | Apartments |
| 378 | 1-4 | 11329-33-45 Sherman Way & 7211 Bakman Avenue, Sun Valley, CA, 91352 | Frame | Apartments |
| 379 | 1 | 606 West 16th Street, San Bernardino, CA, 92405 | Frame | Apartments |
| 380 | 1 | 608 W. 82nd Street, Los Angeles, CA, 90044 | Frame | Apartments |
| 381 | 1 | 11224 Klingman St., El Monte, CA, 91733 | Frame | Apartments |
| 382 | 1 | 11116 Klingman St., El Monte, CA, 91733 | Frame | Apartments |
| 383 | 1-5 | 1738 Orchard Avenue, Los Angeles, CA, 90006 | Frame | Apartments |
| 384 | 1 | 1373 Cedar St., San Bernardino, CA, 92410 | Frame | Apartments |
| 385 | 1 | 1351 Arrowhead, San Bernardino, CA, 92405 | Frame | Apartments |
| 386 | 1 | 11431 Tiara Street, North Hollywood, CA, 91604 | Frame | Apartments |
| 387 | 1-2 | 3205 N. Golden Avenue, San Bernardino, CA, 92404 | Frame | Apartments |
| 388 | 1-8 | 2640 W. Rialto Avenue, San Bernardino, CA, 92408 | Frame | Apartments |
| 389 | 1 | 4967 N. Lugo, San Bernardino, CA, 92404 | Frame | Apartments |
| 390 | 1-7 | 5605-07-09-11 Maywood Ave., Maywood, CA, 90270 | Frame | Apartments |
| 391 | 1-4 | 16859, 16861, 16863 Passage &16858 16860, 16862 Verdura Ave. Paramount, CA, 90723 | Frame | Apartments |
| 392 | 1-2 | 8816 & 8818 Marshall Ave., Rosemead, CA, 91770 | Frame | Apartments |
| 393 | 1-2 | 923 N. Banning Blvd., Wilmington, CA, 90744 | Frame | Apartments |
| 394 | 1 | 8437 Glenoaks Blvd., Sun Valley, CA, 91352 | Frame | Apartments |
| 395 | 1 | 12880 Lakeland & 11019 Greenstone Santa Fe Springs, CA, 90670 | Frame | Apartments |
| 396 | 1-3 | 7355 & 7357 San Francisco Street, Highland, CA, 92501 | Frame | Apartments |
| 397 | 1 | 7363 San Francisco Street, Highland, CA, 92501 | Frame | Apartments |
| 398 | 1 | 4541 Murietta Avenue, Sherman Oaks, CA, 91423 | Frame | Apartments |
| 399 | 1 | 5216 Kester Avenue, Sherman Oaks, CA, 91411 | Frame | Apartments |
| 400 | 1 | 3828 Los Feliz Blvd., Los Angeles, CA, 90027 | Frame | Apartments |
| 401 | 1 | 1132 S. Washington Ave., San Bernardino, CA, 92408 | Frame | Apartments |
| 402 | 1 | 7809 & 7823 Sterling Avenue, Highland, CA, 92404 | Frame | Apartments |
| 403 | 1 | 1935 Orchard Avenue, Los Angeles, CA, 90007 | Frame | Apartments |
| 404 | 1 | 8410 & 8414 Langdon Ave., North Hills, CA, 91343 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 53 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG394764

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| 405 | 1 | 145 N. Inez, Hemet, CA, 92543 | Frame | Apartments |
| 406 | 1 | 142 N. Alesandro Street, Hemet, CA, 92543 | Frame | Apartments |
| 407 | 1 | 1220 East Whittier Avenue, Hemet, CA, 92543 | Frame | Apartments |
| 408 | 1 | 416 S. Buena Vista, Hemet, CA, 92543 | Frame | Apartments |
| 409 | 1 | 141 N. Inez Street, Hemet, CA, 92543 | Frame | Apartments |
| 410 | 1 | 331 S. Ramona Street, Hemet, CA, 92543 | Frame | Apartments |
| 411 | 1 | 519 Central Avenue, Hemet, CA, 92543 | Frame | Apartments |
| 412 | 1-4 | 320-326 West Latham Ave., Hemet, CA, 92543 | Frame | Apartments |
| 413 | 1-19 | 135 N. Inez, Hemet, CA, 92543 | Frame | Apartments |
| 414 | 1-7 | 434 S. Buena Vista, Hemet, CA, 92543 | Frame | Apartments |
| 415 | 1-2 | 137 E. 16th Street And 1574 & 1576 N. Lugo Avenue San Bernardino, CA, 92404 | Frame | Apartments |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Exhibit 4
Page 54 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

POLICY NUMBER  IAG394764                    **Stamford, Connecticut**

**COVERAGES PROVIDED** (INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.)

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance* | Rates | Premium |
|---|---|---|---|---|---|---|---|
| 1-415 | 1-72 | Building Business Personal Property Business Income with Extra Expense including Rental Value | $2,500,000 per Occurrence; Not to exceed Values on Location Schedule (Form 02 PP 639 (01/04)) | Special excluding Flood, Earthquake, and Earthquake Sprinkler Leakage | NIL | Included | Included |
| | | Ordinance or Law** | $100,000 per Occurrence | | | | |

** Any Sublimit listed on these Declarations is part of, and not in addition to, the lesser of the Limit of Insurance or  the Values as reported on the Location Schedule (Form 02 PP 639)

* If Extra Expense Coverage, Limits On Loss Payment

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

**Exhibit 4**
**Page 55 of Notice of Removal**

## GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.   by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 1 | 1-2 | Apartments | $1,505,660 | $40,000 | $243,400 |
| 2 | 1-2 | Apartments | $143,000 | $10,000 | $26,400 |
| 3 | 1 | Apartments | $486,588 | $20,000 | $139,200 |
| 4 | 1 | Apartments | $171,000 | $10,000 | $37,800 |
| 5 | 1 | Apartments | $145,000 | $10,000 | $175,900 |
| 6 | 1 | Apartments | $135,000 | $10,000 | $10,400 |
| 7 | 1 | Apartments | $97,500 | $10,000 | $12,100 |
| 8 | 1-10 | Apartments | $2,650,500 | $50,000 | $432,200 |
| 9 | 1 | Apartments | $249,938 | $15,000 | $47,100 |
| 10 | 1-12 | Apartments | $780,000 | $25,000 | $102,100 |
| 11 | 1 | Apartments | $1,767,000 | $45,000 | $344,500 |
| 12 | 1-3 | Apartments | $338,000 | $15,000 | $46,600 |
| 13 | 1 | Apartments | $1,131,000 | $30,000 | $181,000 |
| 14 | 1 | Apartments | $513,000 | $20,000 | $76,100 |
| 15 | 1 | Apartments | $250,800 | $15,000 | $36,700 |
| 16 | 1-72 | Apartments | $8,551,150 | $150,000 | $1,908,500 |
| 17 | 1 | Apartments | $474,300 | $20,000 | $88,800 |
| 18 | 1-10 | Apartments | $2,418,230 | $45,000 | $320,100 |
| 19 | 1 | Apartments | $193,427 | $10,000 | $26,700 |
| 20 | 1-6 | Apartments | $297,700 | $15,000 | $50,700 |
| 21 | 1-6 | Apartments | $815,100 | $25,000 | $130,900 |
| 22 | 1 | Apartments | $661,430 | $20,000 | $110,200 |
| 23 | 1-4 | Apartments | $366,000 | $15,000 | $57,000 |
| 24 | 1 | Apartments | $453,035 | $20,000 | $69,100 |
| 25 | 1-2 | Apartments | $2,223,000 | $45,000 | $465,500 |

02 PP 639 (01/04)

Page 1 of 17

Exhibit 4
Page 56 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.   by  General Star Indemnity Company.

| | | | | 100% DECLARED VALUES | |
| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 26 | 1-2 | Apartments | $220,000 | $15,000 | $212,700 |
| 27 | 1 | Apartments | $1,148,400 | $15,000 | $162,000 |
| 28 | 1 | Apartments | $603,290 | $20,000 | $108,200 |
| 29 | 1-2 | Apartments | $1,846,800 | $30,000 | $277,600 |
| 30 | 1-2 | Apartments | $2,221,060 | $45,000 | $317,400 |
| 31 | 1 | Apartments | $296,400 | $25,000 | $53,300 |
| 32 | 1 | Apartments | $75,000 | $10,000 | $9,500 |
| 33 | 1-5 | Apartments | $598,000 | $20,000 | $76,100 |
| 34 | 1 | Apartments | $655,500 | $20,000 | $122,200 |
| 35 | 1-4 | Apartments | $798,000 | $25,000 | $104,900 |
| 36 | 1-2 | Apartments | $969,000 | $30,000 | $134,500 |
| 37 | 1-3 | Apartments | $201,000 | $10,000 | $42,400 |
| 38 | 1-4 | Apartments | $664,050 | $20,000 | $106,300 |
| 39 | 1-3 | Apartments | $400,000 | $15,000 | $78,300 |
| 40 | 1 | Apartments | $65,000 | $10,000 | $9,300 |
| 41 | 1 | Apartments | $66,000 | $10,000 | $143,700 |
| 42 | 1-2 | Apartments | $444,600 | $20,000 | $83,800 |
| 43 | 1 | Apartments | $267,780 | $15,000 | $44,600 |
| 44 | 1 | Apartments | $110,000 | $10,000 | $28,300 |
| 45 | 1 | Apartments | $336,600 | $15,000 | $38,300 |
| 46 | 1 | Apartments | $55,000 | $10,000 | $102,900 |
| 47 | 1 | Apartments | $464,440 | $15,000 | $100,500 |
| 48 | 1-3 | Apartments | $2,402,210 | $50,000 | $459,200 |
| 49 | 1 | Apartments | $156,000 | $10,000 | $22,800 |
| 50 | 1 | Apartments | $425,335 | $15,000 | $81,600 |

Exhibit 4
Page 57 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,    forms a part of Policy # IAG394764

Issued to    NIJJAR REALTY, INC.    by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 51 | 1 | Apartments | $1,962,225 | $45,000 | $275,300 |
| 52 | 1-4 | Apartments | $498,860 | $20,000 | $99,400 |
| 53 | 1-2 | Apartments | $1,448,370 | $35,000 | $213,200 |
| 54 | 1 | Apartments | $1,550,400 | $40,000 | $260,500 |
| 55 | 1 | Apartments | $963,810 | $30,000 | $148,000 |
| 56 | 1 | Apartments | $2,764,500 | $50,000 | $592,200 |
| 57 | 1-2 | Apartments | $969,000 | $30,000 | $119,500 |
| 58 | 1 | Apartments | $427,500 | $15,000 | $72,300 |
| 59 | 1 | Apartments | $456,000 | $15,000 | $84,900 |
| 60 | 1 | Apartments | $1,624,160 | $40,000 | $281,100 |
| 61 | 1 | Apartments | $130,000 | $10,000 | $13,600 |
| 62 | 1-2 | Apartments | $1,047,890 | $30,000 | $184,700 |
| 63 | 1 | Apartments | $501,315 | $20,000 | $100,100 |
| 64 | 1-2 | Apartments | $1,351,580 | $35,000 | $160,000 |
| 65 | 1-3 | Apartments | $1,012,550 | $30,000 | $141,600 |
| 66 | 1-2 | Apartments | $1,037,400 | $30,000 | $147,000 |
| 67 | 1-12 | Apartments | $5,101,000 | $100,000 | $824,300 |
| 68 | 1 | Apartments | $114,000 | $10,000 | $24,300 |
| 69 | 1 | Apartments | $188,500 | $10,000 | $18,100 |
| 70 | 1 | Apartments | $522,500 | $15,000 | $51,000 |
| 71 | 1-2 | Apartments | $1,065,900 | $30,000 | $169,400 |
| 72 | 1 | Apartments | $285,800 | $15,000 | $62,400 |
| 73 | 1 | Apartments | $228,000 | $15,000 | $34,200 |
| 74 | 1-19 | Apartments | $2,700,000 | $50,000 | $588,400 |
| 75 | 1-3 | Apartments | $2,507,660 | $50,000 | $479,600 |

02 PP 639 (01/04)

Exhibit 4
Page 58 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

Issued to   NIJJAR REALTY, INC.   by  General Star Indemnity Company.

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| | | | | **100% DECLARED VALUES** | |
| 76 | 1 | Apartments | $400,000 | $15,000 | $89,000 |
| 77 | 1-3 | Apartments | $648,560 | $25,000 | $130,900 |
| 78 | 1 | Apartments | $200,000 | $15,000 | $0 |
| 79 | 1-3 | Apartments | $902,000 | $20,000 | $79,600 |
| 80 | 1-10 | Apartments | $990,000 | $20,000 | $118,600 |
| 81 | 1 | Apartments | $474,700 | $15,000 | $75,600 |
| 82 | 1-4 | Apartments | $570,000 | $20,000 | $42,900 |
| 83 | 1-9 | Apartments | $628,550 | $20,000 | $82,500 |
| 84 | 1 | Apartments | $357,500 | $10,000 | $51,200 |
| 85 | 1-2 | Apartments | $1,745,400 | $40,000 | $330,000 |
| 86 | 1-2 | Apartments | $1,219,800 | $30,000 | $197,600 |
| 87 | 1-24 | Apartments | $5,083,375 | $90,000 | $916,400 |
| 88 | 1-4 | Apartments | $175,000 | $10,000 | $100,300 |
| 89 | 1 | Apartments | $242,820 | $15,000 | $49,000 |
| 90 | 1 | Apartments | $100,000 | $10,000 | $4,800 |
| 91 | 1 | Apartments | $65,000 | $10,000 | $9,500 |
| 92 | 1 | Apartments | $87,500 | $10,000 | $12,100 |
| 93 | 1-3 | Apartments | $627,000 | $25,000 | $22,700 |
| 94 | 1 | Apartments | $114,780 | $10,000 | $19,600 |
| 95 | 1 | Apartments | $368,790 | $15,000 | $49,600 |
| 96 | 1 | Apartments | $300,000 | $20,000 | $33,700 |
| 97 | 1-2 | Apartments | $130,000 | $10,000 | $20,100 |
| 98 | 1 | Apartments | $90,000 | $10,000 | $8,700 |
| 99 | 1-2 | Apartments | $1,592,810 | $40,000 | $282,200 |
| 100 | 1-10 | Apartments | $551,460 | $20,000 | $74,400 |

02 PP 639 (01/04)

Exhibit 4
Page 59 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.   by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense including Rental Value |
|---|---|---|---|---|---|
| 101 | 1-2 | Apartments | $370,500 | $15,000 | $44,300 |
| 102 | 1 | Apartments | $660,000 | $20,000 | $125,900 |
| 103 | 1-4 | Apartments | $1,676,260 | $40,000 | $314,000 |
| 104 | 1 | Apartments | $302,500 | $10,000 | $33,700 |
| 105 | 1 | Apartments | $1,624,160 | $40,000 | $288,200 |
| 106 | 1 | Apartments | $80,000 | $10,000 | $7,300 |
| 107 | 1 | Apartments | $1,200,000 | $30,000 | $213,300 |
| 108 | 1 | Apartments | $852,500 | $20,000 | $98,200 |
| 109 | 1-2 | Apartments | $1,523,500 | $40,000 | $156,000 |
| 110 | 1-2 | Apartments | $1,512,500 | $30,000 | $179,900 |
| 111 | 1-2 | Apartments | $110,500 | $10,000 | $16,100 |
| 112 | 1 | Apartments | $50,000 | $10,000 | $8,200 |
| 113 | 1 | Apartments | $78,000 | $10,000 | $10,700 |
| 114 | 1-4 | Apartments | $237,640 | $15,000 | $120,100 |
| 115 | 1-3 | Apartments | $162,500 | $20,000 | $19,100 |
| 116 | 1 | Apartments | $2,172,500 | $40,000 | $281,400 |
| 117 | 1-2 | Apartments | $1,622,500 | $25,000 | $218,100 |
| 118 | 1 | Apartments | $277,020 | $15,000 | $46,400 |
| 119 | 1-12 | Apartments | $2,308,780 | $45,000 | $443,400 |
| 120 | 1 | Apartments | $38,400 | $10,000 | $8,700 |
| 121 | 1-3 | Apartments | $924,000 | $25,000 | $161,900 |
| 122 | 1 | Apartments | $1,595,000 | $30,000 | $172,400 |
| 123 | 1-2 | Apartments | $467,500 | $15,000 | $54,100 |
| 124 | 1 | Apartments | $399,000 | $15,000 | $56,500 |
| 125 | 1-7 | Apartments | $4,675,000 | $90,000 | $727,700 |

02 PP 639 (01/04)

Exhibit 4
Page 60 of Notice of Removal

GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,    forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.    by  General Star Indemnity Company.

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| | | | | **100% DECLARED VALUES** | |
| 126 | 1-2 | Apartments | $432,745 | $15,000 | $63,000 |
| 127 | 1 | Apartments | $70,000 | $10,000 | $8,400 |
| 128 | 1 | Apartments | $275,000 | $15,000 | $47,000 |
| 129 | 1-3 | Apartments | $1,692,900 | $40,000 | $239,700 |
| 130 | 1 | Apartments | $440,000 | $15,000 | $53,000 |
| 131 | 1 | Apartments | $259,440 | $5,000 | $15,400 |
| 132 | 1-2 | Apartments | $99,000 | $10,000 | $84,000 |
| 133 | 1-4 | Apartments | $988,750 | $30,000 | $117,324 |
| 134 | 1-6 | Apartments | $927,500 | $30,000 | $125,400 |
| 135 | 1-12 | Apartments | $4,950,000 | $90,000 | $780,000 |
| 136 | 1 | Apartments | $864,000 | $25,000 | $150,000 |
| 137 | 1-3 | Apartments | $1,470,000 | $25,000 | $275,100 |
| 138 | 1-8 | Apartments | $2,499,000 | $50,000 | $422,772 |
| 139 | 1 | Apartments | $100,000 | $10,000 | $12,600 |
| 140 | 1 | Apartments | $714,670 | $25,000 | $102,300 |
| 141 | 1-3 | Apartments | $200,000 | $10,000 | $28,600 |
| 142 | 1 | Apartments | $672,000 | $10,000 | $37,000 |
| 143 | 1-7 | Apartments | $1,773,750 | $30,000 | $305,000 |
| 144 | 1 | Apartments | $420,000 | $10,000 | $38,000 |
| 145 | 1 | Apartments | $105,600 | $10,000 | $156,000 |
| 146 | 1-5 | Apartments | $618,750 | $10,000 | $84,000 |
| 147 | 1-3 | Apartments | $4,152,500 | $70,000 | $600,300 |
| 148 | 1-8 | Apartments | $4,950,000 | $70,000 | $624,100 |
| 149 | 1 | Apartments | $478,800 | $20,000 | $71,900 |
| 150 | 1 | Apartments | $657,440 | $25,000 | $55,500 |

02 PP 639 (01/04)

Exhibit 4
Page 61 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

Issued to   NIJJAR REALTY, INC.   by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 151 | 1-2 | Apartments | $422,180 | $15,000 | $60,600 |
| 152 | 1 | Apartments | $418,000 | $15,000 | $50,700 |
| 153 | 1 | Apartments | $1,978,470 | $40,000 | $295,300 |
| 154 | 1 | Apartments | $2,020,650 | $45,000 | $294,800 |
| 155 | 1 | Apartments | $1,254,000 | $30,000 | $216,400 |
| 156 | 1-3 | Apartments | $2,055,900 | $40,000 | $283,800 |
| 157 | 1 | Apartments | $1,017,500 | $25,000 | $164,800 |
| 158 | 1-2 | Apartments | $1,375,000 | $30,000 | $135,800 |
| 159 | 1-3 | Apartments | $825,000 | $25,000 | $73,000 |
| 160 | 1-2 | Apartments | $1,630,805 | $40,000 | $235,300 |
| 161 | 1 | Apartments | $500,000 | $20,000 | $51,300 |
| 162 | 1 | Apartments | $250,250 | $15,000 | $43,100 |
| 163 | 1-2 | Apartments | $1,072,500 | $25,000 | $156,800 |
| 164 | 1-4 | Apartments | $302,500 | $10,000 | $41,900 |
| 165 | 1-24 | Apartments | $17,982,690 | $250,000 | $2,436,000 |
| 166 | 1 | Apartments | $235,070 | $10,000 | $43,300 |
| 167 | 1 | Apartments | $550,000 | $25,000 | $65,243 |
| 168 | 1 | Apartments | $440,000 | $10,000 | $32,100 |
| 169 | 1 | Apartments | $605,000 | $25,000 | $89,400 |
| 170 | 1-3 | Apartments | $190,905 | $10,000 | $26,500 |
| 171 | 1-5 | Apartments | $165,000 | $10,000 | $36,120 |
| 172 | 1 | Apartments | $1,610,000 | $40,000 | $253,800 |
| 173 | 1-2 | Apartments | $495,000 | $15,000 | $64,400 |
| 174 | 1 | Apartments | $650,000 | $25,000 | $125,000 |
| 175 | 1-18 | Apartments | $6,682,500 | $50,000 | $1,024,300 |

02 PP 639 (01/04)

Exhibit 4
Page 62 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,    forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.    by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 176 | 1-6 | Apartments | $1,680,000 | $40,000 | $276,600 |
| 177 | 1-4 | Apartments | $2,250,000 | $45,000 | $399,900 |
| 178 | 1-3 | Apartments | $502,260 | $15,000 | $36,000 |
| 179 | 1-2 | Apartments | $250,000 | $15,000 | $52,200 |
| 180 | 1-2 | Apartments | $180,000 | $10,000 | $30,200 |
| 181 | 1 | Apartments | $200,000 | $10,000 | $25,400 |
| 182 | 1 | Apartments | $200,000 | $10,000 | $26,900 |
| 183 | 1 | Apartments | $184,000 | $10,000 | $27,900 |
| 184 | 1 | Apartments | $960,000 | $30,000 | $28,200 |
| 185 | 1-7 | Apartments | $618,750 | $20,000 | $107,900 |
| 186 | 1-8 | Apartments | $1,200,000 | $30,000 | $181,700 |
| 187 | 1 | Apartments | $1,263,600 | $30,000 | $176,300 |
| 188 | 1-2 | Apartments | $435,000 | $15,000 | $81,500 |
| 189 | 1-9 | Apartments | $1,408,000 | $25,000 | $123,700 |
| 190 | 1-3 | Apartments | $140,250 | $10,000 | $21,300 |
| 191 | 1-2 | Apartments | $1,201,500 | $25,000 | $193,344 |
| 192 | 1-2 | Apartments | $990,000 | $25,000 | $168,917 |
| 193 | 1-2 | Apartments | $2,432,760 | $45,000 | $233,100 |
| 194 | 1-5 | Apartments | $2,215,950 | $45,000 | $220,100 |
| 195 | 1-5 | Apartments | $2,516,250 | $45,000 | $430,000 |
| 196 | 1-2 | Apartments | $1,113,750 | $30,000 | $180,000 |
| 197 | 1-6 | Apartments | $2,640,000 | $45,000 | $396,000 |
| 198 | 1-2 | Apartments | $701,250 | $25,000 | $102,000 |
| 199 | 1-2 | Apartments | $3,588,750 | $35,000 | $600,000 |
| 200 | 1-2 | Apartments | $171,600 | $10,000 | $39,000 |

Exhibit 4
Page 63 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,    forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.     by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 201 | 1 | Apartments | $1,260,000 | $20,000 | $150,000 |
| 202 | 1-2 | Apartments | $206,250 | $10,000 | $40,500 |
| 203 | 1 | Apartments | $100,000 | $10,000 | $8,400 |
| 204 | 1-2 | Apartments | $155,000 | $10,000 | $16,800 |
| 205 | 1 | Apartments | $140,250 | $10,000 | $27,900 |
| 206 | 1-2 | Apartments | $990,000 | $30,000 | $119,280 |
| 207 | 1-2 | Apartments | $650,000 | $25,000 | $86,500 |
| 208 | 1-2 | Apartments | $245,000 | $10,000 | $26,040 |
| 209 | 1 | Apartments | $660,000 | $10,000 | $28,800 |
| 210 | 1-2 | Apartments | $819,750 | $25,000 | $50,000 |
| 211 | 1-2 | Apartments | $640,500 | $25,000 | $57,600 |
| 212 | 1 | Apartments | $163,800 | $10,000 | $22,600 |
| 213 | 1 | Apartments | $178,000 | $10,000 | $31,680 |
| 214 | 1 | Apartments | $290,000 | $15,000 | $31,680 |
| 215 | 1 | Apartments | $337,000 | $15,000 | $43,200 |
| 216 | 1 | Apartments | $272,000 | $15,000 | $40,380 |
| 217 | 1 | Apartments | $145,000 | $10,000 | $19,200 |
| 218 | 1 | Apartments | $104,000 | $10,000 | $11,040 |
| 219 | 1 | Apartments | $872,100 | $25,000 | $235,000 |
| 220 | 1-2 | Apartments | $508,380 | $20,000 | $64,800 |
| 221 | 1 | Apartments | $1,114,350 | $40,000 | $141,600 |
| 222 | 1 | Apartments | $2,242,500 | $45,000 | $261,600 |
| 223 | 1 | Apartments | $247,500 | $10,000 | $34,800 |
| 224 | 1 | Apartments | $660,000 | $20,000 | $104,400 |
| 225 | 1 | Apartments | $400,000 | $15,000 | $49,200 |

02 PP 539 (01/04)

Exhibit 4
Page 64 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,    forms a part of Policy # IAG394764

issued to    NIJJAR REALTY, INC.      by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense including Rental Value |
|---|---|---|---|---|---|
| 226 | 1-2 | Apartments | $577,500 | $15,000 | $84,000 |
| 227 | 1 | Apartments | $550,000 | $20,000 | $68,400 |
| 228 | 1 | Apartments | $721,730 | $25,000 | $173,000 |
| 229 | 1 | Apartments | $783,750 | $10,000 | $28,800 |
| 230 | 1 | Apartments | $228,115 | $10,000 | $25,200 |
| 231 | 1 | Apartments | $228,115 | $10,000 | $26,400 |
| 232 | 1-2 | Apartments | $418,000 | $10,000 | $50,700 |
| 233 | 1-4 | Apartments | $324,000 | $15,000 | $41,400 |
| 234 | 1 | Apartments | $269,500 | $10,000 | $36,000 |
| 235 | 1 | Apartments | $137,500 | $10,000 | $20,160 |
| 236 | 1 | Apartments | $825,000 | $25,000 | $125,544 |
| 237 | 1 | Apartments | $120,000 | $10,000 | $22,500 |
| 238 | 1 | Apartments | $330,000 | $10,000 | $55,200 |
| 239 | 1 | Apartments | $720,000 | $25,000 | $94,200 |
| 240 | 1-3 | Apartments | $247,500 | $10,000 | $42,120 |
| 241 | 1 | Apartments | $181,000 | $10,000 | $60,000 |
| 242 | 1 | Apartments | $441,070 | $20,000 | $60,000 |
| 243 | 1-2 | Apartments | $347,100 | $15,000 | $46,800 |
| 244 | 1-3 | Apartments | $480,000 | $15,000 | $47,400 |
| 245 | 1-8 | Apartments | $624,000 | $20,000 | $82,224 |
| 246 | 1 | Apartments | $448,000 | $10,000 | $50,000 |
| 247 | 1 | Apartments | $260,390 | $10,000 | $43,200 |
| 248 | 1-2 | Apartments | $1,506,470 | $25,000 | $194,400 |
| 249 | 1 | Apartments | $260,000 | $10,000 | $43,200 |
| 250 | 1 | Apartments | $954,730 | $10,000 | $136,860 |

Exhibit 4
Page 65 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.    by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 251 | 1-2 | Apartments | $877,500 | $25,000 | $130,800 |
| 252 | 1 | Apartments | $1,709,050 | $25,000 | $250,000 |
| 253 | 1-3 | Apartments | $420,000 | $10,000 | $68,000 |
| 254 | 1-6 | Apartments | $2,310,000 | $25,000 | $291,456 |
| 255 | 1-3 | Apartments | $196,000 | $10,000 | $25,000 |
| 256 | 1 | Apartments | $578,200 | $10,000 | $77,000 |
| 257 | 1 | Apartments | $135,000 | $5,000 | $14,000 |
| 258 | 1 | Apartments | $155,000 | $5,000 | $9,300 |
| 259 | 1-4 | Apartments | $402,500 | $5,000 | $67,800 |
| 260 | 1 | Apartments | $2,145,000 | $25,000 | $325,260 |
| 261 | 1-2 | Apartments | $1,429,680 | $30,000 | $224,760 |
| 262 | 1-3 | Apartments | $1,500,000 | $25,000 | $202,000 |
| 263 | 1 | Apartments | $369,329 | $25,000 | $56,100 |
| 264 | 1-3 | Apartments | $588,000 | $25,000 | $71,700 |
| 265 | 1-4 | Apartments | $894,880 | $25,000 | $140,400 |
| 266 | 1 | Apartments | $71,500 | $10,000 | $96,000 |
| 267 | 1 | Apartments | $105,000 | $10,000 | $12,000 |
| 268 | 1-13 | Apartments | $2,310,000 | $25,000 | $310,000 |
| 269 | 1 | Apartments | $1,260,000 | $25,000 | $201,700 |
| 270 | 1 | Apartments | $82,500 | $5,000 | $9,800 |
| 271 | 1-2 | Apartments | $891,380 | $25,000 | $142,000 |
| 272 | 1-2 | Apartments | $1,000,000 | $25,000 | $102,000 |
| 273 | 1-2 | Apartments | $585,000 | $25,000 | $48,600 |
| 274 | 1-2 | Apartments | $5,070,000 | $25,000 | $1,500,000 |
| 275 | 1 | Apartments | $1,400,000 | $25,000 | $290,000 |

02 PP 639 (01/04)

Page 11 of 17

Exhibit 4
Page 66 of Notice of Removal

67

## GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,    forms a part of Policy # IAG394764

issued to    NIJJAR REALTY, INC.     by  General Star Indemnity Company.

| | | | | 100% DECLARED VALUES | |
| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 276 | 1 | Apartments | $1,081,640 | $25,000 | $220,000 |
| 277 | 1 | Apartments | $955,640 | $25,000 | $240,000 |
| 278 | 1-5 | Apartments | $1,345,960 | $25,000 | $360,000 |
| 279 | 1-3 | Apartments | $1,440,600 | $25,000 | $336,000 |
| 280 | 1-2 | Apartments | $1,410,640 | $25,000 | $276,000 |
| 281 | 1-5 | Apartments | $1,020,000 | $25,000 | $255,000 |
| 282 | 1-6 | Apartments | $438,000 | $5,500 | $82,320 |
| 283 | 1 | Apartments | $367,800 | $25,000 | $125,000 |
| 284 | 1-3 | Apartments | $2,500,000 | $25,000 | $480,000 |
| 285 | 1-5 | Apartments | $1,250,000 | $25,000 | $300,000 |
| 286 | 1-20 | Apartments | $3,450,000 | $25,000 | $720,000 |
| 287 | 1-3 | Apartments | $1,150,000 | $25,000 | $350,000 |
| 288 | 1-7 | Apartments | $2,460,000 | $25,000 | $336,000 |
| 289 | 1 | Apartments | $2,080,340 | $34,000 | $408,000 |
| 290 | 1 | Apartments | $2,128,330 | $35,000 | $420,000 |
| 291 | 1 | Apartments | $878,510 | $13,000 | $156,000 |
| 292 | 1 | Apartments | $1,182,820 | $20,000 | $240,000 |
| 293 | 1 | Apartments | $2,155,650 | $37,750 | $444,000 |
| 294 | 1-2 | Apartments | $785,000 | $6,000 | $75,000 |
| 295 | 1-2 | Apartments | $650,000 | $25,000 | $89,100 |
| 296 | 1 | Apartments | $490,000 | $10,000 | $67,560 |
| 297 | 1-3 | Apartments | $373,725 | $25,000 | $61,600 |
| 298 | 1 | Apartments | $760,000 | $25,000 | $117,400 |
| 299 | 1 | Apartments | $730,875 | $25,000 | $117,400 |
| 300 | 1 | Apartments | $295,000 | $0 | $72,000 |

Exhibit 4
Page 67 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.   by  General Star Indemnity Company.

| | | | | 100% DECLARED VALUES | |
| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 301 | 1-2 | Apartments | $1,425,000 | $87,260 | $125,000 |
| 302 | 1-3 | Apartments | $915,000 | $25,000 | $200,000 |
| 303 | 1-2 | Apartments | $465,000 | $25,000 | $145,000 |
| 304 | 1-8 | Apartments | $2,226,000 | $25,000 | $306,000 |
| 305 | 1 | Apartments | $1,027,320 | $25,000 | $152,400 |
| 306 | 1-2 | Apartments | $375,000 | $25,000 | $37,200 |
| 307 | 1-4 | Apartments | $420,000 | $0 | $35,500 |
| 308 | 1 | Apartments | $105,000 | $0 | $19,200 |
| 309 | 1 | Apartments | $160,000 | $0 | $18,600 |
| 310 | 1-5 | Apartments | $296,000 | $0 | $31,200 |
| 311 | 1 | Apartments | $87,100 | $0 | $10,200 |
| 312 | 1 | Apartments | $115,700 | $0 | $10,800 |
| 313 | 1 | Apartments | $65,000 | $0 | $10,200 |
| 314 | 1 | Apartments | $70,000 | $0 | $10,000 |
| 315 | 1 | Apartments | $65,000 | $0 | $9,600 |
| 316 | 1 | Apartments | $93,700 | $0 | $10,200 |
| 317 | 1 | Apartments | $84,000 | $0 | $10,200 |
| 318 | 1-2 | Apartments | $280,500 | $0 | $30,000 |
| 319 | 1 | Apartments | $78,000 | $0 | $10,200 |
| 320 | 1 | Apartments | $71,500 | $0 | $10,200 |
| 321 | 1-6 | Apartments | $275,000 | $0 | $38,100 |
| 322 | 1 | Apartments | $71,500 | $0 | $10,200 |
| 323 | 1 | Apartments | $84,450 | $0 | $9,000 |
| 324 | 1-6 | Apartments | $235,000 | $0 | $50,100 |
| 325 | 1-2 | Apartments | $187,500 | $0 | $18,000 |

02 PP 639 (01/04)

Exhibit 4
Page 68 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.     by  General Star Indemnity Company.

| | | | | 100% DECLARED VALUES | |
| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 326 | 1 | Apartments | $435,000 | $0 | $61,800 |
| 327 | 1 | Apartments | $286,715 | $0 | $44,900 |
| 328 | 1-14 | Apartments | $850,000 | $0 | $143,520 |
| 329 | 1 | Apartments | $450,970 | $0 | $51,300 |
| 330 | 1-2 | Apartments | $429,650 | $0 | $57,840 |
| 331 | 1 | Apartments | $95,700 | $0 | $10,200 |
| 332 | 1 | Apartments | $85,000 | $0 | $10,800 |
| 333 | 1-4 | Apartments | $266,500 | $0 | $40,800 |
| 334 | 1 | Apartments | $85,000 | $0 | $10,200 |
| 335 | 1-5 | Apartments | $260,000 | $0 | $51,000 |
| 336 | 1-2 | Apartments | $120,000 | $0 | $20,400 |
| 337 | 1-2 | Apartments | $117,000 | $0 | $20,400 |
| 338 | 1-2 | Apartments | $130,000 | $0 | $20,400 |
| 339 | 1 | Apartments | $82,000 | $0 | $11,200 |
| 340 | 1 | Apartments | $78,000 | $0 | $10,200 |
| 341 | 1 | Apartments | $85,000 | $0 | $8,000 |
| 342 | 1 | Apartments | $264,000 | $0 | $26,400 |
| 343 | 1 | Apartments | $90,000 | $0 | $10,800 |
| 344 | 1-4 | Apartments | $250,640 | $0 | $44,400 |
| 345 | 1 | Apartments | $84,160 | $0 | $10,800 |
| 346 | 1 | Apartments | $65,000 | $0 | $7,000 |
| 347 | 1 | Apartments | $82,080 | $0 | $10,800 |
| 348 | 1-2 | Apartments | $159,250 | $0 | $24,600 |
| 349 | 1 | Apartments | $65,000 | $0 | $7,000 |
| 350 | 1-2 | Apartments | $133,250 | $0 | $15,000 |

02 PP 639 (01/04)

Exhibit 4
Page 69 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,    forms a part of Policy # IAG394764

issued to    NIJJAR REALTY, INC.    by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 351 | 1-9 | Apartments | $740,000 | $25,000 | $104,000 |
| 352 | 1-2 | Apartments | $450,000 | $25,000 | $56,000 |
| 353 | 1-3 | Apartments | $440,000 | $25,000 | $70,000 |
| 354 | 1-2 | Apartments | $120,000 | $0 | $120,000 |
| 355 | 1 | Apartments | $260,000 | $5,000 | $33,000 |
| 356 | 1-3 | Apartments | $204,000 | $0 | $72,000 |
| 357 | 1 | Apartments | $187,000 | $0 | $27,000 |
| 358 | 1 | Apartments | $103,000 | $0 | $10,800 |
| 359 | 1-2 | Apartments | $96,930 | $0 | $12,000 |
| 360 | 1 | Apartments | $2,275,000 | $22,500 | $297,000 |
| 361 | 1-2 | Apartments | $1,364,545 | $22,500 | $308,000 |
| 362 | 1 | Apartments | $1,138,000 | $6,000 | $113,800 |
| 363 | 1 | Apartments | $1,067,627 | $6,000 | $106,752 |
| 364 | 1-3 | Apartments | $360,000 | $5,000 | $72,000 |
| 365 | 1-4 | Apartments | $172,575 | $0 | $43,200 |
| 366 | 1 | Apartments | $92,000 | $0 | $18,000 |
| 367 | 1 | Apartments | $180,000 | $0 | $45,000 |
| 368 | 1 | Apartments | $281,645 | $0 | $40,000 |
| 369 | 1-2 | Apartments | $1,388,270 | $16,000 | $250,000 |
| 370 | 1 | Apartments | $1,991,665 | $21,000 | $352,800 |
| 371 | 1 | Apartments | $605,000 | $0 | $100,800 |
| 372 | 1 | Apartments | $390,000 | $0 | $67,200 |
| 373 | 1 | Apartments | $107,100 | $0 | $13,200 |
| 374 | 1 | Apartments | $311,896 | $0 | $24,000 |
| 375 | 1-5 | Apartments | $1,470,000 | $168,000 | $10,000 |

Exhibit 4
Page 70 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.   by  General Star Indemnity Company.

| | | | | **100% DECLARED VALUES** | |
|---|---|---|---|---|---|
| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense including Rental Value |
| 376 | 1 | Apartments | $261,000 | $0 | $36,000 |
| 377 | 1 | Apartments | $261,000 | $0 | $36,000 |
| 378 | 1-4 | Apartments | $650,000 | $14,000 | $185,000 |
| 379 | 1 | Apartments | $650,000 | $6,000 | $93,600 |
| 380 | 1 | Apartments | $1,165,000 | $11,000 | $184,800 |
| 381 | 1 | Apartments | $367,500 | $0 | $46,800 |
| 382 | 1 | Apartments | $367,500 | $0 | $46,800 |
| 383 | 1-5 | Apartments | $468,540 | $0 | $60,000 |
| 384 | 1 | Apartments | $70,000 | $0 | $9,600 |
| 385 | 1 | Apartments | $1,200,000 | $11,000 | $126,900 |
| 386 | 1 | Apartments | $416,250 | $0 | $62,400 |
| 387 | 1-2 | Apartments | $1,600,000 | $16,500 | $230,000 |
| 388 | 1-8 | Apartments | $235,000 | $10,000 | $254,858 |
| 389 | 1 | Apartments | $26,000 | $0 | $6,000 |
| 390 | 1-7 | Apartments | $1,750,000 | $25,500 | $347,000 |
| 391 | 1-4 | Apartments | $690,000 | $0 | $73,800 |
| 392 | 1-2 | Apartments | $170,000 | $0 | $24,000 |
| 393 | 1-2 | Apartments | $1,695,240 | $13,000 | $188,000 |
| 394 | 1 | Apartments | $1,949,000 | $15,000 | $243,180 |
| 395 | 1 | Apartments | $1,304,030 | $0 | $143,000 |
| 396 | 1-3 | Apartments | $125,750 | $0 | $16,800 |
| 397 | 1 | Apartments | $61,850 | $0 | $10,200 |
| 398 | 1 | Apartments | $724,000 | $0 | $101,004 |
| 399 | 1 | Apartments | $782,400 | $0 | $100,080 |
| 400 | 1 | Apartments | $558,000 | $0 | $106,164 |

Exhibit 4
Page 71 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

# LOCATION SCHEDULE

This endorsement modifies insurance provided under this Policy.

This endorsement # 3, effective  July 31, 2004,   forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.    by  General Star Indemnity Company.

**100% DECLARED VALUES**

| Prem No. | Bldg. No. | Description | Building | Business Personal Property | Business Income with Extra Expense Including Rental Value |
|---|---|---|---|---|---|
| 401 | 1 | Apartments | $109,000 | $0 | $10,800 |
| 402 | 1 | Apartments | $205,000 | $0 | $27,120 |
| 403 | 1 | Apartments | $305,890 | $0 | $66,000 |
| 404 | 1 | Apartments | $4,970,000 | $44,500 | $736,312 |
| 405 | 1 | Apartments | $200,000 | $0 | $22,800 |
| 406 | 1 | Apartments | $90,000 | $0 | $9,000 |
| 407 | 1 | Apartments | $100,000 | $0 | $9,900 |
| 408 | 1 | Apartments | $65,000 | $0 | $9,900 |
| 409 | 1 | Apartments | $180,000 | $0 | $22,000 |
| 410 | 1 | Apartments | $115,000 | $0 | $21,600 |
| 411 | 1 | Apartments | $130,000 | $0 | $9,900 |
| 412 | 1-4 | Apartments | $189,000 | $0 | $29,340 |
| 413 | 1-19 | Apartments | $965,000 | $10,000 | $188,940 |
| 414 | 1-7 | Apartments | $260,000 | $0 | $47,340 |
| 415 | 1-2 | Apartments | $140,270 | $0 | $18,600 |
| | | **SUBTOTALS** | $357,883,040 | $7,822,010 | $57,515,134 |
| | | **GRAND TOTAL** | **$423,220,184** | | |

Exhibit 4
Page 72 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION AND TOXIC MATERIALS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under this policy.

This endorsement # 4    , effective    July 31, 2004      forms a part of Policy # IAG394764

issued to NIJJAR REALTY, INC.            by General Star Indemnity Company.

The following exclusions are added to the policy.

1. We will not pay for any loss, damage or expense arising out of:
   a. the actual, alleged or threatened release or escape of asbestos,
   b. the removal of asbestos from any structure, fixture, item of personal property or product,
   c. any demolition, increased cost of reconstruction, repair or loss of use necessitated by a governmental entity's enforcement of any statute, regulation or order regulating asbestos.

   This exclusion applies regardless of any other cause or event that contributes concurrently or in sequence to any such loss, damage or expense.

2. We will not pay for any loss, damage or expense arising out of the actual, alleged or threatened release or escape of any solid, liquid or gaseous material that is toxic or poisonous to humans or animals, ("toxic materials"), including but not limited to dioxin, polychlorinated biphenyls and lead.

   This exclusion also applies to:
   a. the removal of toxic materials from any structure, fixture, item of personal property or product, and
   b. any demolition, increased cost of reconstruction, repair or loss of use necessitated by a governmental entity's enforcement of any statute, regulation or order regulating toxic materials.

This exclusion applies regardless of any other cause or event that contributes concurrently or in sequence to any such loss, damage or expense.

All other terms, conditions and exclusions remain unchanged.

02 PP 600 (01/04)                                  **Page 1 of 1**

**Exhibit 4**
**Page 73 of Notice of Removal**

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 5   , effective July 31, 2004                 forms a part of Policy # IAG394764

Issued to  NIJJAR REALTY, INC.                                   by General Star Indemnity Company.

1.  The following exclusion is added to the policy:

We will not pay for any loss, damage or expense arising out of the discharge, dispersal, seepage, migration, release or escape of "pollutants". This exclusion applies regardless of any other cause or event that contributes concurrently or in sequence to any such loss, damage or expense.

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms, conditions and exclusions remain unchanged.

02 PP 605 (01/04)                                                Page 1 of 1

Exhibit 4
Page 74 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGUS CLEAN UP AND REMOVAL LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS — SPECIAL FORM

This endorsement # 6 , effective July 31, 2004          forms a part of Policy # IAG394764

issued to  NIJJAR REALTY, INC.                          by  General Star Indemnity Company.

---

**SCHEDULE**

**FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT** $5,000

---

1) Subsection h., **"Fungus", Wet Rot, Dry Rot and Bacteria** in Section 1. of **B. Exclusions**   is deleted in its entirety and is replaced with the following:

   h. **"Fungus", Wet Rot, Dry Rot and Bacteria**
   Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

   Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in wide-spread damage or affects a substantial area.

2) Section **E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot and Bacteria** is deleted in its entirety and replaced with the following:

   E.  **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot and Bacteria**
   1. Subject to all other policy exclusions, we will pay your expense for testing for, monitoring, abatement, mitigation, removal, remediation or disposal of "Fungus" or "Spores" or any substance, vapor, gas, or byproducts produced by or arising out of any fungus or spores provided:

      (a)    Such expense is caused by or results from a Covered Cause of Loss that occurs during the policy period;
      (b)    Subject to all other policy conditions, the necessity of such expense is reported to us in writing within 60 days of the date on which the Covered Cause of Loss occurs; and
      (c)    We authorize you to incur such expense.

   2.a. Regardless of the number of claims, insured locations or occurrences, the most we will pay under this policy, in excess of any applicable deductible, for the sum of all covered expense described in a. above, is the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT shown in the SCHEDULE of this endorsement.
   b. Subject to 2.a. above, the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT applies to and includes the costs associated with the replacement of Covered Property discarded or destroyed as part of the removal or remediation of fungus or spore(s).
   c. The FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT is part of, and not in addition to, the Limit of Insurance applicable to the Covered Property.

Exhibit 4
Page 75 of Notice of Removal

3) Subsection 1, Section **G. Definitions** is deleted in its entirety and replaced by the following:

   a. The term fungus, as used in this endorsement and throughout the entire policy, includes, but is not limited to, any form or type of mildew, mold, wet or dry rot, bacteria, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

   b. The term spore(s), as used in this endorsement and throughout the entire policy, means any reproductive body produced by or arising out of any fungus.

All other terms, conditions and exclusions remain unchanged.

02 PP 623 (01/04)

**Exhibit 4**
**Page 76 of Notice of Removal**

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTIPLE DEDUCTIBLE FORM

This endorsement modifies insurance provided under this Policy.

This endorsement # 7 , effective July 31, 2004      forms a part of Policy # IAG394764

issued to NIJJAR REALTY, INC.      by General Star Indemnity Company.

1. The following is added to the DEDUCTIBLE section:
    A. In the event that loss or damage by multiple Covered Causes of Loss occurs to Covered Property as a result of one occurrence, the largest of those deductibles applicable to the Covered Causes of Loss, as shown in the Schedule below or in the Declarations, will apply.

    B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

2. The Deductibles applicable to any one occurrence are shown in the Schedule below:

Schedule*

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss* |
|-----------|-----------|------------|-------------------------|
| 1-415 | 1-72 | $10,000 per Occurrence | (1) |

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.
** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):
    (1) All Covered Causes of Loss
    (2) All Covered Causes of Loss **except** Windstorm or Hail
    (3) All Covered Causes of Loss **except** Theft
    (4) All Covered Causes of Loss **except** Windstorm or Hail and Theft
    (5) Windstorm or Hail
    (6) Theft

All other terms, conditions and exclusions remain unchanged.

02 PP 625 (01/04)

Exhibit 4
Page 77 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CATASTROPHIC CAUSE OF LOSS PER OCCURRENCE ENDORSEMENT

This endorsement modifies insurance provided under this Policy:

This endorsement # 8  , effective July 31, 2004          forms a part of Policy # IAG394764

issued to NIJJAR REALTY, INC.                          by  General Star Indemnity Company.

### A.  PERIODS OF OCCURRENCE

1.  If Windstorm or Hail is covered under this Policy, the following conditions will apply:  All Windstorm or Hail events occurring within any 72-hour period will constitute a single occurrence. The expiration of this policy will not reduce the 72-hour period.  When filing the proof of loss, you may elect the moment at which the 72-hour period will be deemed to have commenced, but no earlier than when the first loss to the Covered Property occurred.

2.  If Earthquake or Volcanic Eruption is covered under this Policy, the following conditions will apply: All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single Earthquake or Volcanic Eruption.  The expiration of this policy will not reduce the 168-hour period.

3.  If Flood is covered under this Policy, the following condition will apply:  All flooding in a continuous or protracted event will constitute a single flood.

In no event will payment made under this policy exceed the applicable Limit of Insurance shown in the Declarations, regardless of the number of covered locations involved or sublimits applicable in any one occurrence.

All other terms, conditions and exclusions remain unchanged.

**Exhibit 4**
**Page 78 of Notice of Removal**

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OCCURRENCE LIMIT OF INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 9  , effective July 31, 2004           forms a part of Policy # IAG394764

issued to NIJJAR REALTY, INC.                                    by General Star Indemnity Company.

The premium for this policy is based on the latest statement of values that is either on file with us or attached to this policy.  In the event of loss or damage to Coverage Property, we will pay the least of:

    a.  The actual adjusted amount of loss, less applicable deductible(s);

    b.  The total stated value(s) for the covered property involved as shown on the latest statement of values on file with the company, less applicable deductible(s);

    c.  The applicable Limit of Insurance shown in the Declarations or endorsed onto this policy; or

    d.  The remaining amount of any applicable aggregate limit.

Not withstanding the foregoing, the most we will pay for loss or damage to Covered Property in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

All other terms, conditions and exclusions remain unchanged.

02 PP 633 (01/04)                                                    **Page 1 of 1**

**Exhibit 4**
**Page 79 of Notice of Removal**

Policy Number   IAG394764                                                                IL 09 40 01 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM (WITH LIMITED EXCEPTION) AND EXCLUSION OF WAR AND MILITARY ACTION

This endorsement modifies insurance provided under this Policy.

**A.** The War And Military Action Exclusion is replaced by the following Exclusion. With respect to any Coverage Form to which the War And Military Action Exclusion does not apply, that Exclusion is hereby added as follows.

**WAR AND MILITARY ACTION EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. War, including undeclared or civil war; or
2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

**B.** Regardless of the amount of damage and losses, the Terrorism Exclusion applies to any incident of terrorism:

1. That involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
3. In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

Except as provided in **B.1.**, **B.2.** or **B.3.** above, the Terrorism Exclusion will only apply to an incident of terrorism in which the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of terrorism which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

The preceding paragraph describes the threshold used to measure the magnitude of an incident of terrorism and the circumstances in which the threshold will apply, for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of terrorism, there is no coverage under this Coverage Part or Standard Property Policy.

IL 09 40 01 02                           © ISO Properties, Inc., 2001                    Page 1 of 2        □

Exhibit 4
Page 80 of Notice of Removal

In the event of any incident of terrorism that is not subject to the Terrorism Exclusion, coverage does not apply to any element of loss or damage that is otherwise excluded under this Coverage Part or Standard Property Policy.

**TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by terrorism, including action in hindering or defending against an actual or expected incident of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

But if terrorism results in fire, we will pay for the loss or damage caused by that fire. However, this exception for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the exception does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

Terrorism means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:
   a. Use or threat of force or violence; or
   b. Commission or threat of a dangerous act; or
   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:
   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

But with respect to any such activity that also comes within the terms of the War And Military Action Exclusion, that exclusion supersedes this Terrorism Exclusion.

In the event of an incident of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the Nuclear Hazard Exclusion.

**Page 2 of 2**        © ISO Properties, Inc.,  2001        IL 09 40 01 02     ☐

Exhibit 4
Page 81 of Notice of Removal

POLICY NUMBER: IAG394764

IL 09 85 01 03

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

**SCHEDULE***

---

**Terrorism Premium (Certified Acts)**
$ 500 Included In Total Premium.


**Additional Information, if any, concerning the terrorism premium:**




---

\*     Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

---

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

IL 09 85 01 03

© ISO Properties, Inc., 2003

Page 1 of 1      □

**Exhibit 4**
**Page 82 of Notice of Removal**

Policy Number  IAG394764

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

CP 00 90 07 88

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

Page 1 of 2   □

Exhibit 4
Page 83 of Notice of Removal

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this Insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your Insurance.

     Copyright, ISO Commercial Risk Services, Inc., 1983, 1987     CP 00 90 07 88     □

Exhibit 4
Page 84 of Notice of Removal

Policy Number  IAG394764

COMMERCIAL PROPERTY
CP 00 10 04 02

# BUILDING AND PERSONAL
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this Insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. – Definitions.**

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following · unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

© ISO Properties, Inc., 2001   □

Exhibit 4
Page 85 of Notice of Removal

c. **Personal Property Of Others** that is:

   **(1)** In your care, custody or control; and

   **(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This Paragraph **n.**, does not apply to your "stock" of prepackaged software.

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

   **(1)** Are licensed for use on public roads; or

   **(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

   **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

   **(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

   **(c)** Rowboats or canoes out of water at the described premises; or

   **(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

© ISO Properties, Inc., 2001

CP 00 10 04 02     □

Exhibit 4
Page 86 of Notice of Removal

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

3. **Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) Examples

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

CP 00 10 04 02          © ISO Properties, Inc., 2001          Page 3 of 14      □

Exhibit 4
Page 87 of Notice of Removal

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ | 79,500 |
| | ($80,000 - $500) | |
| Debris Removal Expense | $ | 30,000 |
| Debris Removal Expense Payable | | |
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph (4). Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

© ISO Properties, Inc., 2001

CP 00 10 04 02     □

Exhibit 4
Page 88 of Notice of Removal

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

   (a) You were required to comply with before the loss, even when the building was undamaged; and

   (b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

   (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

   (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

   (a) We will not pay for the Increased Cost of Construction:

      (i) Until the property is actually repaired or replaced, at the same or another premises; and

      (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the same premises.

   (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in e.(6) of this Additional Coverage, is not subject to such limitation.

f. **Electronic Data**

(1) Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

(3) The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

© ISO Properties, Inc., 2001 □

Exhibit 4
Page 89 of Notice of Removal

**(a)** If the Causes Of Loss — Special Form applies, coverage under this Additional Coverage — Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss — Broad Form applies, coverage under this Additional Coverage — Electronic Data includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage — Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage — Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

© ISO Properties, Inc., 2001

CP 00 10 04 02  □

**Exhibit 4**
**Page 90 of Notice of Removal**

     (II) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-Premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**Exhibit 4**
**Page 91 of Notice of Removal**

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-Owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

© ISO Properties, Inc., 2001

CP 00 10 04 02     ☐

Exhibit 4
Page 92 of Notice of Removal

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Bldg. 1: | $ | 60,000 |
| Limit of Insurance – Bldg. 2: | $ | 80,000 |
| Loss to Bldg. 1: | $ | 60,100 |
| Loss to Bldg. 2: | $ | 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$ 60,100
–     250
$ 59,850 Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | | |
|---|---|---|
| Loss to Bldg. 1: | $ | 70,000 |

(exceeds Limit of Insurance plus Deductible)

| | | |
|---|---|---|
| Loss to Bldg. 2: | $ | 90,000 |

(exceeds Limit of Insurance plus Deductible)

| | |
|---|---|
| Loss Payable – Bldg. 1: | $60,000 |

(Limit of Insurance)

| | |
|---|---|
| Loss Payable – Bldg. 2: | $80,000 |

(Limit of Insurance)

Total amount of loss payable:

$140,000

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

 © ISO Properties, Inc., 2001 ▢

Exhibit 4
Page 93 of Notice of Removal

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

© ISO Properties, Inc., 2001

CP 00 10 04 02

Exhibit 4
Page 94 of Notice of Removal

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

Exhibit 4
Page 95 of Notice of Removal

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

| When: | The value of the property is | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is | | 80% |
| | The Limit of Insurance for it is | $ | 100,000 |
| | The Deductible is | $ | 250 |
| | The amount of loss is | $ | 40,000 |

| Step (1): | $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements) |
|---|---|
| Step (2): | $100,000 ÷ $200,000 = .50 |
| Step (3): | $40,000 x .50 = $20,000 |
| Step (4): | $20,000 − $250 = $19,750 |

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | The value of the property is | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is | | 80% |
| | The Limit of Insurance for it is | $ | 200,000 |
| | The Deductible is | $ | 250 |
| | The amount of loss is | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

| When: | The value of property is: | | |
|---|---|---|---|
| | Bldg. at Location No. 1 | $ | 75,000 |
| | Bldg. at Location No. 2 | $ | 100,000 |
| | Personal Property at Location No. 2 | $ | 75,000 |
| | | $ | 250,000 |
| | The Coinsurance percentage for it is | | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $ | 180,000 |
| | The Deductible is | $ | 1,000 |
| | The amount of loss is: | | |
| | Bldg. at Location No. 2 | $ | 30,000 |
| | Personal Property at Location No. 2. | $ | 20,000 |
| | | $ | 50,000 |

| Step (1): | $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below) |
|---|---|
| Step (2): | $180,000 ÷ $225,000 = .80 |
| Step (3): | $50,000 x .80 = $40,000 |
| Step (4): | $40,000 − $1,000 = $39,000 |

We will pay no more than $39,000. The remaining $11,000 is not covered..

**2. Mortgageholders**

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

© ISO Properties, Inc., 2001

CP 00 10 04 02   □

Exhibit 4
Page 96 of Notice of Removal

(3) Has notified us of any change in owner-ship, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgage-holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the fol-lowing Optional Coverages apply separately to each item.

**1. Agreed Value**

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that prop-erty than the proportion that the Limit of In-surance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Cov-erage shown in the Declarations is not ex-tended, the Additional Condition, Coinsur-ance, is reinstated and this Optional Cover-age expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

a. The Limit of Insurance for property to which this Optional Coverage applied will auto-matically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | The applicable Limit of Insurance is | $ | 100,000 |
|---|---|---|---|
| | The annual percentage increase is | | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | | 146 |
| | The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 |

**3. Replacement Cost**

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Cov-erage Form.

b. This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence;

CP 00 10 04 02                    © ISO Properties, Inc., 2001                    Page 13 of 14    □

Exhibit 4
Page 97 of Notice of Removal

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(4) "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and··

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:··

(3) If the conditions in d.(1) and d.(2) above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of this Coverage Form; and

(4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in e.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

4. **Extension Of Replacement Cost To Personal Property Of Others**

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph 3.b.(1) of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

3. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.



© ISO Properties, Inc., 2001   CP 00 10 04 02   □

Exhibit 4
Page 98 of Notice of Removal

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

This endorsement # 10 , effective July 31, 2004          forms a part of Policy  # IAG394764

issued to NIJJAR REALTY, INC.                    by General Star Indemnity Company.

Paragraph **(4)**, of subsection **f., Electronic Data**, of subsection **4. Additional Coverages**, of section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Electronic Data is $250 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

All other terms, conditions and exclusions remain the same.

02 PP 632 (01/04)                                             Page 1 of 1

Exhibit 4
Page 99 of Notice of Removal

**Policy Number   IAG394764**

COMMERCIAL PROPERTY
CP 00 30 04 02

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section G. – Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

a. Business Income including "Rental Value".

b. Business Income other than "Rental Value".

c. "Rental Value".

If option a. above is selected, the term Business Income will include "Rental Value". If option c. above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

a. The portion of the building which you rent, lease or occupy; and

b. Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

### 2. Extra Expense

a. Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.

b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

(1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

(2) Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

CP 00 30 04 02

© ISO Properties, Inc., 2001

Page 1 of 9     ☐

Exhibit 4
Page 100 of Notice of Removal

3. **Covered Causes Of Loss, Exclusions And Limitations**

   See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Limitation – Interruption Of Computer Operations**

   a. Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

   b. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

   c. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

5. **Additional Coverages**

   a. **Civil Authority**

      We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

      The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

   (1) 3 consecutive weeks after the time of that action; or

   (2) When your Business Income coverage ends;

   whichever is later.

   b. **Alterations And New Buildings**

      We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

      (1) New buildings or structures, whether complete or under construction;

      (2) Alterations or additions to existing buildings or structures; and

      (3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

         (a) Used in the construction, alterations or additions; or

         (b) Incidental to the occupancy of new buildings.

      If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

   c. **Extended Business Income**

      (1) Business Income Other Than "Rental Value"

         If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

         (a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

         (b) Ends on the earlier of:

            (i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

© ISO Properties, Inc., 2001

CP 00 30 04 02   □

Exhibit 4
Page 101 of Notice of Removal

(ii) 30 consecutive days after the date determined in (1)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

(ii) 30 consecutive days after the date determined in (2)(a) above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

Exhibit 4
Page 102 of Notice of Removal

**(4)** The most we will pay under this Additional Coverage – Interruption of Computer Operations is $2,500 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of Insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage – Interruption in Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of Insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations and New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

Exhibit 4
Page 103 of Notice of Removal

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

3. **Loss Determination**

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**Exhibit 4**
**Page 104 of Notice of Removal**

### 4. Loss Payment

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

## D. Additional Condition

### Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in Step 1.; and

3. Multiply the total amount of loss by the figure determined in Step 2.

We will pay the amount determined in Step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

1. Prepaid freight -- outgoing;

2. Returns and allowances;

3. Discounts;

4. Bad debts;

5. Collection expenses;

6. Cost of raw stock and factory supplies consumed (including transportation charges);

7. Cost of merchandise sold (including transportation charges);

8. Cost of other supplies consumed (including transportation charges);

9. Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

10. Power, heat and refrigeration expenses that do not continue under contract (if Form CP 15 11 is attached);

11. All ordinary payroll expenses or the amount of payroll expense excluded (if Form CP 15 10 is attached); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion -- not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

### Example No. 1 (Underinsurance):

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $ | 400,000 |
|---|---|---|---|
| | The Coinsurance percentage is | | 50% |
| | The Limit of Insurance is | $ | 150,000 |
| | The amount of loss is | $ | 80,000 |
| Step 1: | $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements) | | |
| Step 2: | $150,000 ÷ $200,000 = .75 | | |
| Step 3: | $80,000 x .75 = $60,000 | | |

We will pay no more than $60,000. The remaining $20,000 is not covered.

---

© ISO Properties, Inc., 2001

CP 00 30 04 02    □

Exhibit 4
Page 105 of Notice of Removal

**Example No. 2 (Adequate Insurance):**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $ | 400,000 |
| | The Coinsurance percentage is | | 50% |
| | The Limit of Insurance is | $ | 200,000 |
| | The amount of loss is | $ | 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Maximum Period Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

(1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

(2) The Limit of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations for this Optional Coverage.

**Example:**

| When: | The Limit of Insurance is | $ | 120,000 |
| | The fraction shown in the Declarations for this Optional Coverage is | | 1/4 |

The most we will pay for loss in each period of 30 consecutive days is:

$120,000 x 1/4 = $30,000

If, in this example, the actual amount of loss is:

| Days 1-30 | $ | 40,000 |
| Days 31-60 | | 20,000 |
| Days 61-90 | | 30,000 |
| | $ | 90,000 |

We will pay:

| Days 1-30 | $ | 30,000 |
| Days 31-60 | | 20,000 |
| Days 61-90 | | 30,000 |
| | $ | 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

a. To activate this Optional Coverage:

(1) A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

(a) During the 12 months prior to the date of the Work Sheet; and

(b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

(2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

b. The Additional Condition, Coinsurance, is suspended until:

(1) 12 months after the effective date of this Optional Coverage; or

CP 00 30 04 02                    © ISO Properties, Inc., 2001                    **Page 7 of 9**    □

Exhibit 4
Page 106 of Notice of Removal

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example:**

| When: | The Limit of Insurance is | $ | 100,000 |
|---|---|---|---|
| | The Agreed Value is | $ | 200,000 |
| | The amount of loss is | $ | 80,000 |

Step **(a):**  $100,000 \div $200,000 = .50$

Step **(b):**  $.50 \times $80,000 = $40,000$

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c.**, Extended Business Income, the number "30" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F. Definitions**

**1.** "Finished Stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.** "Operations" means:

**a.** Your business activities occurring at the described premises; and

**b.** The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**3.** "Period of Restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Rental Value" means Business Income that consists of:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that premises, including:

**(1)** Payroll; and

**(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**Exhibit 4**
**Page 107 of Notice of Removal**

6. "Suspension" means:

    a. The slowdown or cessation of your business activities; or

    b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

© ISO Properties, Inc.,  2001

Exhibit 4
Page 108 of Notice of Removal

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

This endorsement # 11    , effective  July 31, 2004          forms a part of Policy # IAG394764

Issued to NIJJAR REALTY, INC.                    by General Star Indemnity Company.

Paragraph **(4)**, of subsection **d., Interruption of Computer Operations**, of subsection **5. Additional Coverages** of section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Interruption of Computer Operations is $250 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained in the policy year in which the interruption began.

All other terms, conditions and exclusions remain the same.

Exhibit 4
Page 109 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under this policy.

This endorsement # 12 , effective July 31, 2004          forms a part of Policy # IAG394764

Issued to NIJJAR REALTY, INC.          by General Star Indemnity Company.

**SCHEDULE***

| Bldg. No. | Prem. No. | Coverage A Sublimit Of Insurance | Coverage B Sublimit Of Insurance | Coverage C Sublimit Of Insurance | Coverage B And C Combined Sublimit Of Insurance ** | Blanket Coverage A, B, and C Combined Sub-limit Of Insurance ** |
|---|---|---|---|---|---|---|
| 1-72 | 1-415 | $ | $ | $ | $ | $ 100,000 |
|  |  | $ | $ | $ .. | $ | $ |
|  |  | $ | $ | $ | $ | $ |
|  |  | $ | $ | $ | $ | $ |
|  |  | $ | $ | $ | $ | $ |

\*  Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\*  **Do not enter a Combined Sublimit of Insurance if individual Sublimits of Insurance are selected for Coverages A, B or C, or if one of these Coverages is not applicable.**

**All Sublimits of Insurance described above are sublimits and are included in the Limit of Insurance noted on the Declarations page.  These Sublimits of Insurance do not increase the Limit of Insurance noted on the Declarations page.**

**A. Each Coverage – Coverage A, Coverage B and Coverage C – is provided under this endorsement** only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both B.1. and B.2. are satisfied and are then subject to the qualifications set forth in B.3.

1. The ordinance or law:

   a. Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   b. Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

2. a. The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

   b. The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

02 PP 648 (01/04)          © Copyright, General Star Management Company, Stamford, CT 2001- 2002.
Includes copyrighted material of Insurance Services Office, Inc., with its permission          Page 1 of 4

Exhibit 4
Page 110 of Notice of Removal

c. But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

3. In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B, and/or C** of this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B and/or C** of this endorsement.

C. We will not pay under Coverage **A, B or C** of this endorsement for:

1. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

2. The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

D. Coverage

1. **Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.

2. **Coverage B – Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

Coverage **B** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **B** does not increase the Limit of Insurance.

3. **Coverage C – Increased Cost Of Construction Coverage**

a. With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

(1) Repair or reconstruct damaged portions of that building; and/or

(2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

(1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

(2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Coverage **C** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **C** does not increase the Limit of Insurance.

b. When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.**:

(1) The cost of excavations, grading, backfilling and filling;

(2) Foundation of the building;

(3) Pilings; and

(4) Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision, **3.b.**

© Copyright, General Star Management Company, Stamford, CT 2001- 2002.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

Exhibit 4
Page 111 of Notice of Removal

**E. Loss Payment**

1. All following loss payment Provisions, **E.2.** through **E.5.**, are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

2. When there is a loss in value of an undamaged portion of a building to which Coverage A applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   a. If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

      (1) The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

      (2) The Limit of Insurance shown in the Declarations as applicable to the covered building.

   b. If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the **lesser** of:

      (1) The actual cash value of the building at the time of loss; or

      (2) The Limit of Insurance shown in the Declarations as applicable to the covered building.

3. Unless Paragraph **E.5.** applies, loss payment under Coverage **B** – Demolition Cost Coverage will be determined as follows:

   We will not pay more than the lesser of the following:

   a. The amount you actually spend to demolish and clear the site of the described premises; or

   b. The applicable Sublimit of Insurance shown for Coverage **B** in the schedule above and included within the Limit of Insurance shown in the Declarations as applicable to the covered building.

4. Unless Paragraph **E.5.** applies, loss payment under Coverage **C** – Increased Cost of Construction Coverage will be determined as follows:

   a. We will not pay under Coverage **C:**

      (1) Until the property is actually repaired or replaced, at the same or another premises; and

      (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

      (1) The increased cost of construction at the same premises; or

      (2) The applicable Sublimit of Insurance shown for Coverage **C** in the schedule above and included within the Limit of Insurance shown in the Declarations as applicable to the covered building.

   c. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

      (1) The increased cost of construction at the new premises; or

      (2) The applicable Sublimit of Insurance shown for Coverage **C** in the schedule above and included within the Limit of Insurance shown in the Declarations as applicable to the covered building.

5. If a **Combined** Limit of Insurance is shown for Coverages **B** and **C** or Coverages **A, B** and **C** in the Schedule above, Paragraphs **E.2.**, **E.3.** and **E.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

   The most we will pay, for the total of all covered losses for Coverage **B** and Coverage **C,** is the Combined Sublimit of Insurance shown for Coverages **B** and **C** in the Schedule above and included within the Limit of Insurance shown in the Declarations as applicable to the covered building. The most we will pay, for the total of all covered losses for Coverage A, Coverage B and Coverage C, is the Combined Sublimit of Insurance shown for Coverages A, B and C in the Schedule above and included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Subject to these Combined Sublimits of Insurance, the following loss payment provisions apply:

   a. For Coverage A–Coverage For Loss To The Undamaged Portion Of the Building, the most we will pay is the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

© Copyright, General Star Management Company, Stamford, CT 2001- 2002.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

Exhibit 4
Page 112 of Notice of Removal

b. For Coverage B-Demolition Cost Coverage, we will not pay more than the amount you actually spend to demolish and clear the site or the described premises.

c. For Coverage C-With respect to the Increased Cost of Construction:

(1) We will not pay for the Increased cost of construction:

(a) Until the property is actually repaired or replaced, at the same or another premises; and

(b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(2) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

(3) If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

F. The terms of this endorsement apply separately to each building to which this endorsement applies.

G. Under this endorsement we will not pay for loss due to any ordinance or law that:

1. You were required to comply with before the loss, even if the building was undamaged; and

2. You failed to comply with.

H. Example of Proportionate Loss Payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section B.3. of this endorsement.)

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage C of this endorsement: $60,000

Step 1:

Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

Step 2:

Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage C loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

NOTE: The same procedure applies to losses under Coverages A and B of this endorsement.

I. The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

IN WITNESS WHEREOF The **General Star Indemnity Company** has caused this Policy to be signed by its President and Secretary at Stamford, Connecticut, but the same shall not be binding upon the Company unless countersigned on the Declarations Page by an authorized representative of the Company.

**GENERAL STAR INDEMNITY COMPANY**

_____
Secretary

_____
President

02 PP 700 back (09/02)         © Copyright, General Star Management Company, Stamford, CT1999-2000.
Includes Copyrighted material of Insurance Services Office, Inc., with its permission

**Exhibit 4**
**Page 114 of Notice of Removal**

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUDIT ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 12 , effective          July 31, 2004          forms a part of Policy # IAG394764

issued to   NIJJAR REALTY, INC.                                                  by General Star Indemnity Company

It is hereby understood and agreed that an additional premium of $10,196       is due to the
Company for the   quarterly          audit conducted for the period of  07/31/2004 to 10/31/2004
as per the attached change schedule.

All other terms, conditions and exclusions remain unchanged.

02 PP 666 (11/04)

Exhibit 4
Page 115 of Notice of Removal

NAMED INSURED: NIJJAR REALTY

<u>1st Quarter Report</u>

| Effective | Property # | Location | Building | Rents | Contents | Total | Description | Mortgagee | Vesting |
|---|---|---|---|---|---|---|---|---|---|
| 09/14/04 | 930 | 10027-10833 1/2 Muthal Street El Monte, CA 91731 | 552,000 | 56,736 | 0 | 608,736 | adding location: 5 units; 4 bldgs; no pool; 1 story; F/S; built (1@ 1944&3@1963); 3 sfr; 1 duplex; comp roofs; all have attached garages; battery smoke detectors in each unit; copper w/s | East West Bank, its successors and/or assigns 475 Huntington Drive San Marino, DA 91108 Loan # 9121290 | Michael-Preet Nijjar, a single man |
| 09/15/04 | 606 | 2729 Humbert Street El Monte, CA 91731 | 1,200,000 | 25,000 | 153,500 | 1,378,500 | increasing values: Building values increased by $327,900 (original building values were $872,100) | Impac Multifamily Capital Corporation its successors and/or assigns, as beneficiary 1401 Dove Street Newport Beach, CA 92660 | Paramjit S. & Harjinder Nijjar |
| 09/21/04 | 297 | 2140-42 Mesa & 2410, 40, 50 Macy San Bernardino, CA 92405 | 227,480 | 0 | 0 | 227,480 | adding location: 5 units; 3 buildings (1@1,196 sf; 1@918 sf; 1@680 sf); 2 detached garage; F/S; 1 story; no pool, comp roof; year built ranges from 1936-1957 | 1st mortgagee: Rober A. & Myrtice M. Henry H/W/JT, 10181 Rt 66 Conway, MO 65632  2nd mortgagee: Francine DeTar, an unmarried woman 2725 N. State St. San Bernardino, CA 92407 | Group V San Bernardino, Ltd. |
| 09/23/04 | 867 | 25379 Redlands Blvd. Loma Linda, CA 92354 | 425,000 | 0 | 0 | 425,000 | adding location: 12 units; 5 buildings + detached garage; F/S/ battery smoke detectors; fire extinguishers services annually; 1 story; total 6,000 sf; no pool, roof 1999; year built ranges from 1946-1962; all units have circuit breakers and are individually metered. | | Starlight Mgmt-17, LP |
| 10/01/04 | 609 | 1956-68 & 1801-06 Acacia St. & 1755-59 & 1801-11 Elm St. Ontario, CA 91761 | 1,900,000 | 292,200 | 17,000 | 2,209,200 | adding location: 1 story; 17 buildings; F/S; comp roof (1-2 years old); built 1960s; 27,455 total sf; 2 detached garages approx 400 sf & 2 detached carports | Pacific Premier Bank, FSB, its successors and/or assigns 1600 Sunflower Ave. 2nd Floor Costa Mesa, CA 92626 Loan # 53-300667-20 | Group V San Bernardino, LP |
| 07/31/04 | 618 | 631 E. Grand Avenue San Gabriel, CA 91776 | 330,000 | 67,200 | 0 | 397,200 | adding location: 5 units; 1 building; built 1960; frame/stucco; comp (tar and gravel); 2 story; 4400 total sq ft | First Federal Bank of California P.O. Box 2130 Santa Monica, CA 90407 Loan # 0009590264 | Group V San Bernardino, LP |
| 07/31/04 | 304 | 955-961 W. 9th Street Pomona, CA 91766 | 975,000 | 922,580 | 0 | 1,897,580 | adding location: 14 units; 5 building; F/S; Comp Roof; Built 1963; 15,000 sq ft; 20 carport spaces | Impac Multi Family Capital Corp., Its/os 1401 Dove Street Newport Beach, CA 92660 Loan # 55-00001184 | Group V San Bernardino, LP |
| 07/31/04 | 793 | 11322-26 1/2 Elliott Avenue El Monte, CA 91731 | 330,000 | 46,900 | 0 | 376,900 | adding location: 5 units; 3 buildings; F/S; Comp Roof; Built 1952; 4,800 sq ft | First Federal Bank of California 401 Wilshire Blvd. Santa Monica, CA 90401 | Jit S. and Balwant K. Nijjar |
| 07/31/04 | 933 | 7337-7339 McKinley Avenue San Bernardino, CA 92410 | 296,000 | 28,000 | 0 | 324,000 | adding location: 7 units (2 building 1 @ 1 unit; 1 @ 6 units; 1 & 2 story; F/S; Comp Roof; Built 1954; 3,500 sq ft; 1 attached garage | James E. and Amelia A. Herman (private) 7631 Del Rosa Ave. San Bernardino, CA 92410 | MPN-14, Ltd. |
| 07/31/04 | 931 | 2090-2096 Porter Street San Bernardino, CA 92407 | 380,000 | 42,800 | 0 | 422,800 | adding location: 6 units; 1 & 2 story; F/S; Comp Roof (10 years); Built 1983; 3,600 sq ft; 1 attached 2 car garage, 3 space carport | East West Bank, A California Corporation 407 W. Valley Blvd. Alhambra, CA 90801 Loan # 20035 | MPN-14, Ltd. |

Exhibit 4
Page 116 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# REPLACEMENT OF A FORM

This endorsement modifies insurance provided under this Policy.

This endorsement #  13  , effective        July 31, 2004     forms a part of Policy  # IAG394764
issued to  NIJJAR REALTY, INC.                            by General Star Indemnity Company

In consideration of a return premium of $10,196, it is agreed that Audit Endorsement - 02 PP 666 (11/2004),
Endorsement #12

is deleted in its entirety and replaced by  Audit Endorsement - 02 PP 666 (11/2004), Endorsement #14

which is attached.

All other terms, conditions and exclusions remain unchanged.

02 PP 677 (03/04)

Exhibit 4
Page 117 of Notice of Removal

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUDIT ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 14 , effective          July 31, 2004          forms a part of Policy # IAG394764

issued to NIJJAR REALTY, INC.                              by General Star Indemnity Company

It is hereby understood and agreed that an additional premium of $10,196      is due to the
Company for the quarterly   audit conducted for the period of 07/31/2004 to 10/31/2004
as per the attached change schedule.

All other terms, conditions and exclusions remain unchanged.

02 PP 666 (11/04)

**Exhibit 4**
**Page 118 of Notice of Removal**

| Effective | Property # | Location | Building | Rents | Contents | Total | Description | Mortgagee | Vesting |
|---|---|---|---|---|---|---|---|---|---|
| 09/14/04 | 930 | 10827-10833 1/2 Mulhall Street<br><br>El Monte, CA 91731 | 552,000 | 58,738 | 0 | 608,738 | adding location: 5 units; 4 bldgs; no pool; 1 story; F/S; built (1@ 1944&3@1963); 3 std;<br>1 duplex; comp roofs; all have attached garages;<br>battery smoke detectors in each unit; copper wire | East West Bank,<br><br>its successors and/or assigns<br><br>475 Huntington Drive<br><br>San Marino, DA 91108<br>Loan # 9121290 | Michael-Preet Nijjar, a single man |
| 09/18/04 | 608 | 2729 Humbert Street<br><br>El Monte, CA 91731 | 1,200,000 | 25,000 | 153,600 | 1,378,600 | Increasing values:  Building values increased<br><br>by $327,900 (original building values were $872,100) | Impac Multifamily Capital Corporation<br><br>its successors and/or assigns, as beneficiary<br>1401 Dove Street<br>Newport Beach, CA 92660 | Paramjit S. & Harjinder Nijjar |
| 09/21/04 | 297 | 2140-42 Mesa &<br><br>2410, 40, 50 Macy<br>San Bernardino, CA 92405 | 227,460 | 0 | 0 | 227,460 | adding location: 3 units; 3 buildings (1@1,198 sf; 1@916 sf; 1@560 sf); 2 detached garage;<br>F/S; 1 story; no pool; comp roof; year built ranges from 1936-1957 | 1st mortgage: Robert A. & Myrtice M. Henry<br><br>HWJT,<br><br>10181 Rt 86<br>Conway, MO 65632<br><br>2nd mortgage: Francine DeTar, an unmarried woman<br>2725 N. State St.<br>San Bernardino, CA 92407 | Group V San Bernardino, Ltd. |

Exhibit 4<br>Page 119 of Notice of Removal

| Effective | Property # | Location | Building | Rents | Contents | Total | Description | Mortgagee | Vesting |
|---|---|---|---|---|---|---|---|---|---|
| 09/23/04 | 687 | 26379 Redlands Blvd. Loma Linda, CA 92354 | 425,000 | 0 | 0 | 425,000+ | adding location: 12 units; 5 buildings<br><br>detached garage; F/S/ battery smoke detectors; fire extinguishers services annually;<br><br>1 story; total 6,000 sf; no pool, roof 1999;<br><br>year built ranges from 1946-1952; all units<br><br>have circuit breakers and are individually metered. | | Starlight Mgmt-17, LP |
| 10/01/04 | | 1956-58 & 1801-06 Acacia St. &<br><br>1756-59 & 1801-11 Elm St.<br><br>Ontario, CA 91761<br><br>San Gabriel, CA 91776 | 1,900,000 | 292,200 | 17,000 | 2,209,200 | adding location: 1 story; 17 buildings; F/S;<br><br>comp roof (1-2 years old); built 1960s;<br><br>27,455 total sf; 2 detached garages approx 400<br><br>sf & 2 detached carports<br><br>frame/stucco; comp (tar and gravel); 2 story;<br><br>4400 total sq ft<br><br>-- | Pacific Premier Bank, FSB,<br><br>its successors and/or assigns<br><br>1600 Sunflower Ave., 2nd Floor Costa Mesa, CA 92826 Loan # 53-600557-20<br><br>P.O. Box 2130 Santa Monica, CA 90407 Loan # 0009690264 | Group V San Bernardino, LP |

Exhibit 4
Page 120 of Notice of Removal

| Effective | Property # | Location | Building | Rents | Contents | Total | Description | Mortgagee | Vesting |
|---|---|---|---|---|---|---|---|---|---|
| 07/31/04 | 304 | 965-981 W. 9th Street<br><br>Pomona, CA 91766 | 975,000 | 922,580 | 0 | 1,897,580 | **adding location:** 14 units; 8 buildings; F/S;<br><br>Comp Roof; Built 1963; 15,000 sq ft;<br>20 carport spaces | Impac Multi Family Capital Corp., Isa/oa<br><br>1401 Dove Street<br>Newport Beach, CA 92660<br>Loan # 55-00001154 | Group V San Bernardino, LP |
| 07/31/04 | 793 | 11322-26 1/2 Elliott Avenue<br>El Monte, CA 91731 | 330,000 | 46,800 | 0 | 376,800 | **adding location:** 6 units; 3 buildings; F/S;<br>Comp Roof; Built 1962; 4,800 sq ft | First Federal Bank of California<br>401 Wilshire Blvd.<br>Santa Monica, CA 90401 | Jit S. and Balwant K. Nijjar |
| 07/31/04 | 933 | 7337-7339 McKinley Avenue<br><br>San Bernardino, CA 92410 | 296,000 | 28,000 | 0 | 324,000 | **adding location:** 7 units (2 building 1 @ 1 unit;<br><br>1 @ 6 units); 1 & 2 story; F/S; Comp Roof;<br><br>Built 1984; 3,500 sq ft; 1 attached garage | James E. and Amelia A. Herman (private)<br><br>7531 Del Rosa Ave.<br><br>San Bernardino, CA 92410 | MPN-14, Ltd. |
| 11/08/04 | 931 | 2090-2096 Porter Street<br><br>San Bernardino, CA 92407 | 380,000 | 42,600 | 0 | 422,600 | **adding location:** 5 units; 1 & 2 story; F/S;<br><br>Comp Roof (10 years); Built 1963; 3,600 sq ft;<br><br>1 attached 2 car garage, 3 space carport | East West Bank, A California Corporation<br><br>407 W. Valley Blvd.<br><br>Alhambra, CA 90501<br>Loan # 20035 | MPN-14, Ltd. |

Exhibit 4
Page 121 of Notice of Removal

# GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUDIT ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 15 , effective        October 31, 2004        forms a part of Policy # IAG394764

Issued to   NIJJAR REALTY, INC.                              by General Star Indemnity Company


It is hereby understood and agreed that a return premium of $1,935   is due to the
Insured for the quarterly     audit conducted for the period of 10/31/2004 to 01/31/2005
as per the attached change schedule.

All other terms, conditions and exclusions remain unchanged.

02 PP 666 (11/04)

Exhibit 4
Page 122 of Notice of Removal

| Effective | Property # | Location | Building | Rents | Contents | Total | Description | Mortgagee | Vesting |
|---|---|---|---|---|---|---|---|---|---|
| 11/09/04 | 932 | 671-673-679 W. Highland Avenue<br><br>San Bernardino, CA 92405 | 565,000 | 89,400 | 0 | 654,400 | adding: 1 & 2 story; 9 buildings; F/S; Comp Roof;<br><br>Built 1940's-50's; 7,060 sq ft; Approx 900 sq ft<br><br>2 attached garages; updates in 1978 - remodeling;<br><br>1986/96 electrical; 1995 gas (sellers have updated on a regular basis). | East West Bank, its successors and/or assigns 135 N. Los Robles Avenue Suite 100<br><br>Pasadena, CA 91101<br><br>3 Loans: 671 Highland - 09121367<br><br>679 Highland - 09121366<br><br>673 Highland - 09121365 | MPN-14 Limited Partnership,<br><br>a California Limited Partnership |
| 07/31/04 | 881 | 4967 N. Lugo<br>San Bernardino, CA 92404 | 26,000 | 6,000 | 0 | 32,000 | adding: 1 unit; 1 building; F/S; 400 sq ft; 1 story; open<br><br>parking | | Sanjeet Nijjar, a single man |
| 12/30/04 | 259 | 1433 Lynwood Street<br>San Bernardino, CA 92404 | -2,500,000 | -25,000 | -480,000 | -3,005,000 | deleting location | | |

Exhibit 4
Page 123 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CORRECTIONS TO SCHEDULE ON FILE
# ADDRESS CHANGE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY EXCESS INSURANCE POLICY

This endorsement # 16 , effective        July 31, 2004        forms a part of Policy # IAG394764

issued to  NIJJAR REALTY, INC.                            by General Star Indemnity Company

It is hereby understood and agreed that the following Location(s) on the Schedule on file with General Star

received March 25, 2005 is/are corrected to read:

| Prem. No. | Bldg. No. | Location Name | Location Address |
|-----------|-----------|---------------|------------------|
| 883 | 1 | N/A | 25276 Pacific Avenue<br>San Bernardino, CA 92404-6340 |

The Total Declared Value provided to us in the Statement of Values remains the same.

All other terms, conditions and exclusions remain unchanged.

02 XP 718 (03/04)

Exhibit 4
Page 124 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CORRECTIONS TO SCHEDULE ON FILE
# ADDRESS CHANGE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY EXCESS INSURANCE POLICY

This endorsement # 17 , effective      October 1, 2004      forms a part of Policy # IAG394764

Issued to  NIJJAR REALTY, INC.                              by General Star Indemnity Company

It is hereby understood and agreed that the following Location(s) on the Schedule on file with General Star

received May 18, 2005   is/are corrected to read:

| Prem. No. | Bldg. No. | Location Name | Location Address |
|-----------|-----------|---------------|------------------|
| 303 | 1 | N/A | 1756-1806 E. Acadia St. & 1755-1811 E. Elm Street<br>Ontario, CA 91761 |

The Total Declared Value provided to us in the Statement of Values remains the same.

All other terms, conditions and exclusions remain unchanged.

02 XP 718 (03/04)

Exhibit 4
Page 125 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# GENERAL CORRECTIONS ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement #  18  , effective          March 30, 2005          forms a part of Policy # IAG394764

issued to  NIJJAR REALTY, INC.                              by  General Star Indemnity Company

In consideration of the premium charged, it is agreed that the   Mortgagee
is corrected to read as follows:

| Property # | Address | Loan # |
|---|---|---|
| 929 | 519 Central Avenue, Hemet, CA 92544 | 09121464 |
| 928 | 331 S. Ramona Avenue, Hemet, CA 92544 | 09121465 |
| 926 | 416 S. Buena Vista, Hemet, CA 92544 | 09121462 |
| 924 | 142 N. Alesandro, Hemet, CA 92544 | 09121463 |

New Vesting on all:  MPN-14 Limited Partnership, a California Limited Partnership

Mortgage holder on all:     East West Bank
                            Its successors and/or assigns
                            135 N. Los Robles Avenue
                            Suite 100
                            Pasadena, CA 91101

All other terms, conditions and exclusions remain unchanged.

02 PP 622 (03/04)

Exhibit 4
Page 126 of Notice of Removal

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUDIT ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 19 , effective          January 31, 2005     forms a part of Policy #  IAG394764

issued to   NIJJAR REALTY, INC.                                by  General Star Indemnity Company

It is hereby understood and agreed that an additional premium of $2,058  is due to the Company for the quarterly     audit conducted for the period of 01/31/2005 to 04/30/2005 as per the attached change schedule.

All other terms, conditions and exclusions remain unchanged.

02 PP 666 (11/04)

Exhibit 4
Page 127 of Notice of Removal

NAMED INSURED: NIJJAR REALTY

3rd Quarter Report

| Effective | Property # | Location | Building | Rents | Contents | Total | Description | Mortgagee | Vesting |
|---|---|---|---|---|---|---|---|---|---|
| 02/02/05 | 934 | 248 E. Highland Ave., San Bernardino, CA 92408 | 700,000 | 130,000 | 0 | 830,000 | adding: 2 buildings; 1 @ 5,68 sq ft; 1 @ 3,600 sq ft; frame stucco; built 1966; offices | Farmers and Merchants Bank 302 Pine Ave., Long Beach, CA 90802 | MPN-14, LP A California Limited Partnership |
| 02/10/05 | 935 | 25509 16oth Street San Bernardino, CA 92410 | 765,000 | 94,000 | 0 | 859,000 | adding: apartments; 13 units; 10,200 sq ft; built 1962-64; frame stucco; comp roof | East West Bank its successors and/or assigns 407 W. Valley Blvd. Alhambra, CA 90801 Loan #88220262 | MPN-14 LP A California Limited Partnership |
| 02/10/05 | 936 | 635 - 649 N. San Antonio Pomona, CA 91767 | 562,500 | 78,000 | 0 | 640,500 | adding: built 1920s/1970s; comp roof - 1 year old on 3 bedroom houses; 3 buildings; 2 stories; tuck parking | East West Bank its successors and/or assigns 407 W. Valley Blvd. Alhambra, CA 90801 Loan #88220261 | MPN-14 LP A California Limited Partnership |
| 04/19/05 | 308 | 135-143 E. Woodbury Rd. & 142-152 E. Sacramento St Altadena, CA 91001 | 645,964 | 138,000 | 0 | 783,964 | adding: built 1955, 1964; F/S; comp roofs; attached garages; 7,110 sq ft; | United Commercial Bank, its successors and/or assigns P.O. Box 7870 San Francisco, CA 94120 3 loans; #0045185 for 135 E. Woodbury & 142 & 144 E. Sacramento #0045179 for 137, 139, 141 & 143 E. Woodbury Rd. #0045187 for 148, 150 & 152 E. Sacramento St. | Swaranjit S. Nijjar and Patricia D. Nijjar, HWJCP |

Exhibit 4
Page 128 of Notice of Removal

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUDIT ENDORSEMENT

This endorsement modifies insurance provided under this Policy.


This endorsement # 20  effective        April 30, 2005        forms a part of Policy # IAG394764

Issued to  NIJJAR REALTY, INC.                            by  General Star Indemnity Company


It is hereby understood and agreed that an additional premium of $6,892  is due to the
Company for the quarterly     audit conducted for the period of  04/30/2005 to 07/31/2005
as per the attached change schedule.


All other terms, conditions and exclusions remain unchanged.


02 PP 666 (11/04)

Exhibit 4
Page 129 of Notice of Removal

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 03/16/05 | 310 | 5310 Olivewood Ave. Riverside, CA 92509 | 1,884,000 | 243,850 | 17,000 | 2,144,850 | adding: 34 units; 25,120 sf; built 1963; flat roof; 1 building; F/S | Farmers & Merchants Bank of Long Beach 302 Pine Avenue Long Beach, CA 90802 Loan # 90-100-7531-1 | Group V San Bernardino, LP a California Limited Partnership |
| 03/16/05 | 311 | 5410 Olivewood Ave. Riverside, CA 92509 | 970,500 | 90,000 | 10,500 | 1,071,000 | adding: 21 units; 12,940 sf; built 1963; flat roof; 3 buildings; F/S | Farmers & Merchants Bank of Long Beach 302 Pine Avenue Long Beach, CA 90802 Loan # 90-100-7533-8 | Group V San Bernardino, LP a California Limited Partnership |
| 03/18/05 | 895 | 1019 & 1027 South G Street Ontario, CA 91761 | 960,300 | 134,640 | 0 | 1,094,940 | adding: 22 units; 12,804 sf; built 1963; 2 story; comp roof 2 year old; f/s | Odilio Correia, trustee of the trust B of the Odilio Correi and Aldevina Correia Trust Agreement dated April 8, 1982 as to an undivided 58% interest, and Odilio Correia, Mary Lou Borges Sarkissian and Debra | Starlight Management-17, LP a California Limited Partnership |

Exhibit 4
Page 130 of Notice of Removal

| Date | | | | | | | | |
|------|---|---|---|---|---|---|---|---|
| | | | | | | | | Borges Zorazil, co-Trustees of Trust B under Ordillo Correia and Aldevia Correia Trust |
| | | | | | | | | Agreement dated April 8, 1982 as to an |
| | | | | | | | | undivided 42 interest. |
| 03/18/05 | 307 | 2865 W. Rialto Ave. Rialto, CA 92376 | 843,750 | 325,000 | 0 | 1,168,750 | adding: built 1968-83 sp mobile home park; clubhouse 1,800 sf; laundry room 300 sf; sfd 1,750 sf; storage room 250 sf | Pacific Premier Bank its successors and/or assigns 1600 Sunflower, 2nd floor Costa Mesa, CA 92626 | Group V San Bernardino, LP a California Limited Partnership |
| 03/18/05 | 307 | 2865 W. Rialto Ave, Rialto, CA 92376 | 0 | 17,000 | 0 | 17,000 | increasing rental values | | |

Exhibit 4
Page 131 of Notice of Removal

| 03/18/05 | 893 | 117-121 N. Fern Ave. Ontario, CA 91761 | 983,750 | 94,080 BI | 0 | 1,077,830 | adding: 14 units; 11,210 sf + 2,600 sf garage; built 1948; comp roof 7-8 years; f/s | Odilio Correia, trustee of Trust B of the Odilio Correi and Aldavina Correia Trust Agreement dated April 8, 1982 as to ann undivided 58% interests, and Odilio Correia, Mary Lou Borges Sarkissian and Debra Borges Zorazii, co-Trustees of Trust B under the Odilio corela and Aldevia Correia Trust Agreement date April 8, 1982 as to an undivided 42 interest. | Starlight Management-17, LP a California Limited Partnership |

Exhibit 4
Page 132 of Notice of Removal

| Date | | Address | | | | | Description | Lender/Contact | Entity |
|---|---|---|---|---|---|---|---|---|---|
| 04/05/05 | 938 | 1624-32 Cesar E. Chavez Ave. & 419 N. Boyle Los Angeles, CA 90033 | 435,000 | 115,000 | 0 | 550,000 | adding; 4 buildings - 1 is a 3 unit apt (2,200 sf), 1 is occupied by Metro Grill (700 sf), 1 is occupied by Unilab Corporation (1,000 sf) & 1 is occupied by Philips Tire & Auto Repair (1,100 sf); originally built 1957; renovations to 1630 in 2003 and 1632 in 2002; Class C Buildings; 100 occupied | Raymond T. Rodrigues, a married man, as hi sole and separate property 1600 N. Steele Ave. Los Angeles, CA 90063 | MPN-14 Ltd. A California Limited Partnership |
| 04/06/05 | 306 | 9330-9370 Juniper Avenue Fontana, CA 92335 | 3,685,500 | 542,000 | 30,000 | 4,257,500 | adding: 60 unit; 45,140 sf; built 1988; t/s; tile roof; 2 story; sprinklered; bathroom/laundry; pole type carports | United Commercial bank, its successors and or assigns P.O. Box 7670 San Francisco, CA 94120 Loan #7769873 | Group V San Bernardino, LP a California Limited Partnership |
| 05/12/05 | | 1454, 1456, 1458 N. Lugo | 210,000 | 30,000 | 0 | 240,000 | adding: 3 units; (1sfd front bldg; duplex rear bldg); | | Shelter LLC |

Exhibit 4
Page 133 of Notice of Removal

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | San Bernardino, CA | | | | | original year built 1924 (sfd); duplex approx 1950-60; 2,800 sq ft; F/S; 1 story | |
| 05/26/05 | L11 | 4136 Mountain Drive San Bernardino, CA 92408 | 125,000 | 12,000 | 0 | 137,000 | adding: SFD; 1,900 sf (w/attached garage); built 1960s; roof approx 10 years old; f/a; 1 story (currently owner occupied) | East West Bank, its successors and/or assigns 135 N. Los Robles Ave. Suite 100 Pasadena, CA 91101 Loan # 09121955 | Starlight Mgmt-17, LP, aclp |
| 05/26/05 | 313 | 222 E. Foothill Blvd. Pomona, CA 91767 | 277,700 | 415,900 | 0 | 693,600 | adding: 86 sp mobile home park; 4 bldgs - office 500 sf, clubhouse 800 sf, laundry room 200 sf, storage shed 60 sf; plus 20 park owned mobile home units; pool; built 1949-50 | United Pacific Bank Attn: Loan Administration 1630 S. Azusa Ave. City of Industry, CA 91748 Loan # 113706 | Mobile Home Group I, LP, ACLP |
| 06/21/05 | 940 | 685 N. State Street Hemet, CA 92543 | 100,000 | 145,000 | 0 | 245,000 | adding: 37 sp mobile home park with sfd and laundry room that are park owned bldgs; built 1960 | no lender | MPN-14, LP |

Exhibit 4
Page 134 of Notice of Removal

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 07/22/05 | 312 | 652 N. Ramona Blvd. & 684 De Anza San Jacinto, CA 92583 | 7,260,000 | 1,130,500 | 78,500 | 8,469,000 | adding: 157 units; 41 buildings; t/s; built 1976; carports | CW Capital, LLC its successors and/or assigns, as their interest may appear One Charles River Place 63 Kendrick Street Needham, MA 02494 | The 312 Ramona Apartments, LP |
| 07/26/05 | 314 | 39080 Cherry Valley Blvd. Cherry Valley, CA 922233 | 400,000 | 539,000 | 0 | 939,000 | adding: 109 space mobile home park, built 1960s; consists of 1 clubhouse; 1 laundry bldg; 28 park owned coaches (@ $10,000 each) | Column Financial, Inc. its successors and/or assigns C/O Key Commercial Mortgage 900 Main Street suite 1500 Kansas City, MO 64105 | Mobile Home Group II, LP |
| 07/26/05 | 315 | 5533 Long Beach Blvd. Long Beach, CA 90805 | 255,000 | 600,000 | 0 | 855,000 | adding: 100 space mobile home park; built 40s-60s; consists of 1 clubhouse; 1 laundry building; 2 parked owned coaches (1 single @ $10,000 and 1 double @ $15,000) | Column Financial, Inc. its successors and/or assigns C/O Key Commercial Mortgage 900 Main Street suite 1500 Kansas City, MO 64105 | Mobile Home Group II, LP |

Exhibit 4
Page 135 of Notice of Removal

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 07/26/05 | 316 | 13061 2nd Street<br>Yucaipa, CA<br>92399 | 220,000 | 225,000 | 0 | 445,000 | adding:  57 space<br>mobile home park<br>with 1 sfd; built<br>1959; consists of<br>1 clubhouse; 1 sfd<br>with attached<br>garage; laundry<br>room | Column Financial, Inc.<br>its successors and/or<br>assigns<br>C/O Key Commercial<br>Mortgage<br>900 Main Street<br>suite 1500<br>Kansas City, MO<br>64105 | Mobile Home Group<br>II, LP |
| | | **4th Quarter Total** | **18,610,500** | **4,858,970** | **136,000** | **23,405,470** | | | |

**Exhibit 4**
**Page 136 of Notice of Removal**

## GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITION OF A FORM

This endorsement modifies insurance provided under this Policy.

This endorsement # 21 , effective       July 22, 2005       forms a part of Policy # IAG394764

issued to  NIJJAR REALTY, INC.                                 by  General Star Indemnity Company.

In consideration of the premium charged,  it is agreed that the following form is added to this

policy and is attached to this endorsement.

**IL 09 54 - LIMITED EXCLUSION OF ACTS OF TERRORISM (OTHER THAN CERTIFIED ACTS OF TERRORISM);
CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM; COVERAGE FOR CERTAIN FIRE LOSSES**

**IC 09 01 - Conditional Exclusion of Terrorism (Relating to Dispostion of Federal Terrorism Risk Insurance
Act of 2002)**

**IC 09 04 - Disclosure of Premium and Estimated Premium**

Coverage only applies to location:
The 312 Ramona Apartments, LP
652 N. Ramona Blvd. & 684 De Anza
San Jacinto, CA 92583

All other terms, conditions and exclusions remain unchanged.

02 PP 501 (04/04)

Exhibit 4
Page 137 of Notice of Removal

POLICY NUMBER:  IAG394764

IL 09 54 11 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED EXCLUSION OF ACTS OF TERRORISM (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM; COVERAGE FOR CERTAIN FIRE LOSSES

This endorsement modifies insurance provided under this Policy.

**Endorsement Premium is $1,000**

**A.** The following definitions are added with respect to the provisions of this endorsement:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in aggregate losses in excess of $5 million; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism", when such act resulted in aggregate losses of $5 million or less.

**B.** The following exclusion is added:

**EXCLUSION OF AN "OTHER ACT OF TERRORISM"**

We will not pay for loss or damage caused directly or indirectly by an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

2. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

3. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "other acts of terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

---

IL 09 54 11 02                    © ISO Properties, Inc., 2002                    Page 1 of 2    □

**Exhibit 4**
**Page 138 of Notice of Removal**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the Coverage Part or Policy to which it is attached.

**A. Applicability Of The Provisions Of This Endorsement**

    **1.** The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

        **a.** The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

        **b.** A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

            **(1)** Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

            **(2)** Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

            **(3)** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

    The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

    **2.** If the provisions of this endorsement become applicable, such provisions:

        **a.** Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury, loss or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

        **b.** Remain applicable unless we notify you of changes in these provisions, in response to federal law.

    **3.** If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**B.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, loss or damage, are enclosed in quotation marks:

    **1.** "Terrorism" means activities against persons, organizations or property of any nature:

        **a.** That involve the following or preparation for the following:

            **(1)** Use or threat of force or violence; or

            **(2)** Commission or threat of a dangerous act; or

    **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

  **b.** When one or both of the following applies:

    **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

  **2.** "Any injury, loss or damage" means any injury, loss or damage covered under any Coverage Part, Policy or underlying insurance to which this endorsement is applicable.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury, loss or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, loss or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, loss or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

  **1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

  **2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

  **3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

  **4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

  **5.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

  **6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury, loss or damage" that is otherwise excluded under this Coverage Part or Policy.

**D. Exception Covering Certain Fire Losses**

The following exception applies only to Certain Fire Losses in those states where applicable.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

Includes copyrighted material of ISO with its permission
IC 09 01 05 04   □

**Exhibit 4**
**Page 140 of Notice of Removal**

POLICY NUMBER:  IAG394764

IC 09 04 05 04

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

**SCHEDULE**

| |
|---|
| Terrorism Premium (Certified Acts) |
| **(A) Premium through 12/31/05**   $1,000.00 |
| **(B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)**        $0.00 |
| |
| **Additional Information, if any, concerning the terrorism premium:** |
| |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

**C. Possibility Of Additional Or Return Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

Exhibit 4
Page 141 of Notice of Removal

GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AUDIT ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement # 22  effective          July 31, 2004          forms a part of Policy # IAG394764

Issued to  NIJJAR REALTY, INC.                              by  General Star Indemnity Company

It is hereby understood and agreed that an additional premium of $2,511   is due to the
Company for the annual   audit conducted for the period of  07/31/2004 to 07/31/2005
as per the attached change schedule.

All other terms, conditions and exclusions remain unchanged.

02 PP 666 (11/04)

Exhibit 4
Page 142 of Notice of Removal

*NAMED INSURED: HUJAR REALTY*

ADD/DELETE/INCREASE/DECREASE LOCATIONS

| Effective | Property # | Location | Building | Rents | Contents | Total | Description | Mortgagee | Vesting |
|---|---|---|---|---|---|---|---|---|---|
| 03/23/05 | 936 | 8427 Secura Way Santa Fe Springs, CA 90670 | 974,200 | 100,000 | 0 | 1,074,200 | adding: light industrial use; concrete block bldg w/ flat panelized roof; single tenant (sheet metal fab); 13,917 sq ft; built 1964 | Farmers & Merchants Bank of Long Beach 302 Pine Avenue Long Beach, CA 90802 1st trust deed Loan #9010075532 2nd trust deed Loan #9010075540 | MPH-14 Limited Partnership, a California Limited Partnership |
| 05/16/05 | 309 | 16153 Merill Avenue Fontana, CA 92335 | 5,100,000 | 842,360 | 34,000 | 5,776,360 | adding: 86 units; 13 buildings; 2 story; built 1986; detached garages (32); & carports (36); sprinklered; frame/stucco construction; pool | United Commercial Bank its successors and/or assigns P.O. Box 7876 San Francisco, CA 94120 Loan #7771617 | Group V San Bernardino, L.P., a California Limited Partnership |
| 07/18/05 | 270 | 4025 E Street San Bernardino, CA 92407 | 860,000 | 75,000 | 0 | 935,000 | adding: 19 units; 10 buildings; F/S; built 1952-59; roof 15 years old - comp; 19,200 sq ft; no pool | | Group VI Parsons Properties, LP |
| | | Adjustment Total | 6,934,200 | 817,360 | 34,000 | 7,785,560 | | | |

Exhibit 4
Page 143 of Notice of Removal

**EXHIBIT "5"**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Stephen M. Losh          127508, 224719<br>BEVERLY HILLS LAWYERS & ASSOCIATES<br>9461 CHARLEVILLE BLVD., PMB 613<br>BEVERLY HILLS, CA. 90212<br>TELEPHONE NO.: (310) 552-2490   FAX NO.*(Optional):* (310) 552-7891<br>E-MAIL ADDRESS *(Optional):* slosh@bh-la.com<br>ATTORNEY FOR *(Name):* PETE NIJJAR | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
  STREET ADDRESS: 111 NORTH HILL STREET
  MAILING ADDRESS: LOS ANGELES, CALIFORNIA 90012
  CITY AND ZIP CODE:
  BRANCH NAME: CENTRAL DISTRICT STANLEY MOSK COURTHOUSE

  PLAINTIFF/PETITIONER: PETE NIJJAR

  DEFENDANT/RESPONDENT: GENERAL STAR NATIONAL INSURANCE COMPANY
                        AND DOES 1 to 20, Inclusive

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | CASE NUMBER:<br>BC487013 |
|---|---|

TO *(insert name of party being served):* <u>GENERAL STAR INDEMNITY COMPANY</u>

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: SEPTEMBER 6, 2012

STEPHEN M. LOSH
_____      ▶ _____
      (TYPE OR PRINT NAME)               (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [X] A copy of the summons and of the complaint.
2. [ ] Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: SEPTEMBER 10, 2012

PAUL IMPELLIZERI
_____      ▶ _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                        ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] |  ESSENTIAL FORMS™ | NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|---|

PETER NIJJAR

Exhibit 5<br>Page 144 of Notice of Removal

08/28/2012  10:40 3105527891                                    #2728 P.003/004

**SUM-100**

## SUMMONS FIRST AMENDED COMPLAINT
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 29 2012

JOHN A. CLARKE, CLERK
BY DARNETTA SMITH, DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GENERAL STAR NATIONAL INSURANCE COMPANY
AND DOES 1 to 20, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PETE NIJJAR

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| CASE NUMBER: (Número del Caso): |
|---|
| BC487013 |

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF THE STATE OF CALIFORNIA
111 NORTH HILL STREET
LOS ANGELES, CALIFORNIA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
STEPHEN M. LOSE, ANGELICA M. LEON, JOSEPH KROSKLESAN        BEVERLY HILLS LAWYERS & ASSOCIATES
9461 CHARLEVILLE BLVD., PMB 613        (310) 552-2490
BEVERLY HILLS, CA. 90212

DATE: 8-29-12        JOHN A. Clerk, by DARNETTA , Deputy
*(Fecha)*        *(Secretario)*        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify):  GENERAL STAR INDEMNITY COMPANY
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California        **SUMMONS**        Code of Civil Procedure §§ 412.20, 465

Exhibit 5
Page 145 of Notice of Removal

# EXHIBIT "6"

**CIV-110**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Stephen M. Losh, Angelica M. Leon   127508, 224719<br>BEVERLY HILLS LAWYERS & ASSOCIATES<br>9461 CHARLEVILLE BLVD., PMB 613<br>BEVERLY HILLS, CA. 90212<br>TELEPHONE NO.: (310) 552-2490   FAX NO. (Optional):: (310) 552-7891<br>E-MAIL ADDRESS (Optional): slosh@bh-la.com<br>ATTORNEY FOR (Name):  PETE NIJJAR | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: LOS ANGELES, CALIFORNIA 90012
CITY AND ZIP CODE:
BRANCH NAME:  CENTRAL DISTRICT STANLEY MOSK COURTHOUSE

PLAINTIFF/PETITIONER: PETE NIJJAR

DEFENDANT/RESPONDENT: GENERAL STAR NATIONAL INSURANCE COMPANY

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br>  ☐ Motor Vehicle   ☐ Other<br>☐ Family Law   ☐ Eminent Domain<br>☒ Other (specify):   Breach of Contract | BC487013 |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

. TO THE CLERK: Please dismiss this action as follows:
 a. (1) ☒ With prejudice   (2) ☐ Without prejudice
 b. (1) ☒ Complaint   (2) ☐ Petition
  (3) ☐ Cross-complaint filed by (name):                on (date):
  (4) ☐ Cross-complaint filed by (name):                on (date):
  (5) ☐ Entire action of all parties and all causes of action
  (6) ☒ Other (specify):*  GENERAL STAR NATIONAL INSURANCE COMPANY ONLY

. (Complete in all cases except family law cases.)
  ☐ Court fees and costs were waived for a party in this case. (This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).

Date: September 6, 2012

Stephen M. Losh ............................................ ▶ _[signature]_
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                    (SIGNATURE)

If dismissal requested is of specified parties only, of specified causes of     Attorney or party without attorney for:
action only, or of specified cross-complaints only, so state and identify
the parties, causes of action, or cross-complaints to be dismissed.            ☒ Plaintiff/Petitioner   ☐ Defendant/Respondent
                                                                               ☐ Cross-Complainant

. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

_____     ▶ _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                    (SIGNATURE)

If a cross-complaint - or Response (Family Law) seeking affirmative             Attorney or party without attorney for:
relief - is on file, the attorney for the cross-complainant (respondent) must
sign this consent if required by Code of Civil Procedure section 581(i)         ☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
or (j).                                                                        ☐ Cross-Complainant

To be completed by clerk.
 ☐ Dismissal entered as requested on (date):
 ☐ Dismissal entered on (date):                     as to only (name):
 ☐ Dismissal not entered as requested for the following reasons (specify):

 a. ☐ Attorney or party without attorney notified on (date):
 b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed   ☐ means to return conformed copy

Date:                                                     Clerk, by _____, Deputy

Exhibit 6<br>Page 146 of Notice of Removal<br>Page 1 of 2

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. July 1, 2009] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390<br>www.courtinfo.ca.gov |

Martin Dean's
ESSENTIAL FORMS™

PETER NIJJAR

CIV-110

| PLAINTIFF/PETITIONER: PETE NIJJAR | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GENERAL STAR NATIONAL INSURANCE COMPANY; | BC487013 |

## Declaration Concerning Waived Court Fees

The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name):*

2. The person in item 1 *(check one):*
   a. ☐ is not recovering anything of value by this action.
   b. ☐ is recovering less than $10,000 in value by this action.
   c. ☐ is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and costs that were waived in this action have been paid to the court *(check one):*   ☐ Yes   ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

▶ _____

_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)

(SIGNATURE)

Exhibit 6
Page 147 of Notice of Removal



**REQUEST FOR DISMISSAL**

PETER NIJJAR

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV12- 8148 DDP (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| ☑ **Western Division** | ☐ **Southern Division** | ☐ **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY